## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**BURNELL EARL**
                                   **CIVIL ACTION**

**VERSUS**
                                   **NO.  22-962**

**JERRY GOODWIN, WARDEN**
                    **SECTION "L"(4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Burnell Earl ("Earl"), is a convicted inmate incarcerated in the David Wade Correctional Center, in Homer, Louisiana.  On September 12, 2013, Earl was charged in St. Tammany Parish with armed robbery with a firearm in violation of La. Rev. Stat. § 14:64.3.[2]  On November 26, 2013, the bill of information was amended to include an additional charge against

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the 14:64.3 claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] St. Rec. Vol. 1 of 13, Bill of Information, 9/12/13.  Co-defendants Adriena Williams and William Branch were also charged.

Earl for possession of a firearm by convicted felon in violation of La. Rev. Stat. § 14:95.1.[3]  Earl entered a plea of not guilty in the case.[4]

The record reflects that the victim, Boris Allen ("Allen"), met Adriena Williams ("Williams") at a Church's Chicken restaurant on July 19, 2013.[5]  Allen and Williams exchanged cell phone numbers and communicated later that evening and on July 20, 2013.  On July 21, 2013, Williams called and texted Allen, and told him that her car had broken down and that she needed help.  Allen drove to meet Williams at her car and attempted to fix Williams's vehicle.  Earl and William Branch ("Branch") jumped out from some bushes near the side of the road brandishing firearms.  Earl pointed a gun at Allen and told him to "give it up." Allen gave his wallet to Earl.  Branch and Earl both searched Allen's vehicle.  Allen ran to a nearby trailer, where he called 911.  Allen described the suspect vehicle as a black, 2000 model Lincoln LS.  After Allen fled, Earl and Branch fled the scene.  Williams eventually picked Earl and Branch up from a nearby location.

Deputies Rickey Edwards and Bryant Estes of the St. Tammany Parish Sheriff's Office responded to the robbery at approximately 7:00 p.m.  Edwards and Estes assisted Lieutenant Kevin Nielsen and others in performing a felony traffic stop of the suspect vehicle.  Earl, Branch, and Williams were secured from the vehicle.  Williams's consented to Deputy Edwards's search of her purse, which was inside the vehicle.  Various cards belonging to Allen were found inside the purse

---

[3] St. Rec. Vol. 1 of 13, Amended Bill of Information, 11/26/13.

[4] St. Rec. Vol. 1 of 13, Minute Entry, 11/26/13.

[5] The facts were taken from the opinion of the Louisiana First Circuit Court of Appeal on direct appeal.  *State v. Earl*, No. 2014 KA 1534, 2015 WL 1893190, at *1 (La. App. 1st Cir. Apr. 24, 2015); St. Rec. Vol. 4 of 13, 1st Cir. Opinion, 2014 KA 1534, pp. 2-3, 4/24/15.

including his identification, social security and health insurance cards as well as several debit cards. Earl, the owner of the vehicle, consented to a search of the vehicle. Deputy Estes located two handguns and a .45 caliber round as well as various items that belonged to Allen. Allen was brought to the scene of the traffic stop by Deputy Runyon. Allen confirmed the identities of the three perpetrators through a show-up procedure.

On January 6 and 7, 2014, Earl was tried by a jury as to the charge of armed robbery with a firearm, and was found guilty as charged.[6] On January 8, 2014, the Trial Court denied Earl's motions for new trial and post verdict judgment of acquittal.[7] On that same day, the State filed a multiple bill of information.[8] On April 4, 2014, the Trial Court adjudicated Earl as a fourth felony offender and sentenced him to life imprisonment without the benefit of probation, parole or suspension of sentence.[9] The Trial Court denied Earl's motion to reconsider sentence.[10]

On direct appeal, Earl's appellate counsel filed a brief raising a claim that the Trial Court erred in denying his motion to reconsider the sentence imposed because it was unconstitutionally excessive.[11] Earl filed a pro se brief raising the following claims for relief: (1) he was denied the

---

[6]St. Rec. Vol. 1 of 13, Trial Minutes, 1/6/14; Trial Minutes, 1/7/14; Verdict, 1/7/14; Trial Transcript, 1/6/14; St. Rec. Vol. 2 of 13, Trial Transcript, 1/7/14.

[7]St. Rec. Vol. 1 of 13, Hearing Minutes, 1/8/14; Motion for New Trial, 1/8/14; Motion for Post Verdict Judgment of Acquittal, 1/8/14; Multiple Offender Bill of Information, 1/8/14.

[8]St. Rec. Vol. 1 of 13, Multiple Offender Bill of Information, 1/8/14.

[9]St. Rec. Vol. 1 of 13, Sentencing Minutes, 4/4/14; Motion to Reconsider Sentence, 4/4/14; St. Rec. Vol. 2 of 13, Sentencing Transcript, 4/4/14.

[10]St. Rec. Vol. 1 of 13, Sentencing Minutes, 4/4/14; St. Rec. Vol. 2 of 13, Sentencing Transcript, 4/4/14.

[11]St. Rec. Vol. 3 of 13, Appellate Brief, 2014 KA 1534, 11/14/14.

right to judicial review because the appellate record was incomplete; (2) ineffective assistance of appellate counsel; (3) the Trial Court erred in denying his motions to suppress.[12]

On April 24, 2015, the Louisiana First Circuit affirmed Earl's conviction and sentence finding that the Trial Court did not abuse its discretion in imposing a mandatory life sentence under La. Rev. Stat. § 15:529.1(A)(4)(b).[13]  The court also found that none of the missing documents or off-the-record discussions were material.[14]  The court further found that the Trial Court properly denied the motions to suppress.[15]  Finally, the appellate court found that Earl's claims of ineffective assistance of appellate counsel were meritless.[16]

On April 22, 2016, the Louisiana Supreme Court issued a denial without stated reasons of Earl's related writ application.[17]  Earl's conviction and sentence were final 90 days later, on July 21, 2016, because he did not file for review with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[12]St. Rec. Vol. 3 of 13, Supplemental Pro Se Brief, 2014 KA 1534, 1/13/15.

[13]*State v Earl,* No. 2014 KA 1534, 2015 WL 1893190, at *3-4 (La. App. 1st Cir. Apr. 24, 2015); St. Rec. Vol. 4 of 13, 1st Cir. Opinion, 2014 KA 1534, pp. 3-6, 4/24/15.

[14]*Earl*, 2015 WL 1893190 at *3-5; St. Rec. Vol. 4 of 13, 1st Cir. Opinion, 2014 KA 1534, pp. 6-9, 4/24/15.

[15]*Earl*, 2015 WL 1893190 at *5-9; St. Rec. Vol. 4 of 13, 1st Cir. Opinion, 2014 KA 1534, pp. 9-15, 4/24/15.

[16]*Earl*, 2015 WL 1893190 at *9-10; St. Rec. Vol. 4 of 13, 1st Cir. Opinion, 2014 KA 1534, pp. 15-17, 4/24/15.

[17]*State v. Earl*, 191 So. 3d 1044 (La. 2016); St. Rec. Vol. 4 of 13, La. S. Ct. Order, 2015-KO-1042, 4/22/16; La. S. Ct. Writ Application, 2015-KO-1042, 5/28/15 (dated 5/22/15).

On June 27, 2016, Earl filed a pro se application for post-conviction relief asserting the following claims for relief: (1) ineffective assistance of trial counsel in failing to (a) properly question potential jurors; (b) investigate and prepare a defense; (c) question his testifying co-defendant about her past criminal convictions; (d) investigate the validity of two prior convictions alleged for the enhancement; (e) argue that the State failed to show the ten-year cleansing period had elapsed; and (f) review the discovery submitted by the State; (2) insufficient evidence; (3) the cumulative effect of errors denied him a constitutionally fair trial; (3) ineffective assistance of appellate counsel in failing to raise insufficient evidence on appeal; (4) the Trial Court erred in denying his request for a continuance to hire a new attorney; (5) insufficient evidence supported the multiple offender adjudication, and the State failed to prove the ten-year cleansing period elapsed between the prior convictions and the instant offense.[18]

On April 6, 2017, the Trial Court denied the application.[19]  The Trial Court found that Earl failed to prove constitutionally deficient performance by his trial counsel.[20]  The Trial Court found that there was sufficient evidence for a rational trier of fact to conclude that Earl committed the offense of armed robbery and that counsel was not ineffective for failing to raise the issue on appeal.[21]  The Trial Court further found Earl's cumulative error claim without merit.[22]  The Trial

---

[18]St. Rec. Vol. 5 of 13, Initial Application for Post-Conviction Relief, 6/27/16.

[19]St. Rec. Vol. 5 of 13, Judgment on Post-Conviction with Incorporated Reasons, 4/6/17.

[20]*Id.*, at p. 3-11.

[21]*Id.*, at p. 12-14.

[22]*Id.* at p. 14.

Court found that it did not err in denying Earl's request to continue the trial when he informed it on the morning of trial that his son was considering hiring him an attorney.[23]  Finally, the Trial Court concluded that Earl's claims relating to his habitual offender sentencing were procedurally barred.[24]

On July 10, 2017, the Louisiana First Circuit denied in part Earl's related writ application for failure to include the voir dire transcript to support his claim for ineffective assistance of counsel in failing to challenge biased jurors and denied the writ application with respect to the other claims.[25]

On October 30, 2017, the Louisiana First Circuit granted in part Earl's writ application and remanded the case for the district court to hold an evidentiary hearing on Earl's claim that his counsel was ineffective for failing to properly question the potential jurors during voir dire.[26]  The remaining claims were again denied.[27]

---

[23]*Id.* at pp. 14-15.

[24]*Id.* at pp. 15-16.

[25]*State v. Earl*, No. 2017 KW 0661, 2017 WL 2953376 (La. App. 1st Cir. July 10, 2017); St. Rec. Vol. 6 of 13, 1st Cir. Order, 2017 KW 0661, 7/10/17; 1st Cir. Writ Application, 2017 KW 0661, 5/9/17.

[26]*State v. Earl*, No. 2017 WL 1025, 2017 WL 4883189 (La. App. 1st Cir. Oct. 30, 2017); St. Rec. Vol. 6 of 13, 1st Cir. Order, 2017 KW 1025, 10/30/17; 1st Cir. Writ Application, 2017 KW 1025, 7/19/17.

[27]*Id.*

On May 11, 2018, the Louisiana First Circuit clarified that the purpose of the evidentiary hearing was to allow Earl to present evidence in support of his claim that his trial counsel was ineffective during the voir dire of five prospective jurors.[28]

On October 1, 2018, the court denied Earl's writ application related to the Trial Court's failure to hold the evidentiary hearing.[29]  The Louisiana Supreme Court denied Earl's related writ application without reasons.[30]

Due to difficulties in securing Earl's presence from the Louisiana Department of Corrections facility and securing counsel for Earl,[31] the Trial Court did not hold an evidentiary hearing until July 1, 2019.[32]  On August 7, 2019, the Trial Court found that Earl failed to show his counsel provided deficient performance or that there was a reasonable probability the verdict would have been different.[33]

The Clerk of Court mailed a certified copy of the court's ruling to Earl at the Louisiana State Penitentiary, the address on his application for post-conviction and his other pro se

---

[28]*See* St. Rec. Vol. 5 of 13, Judgment on Post-Conviction After Remand for Evidentiary Hearing, p. 1, 8/7/19.

[29] *State v. Earl*, No. 2018 KW 0953, 2018 WL 4760146 (La. App. 1st Cir. Oct. 1, 2018); St. Rec. Vol. 9 of 13, 1st Cir. Order, 2018 KW 0953, 10/1/18; 1st Cir. Writ App., 2018 KW 0953, 7/8/18.

[30] *State ex rel. Earl v. State*, 254 So. 3d 701 (La. 2018); St. Rec. Vol. 8 of 12, La. S. Ct. Order, 2017-KH-1311, 10/29/18; La. S. Ct. Writ Application, 17 KH 1311, 7/25/17.

[31]*See* St. Rec. Vol. 5 of 13, Order, 3/27/19; Judgment on Post-Conviction After Remand for Evidentiary Hearing, at p. 1., 8/7/19.

[32]St. Rec. Vol. 5 of 13, Evidentiary Hearing Minutes, 7/1/19; Evidentiary Hearing Transcript, 7/1/19.

[33]St. Rec. Vol. 5 of 13, Judgment on Post-Conviction After Remand for Evidentiary Hearing, 8/7/19.

pleadings,[34] on August 12, 2019.[35]  The copy was returned to the state district court on August 17, 2019, marked "Not at LSP" and "RETURN TO SENDER REFUSED UNABLE TO FORWARD."[36]

On January 5, 2020, Earl sent a letter to the Clerk of Court requesting a copy of the evidentiary hearing transcript.[37]  He included a return address at the David Wade Correctional Center.[38]  The Trial Court ordered the Clerk of Court to provide a copy of the transcript to Earl free of charge.[39]  By letter dated January 21, 2020, the state district court Clerk of Court advised that the transcript was not in the record and would be provided upon receipt from the court reporter.[40]

On October 29, 2020, Earl filed an application seeking a writ of mandamus ordering the Trial Court to render a final disposition on his claim of ineffective assistance of counsel in

---

[34]St Rec. Vol. 5 of 13, Application for Post-Conviction Relief,6/27/16; Traverse to the State's Original Brief, 12/21/16 (dated 12/19/16); Motion for Evidentiary Hearing and Appointment of Counsel, 11/15/17 (dated 11/9/17); Motion for Writ of Habeas Corpus Ad Testificandum, 11/15/17.

[35]St. Rec. Vol. 5 of 13, Letter from Clerk of Court, 8/12/19.

[36]St. Rec. Vol. 5 of 13, Envelope, 8/21/19 (stamped 8/17/19).

[37]St. Rec. Vol. 5 of 13, Letter, 1/21/20 (dated 1/5/20).

[38]*See id.*

[39]St. Rec. Vol. 5 of 13, Order on Request for Documents, 1/21/20.

[40]St. Rec. Vol. 5 of 13, Clerk of Court Letter, 1/21/20.

questioning potential jurors.[41]  On January 14, 2021, the Louisiana First Circuit denied his writ

application as moot, finding that the state district court had issued a ruling on August 7, 2019.[42]

Earl sent a letter to the state district Clerk of Court on January 21, 2021 seeking a copy of

the August 7, 2019 ruling and the transcript of the evidentiary hearing.[43]  On February 22, 2021,

the Clerk of Court mailed Earl a copy of the evidentiary hearing transcript as well as copies of the

minutes from July 1, 2019 and the August 7, 2019 judgment.[44]

On April 26, 2021, the Louisiana First Circuit denied Earl's writ application without

reasons.[45]  On November 10, 2021, the Louisiana Supreme Court denied Earl's related writ

application finding that Earl failed to show that he received ineffective assistance of counsel under

the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[46]

## II.    **Federal Habeas Petition**

On April 6, 2022, Earl filed his original petition for federal habeas corpus.[47]  Earl raises

the following claims for relief: (1) ineffective assistance of counsel during jury selection and

---

[41]St. Rec. Vol. 10 of 13, La. 1st Cir. Writ Application, 2020 KW 1092, 10/29/20.

[42] *State v. Earl*, No. 2020 KW 1092, 2021 WL 141215 (La. App. 1st Cir. Jan. 14, 2021); St. Rec. Vol. 10 of 13, La. 1st Cir. Order, 2020 KW 1092, 1/14/21.

[43] St. Rec. Vol. 5 of 13, Letter, 1/29/21 (dated 1/21/21).

[44] St. Rec. Vol. 5 of 13, Letter from Clerk of Court, 2/22/21.

[45] *State v. Earl*, No. 2021 KW 0312, 2021 WL 1611529 (La. App. 1st Cir. Apr. 26, 2021); St. Rec. Vol. 11 of 13, 1st Cir. Order, 2021 KW 0312, 4/26/21; 1st Cir. Writ App., 2021 KW 0312, 3/14/21.

[46]*State v. Earl*, 326 So. 3d 1239 (La. 2021) (per curiam); St. Rec. Vol. 12 of 13, La. S. Ct. Order, 2021-KH-00735, 11/10/21; La. S. Ct. Writ Application, 21 KH 735, 5/26/21 (dated 5/5/21).

[47]Rec. Doc. No. 1.

failure to confer; (2) violation of equal protection as the jury was not impartial; (3) the search and seizure violated the Fourth Amendment.[48]

The State filed a response claiming that Earl's petition is untimely.[49]  Earl filed a traverse claiming that, due to COVID-19 protocol, he had no access to the prison law library or inmate counsel.[50]  Earl also submitted a second memorandum reiterating his claims.[51]

## III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[52] applies to this petition, which was filed in this Court under the mailbox rule on April 6, 2022.[53]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims

---

[48]Rec. Doc. No. 3, pp. 5, 7-8; Rec. Doc. No. 3-1, pp. 1-6; Rec. Doc. No. 3-3, pp. 1-4; Rec. Doc. No. 3-4, pp. 2-3.

[49]Rec. Doc. No. 9.

[50]Rec. Doc. No. 10.

[51]Rec. Doc. No. 11.

[52]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[53]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Earl signed his pleadings on April 6, 2022 which the earliest date Earl could have given his petition to prison officials for mailing.

must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Earl's federal petition was not timely filed under the AEDPA. For the following reasons, his petition should be dismissed as time-barred.

## IV.    <u>Statute of Limitations</u>

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254 claim within one year of the date the state court conviction became final.[54] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As stated above, Earl's conviction was final under federal law on July 21, 2016. Pursuant to § 2244, Earl had one year from that date, or until July 22, 2017, to timely file a federal petition for habeas corpus relief, which he did not do. Thus, literal application of the

---

[54] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

statute would bar Earl's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

## A.   <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state court pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above with the exception of when Earl was represented by counsel.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.' "  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Earl's case, he filed his application for post-conviction relief on June 27, 2016, before his conviction was final under federal law and the AEDPA filing period began to run.  The one-year limitations period remained tolled during the pendency of that proceeding through September 6, 2019, thirty days after the Trial Court denied his final claim raised in his application for post-conviction relief.  The AEDPA one-year limitations period began to run on September 7, 2019 and did so for one year when it expired on September 7, 2020.  Earl had no properly filed state post-conviction or other collateral review pending in any court during that period.  Earl did not file his federal petition under the mailbox rule until April 6, 2022.

The Court recognizes that Earl filed a motion seeking a copy of the evidentiary hearing transcript on January 9, 2020.  Motions requesting transcripts or other documents, however, are not considered applications "for State post-conviction or other collateral review," for tolling purposes.  Rather, motions for production of documents are considered preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. *Higginbotham v. Tanner*, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); *Parker v. Cain*, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n. 22 (E.D. La. May 1, 2002), *certificate of appealability denied*, No. 03-30107 (5th Cir. June 23, 2003); *Boyd v. Ward*, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), *certificate of appealability denied*, No. 01-30651 (5th Cir. Aug. 22, 2001).

Therefore, Earl's federal petition, filed under the mailbox rule on April 6, 2022, was filed nineteen months after the AEDPA filing period expired on September 7, 2020.  His untimely federal petition should be dismissed with prejudice unless he meets another exception or excuse to the running of the AEDPA limitations period.

### B.    No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling of the AEDPA limitations period where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).

However, equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times

extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period). A habeas petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

In response to the State's assertion of the statute of limitations in this case, Earl claims that he is entitled to equitable tolling.[55] His argument is two-fold. Initially, he claims that, due to an error by the state district court's Clerk's Office, he did not receive notice of the August 7, 2019 ruling of the Trial Court denying the final claim of his application for post-conviction relief until January 2021.[56] Second, he claims that his delay in filing was due to COVID-19 lockdown with no access to the law library or inmate counsel for assistance.[57]

As indicated, Earl did not receive notice that the Trial Court had denied the final claim for relief raised in his application for post-conviction relief until January 2021. He did not receive a copy of the final judgment until February 2021. "A state-created delay in sending a court opinion to a petitioner may constitute an extraordinary circumstance." *Diggs v. Vannoy*, 840 F. App'x 779, 781 (5th Cir.) (citing *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000)), *cert. denied*, 142 S.Ct. 153 (2021). Earl's failure to receive notice of the Trial Court's ruling could in fact qualify as an "extraordinary circumstances."[58] *See, e.g.*, *Jackson v. Davis*, 933 F.3d 408, 411 (5th

---

[55]Rec. Doc. No. 10.

[56]*Id. at* pp. 4, 7.

[57]*Id.* at pp. 2, 4-7.

[58]However, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy*, 577 F.3d at 598 (emphasis added). At least one court has found that a prisoner's failure to update his change of address resulting in delayed notification of a ruling is a delay of his own making and does not constitute an exceptional circumstance. *Perry v. Lumpkin*, A-21-CV-1159-RP, 2022 WL 1105753, at *3 (W.D. Tex. April 13, 2022), *appeal filed*, No. 22-50340, (5th Cir. May 4, 2022). In this case, the record reflects that Earl was housed in at least three different institutions during the pendency

Cir. 2019) (eighteen-month delay in receiving notice of the denial of state application by Texas Court of Criminal Appeal constituted extraordinary circumstances); *Williams v. Thaler*, 400 F. App'x 886, 892 (5th Cir. 2010) ("Our delayed notice cases demonstrate that the simple fact that a petitioner did not receive notice that the AEDPA limitations period had ceased to toll may be an extraordinary circumstance that warrants equitable tolling.") (citing *Phillips*, 216 F.3d at 511). Nevertheless, even so, that is only half of Earl's battle; as noted, he must also establish that he pursued his rights *diligently*, because "[e]quity is not intended for those who sleep on their rights." *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) (quotation marks omitted).

The Fifth Circuit recognizes that "equitable tolling" by its definition suspends the limitations period when, "despite diligent efforts," the petitioner "did not discover the injury until *after the limitations* period had expired." *Umana v. Davis*, 791 F. App'x 441, 443 (5th Cir. 2019) (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)). Regarding the diligence requirement, it is clear that a petitioner need not show that he exercised the "maximum feasible diligence"; rather, "[t]he diligence required for equitable tolling purposes is *reasonable* diligence." *Holland*, 560 U.S. at 563 (emphasis added; quotation marks omitted). "What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate

---

of his application for post-conviction relief. When he originally filed his application for post-conviction relief in June 2016, through at least November 2017, Earl was housed at the Louisiana State Penitentiary. *See* St. Rec. Vol. 5 of 13, Petition for Writ of Habeas Corpus Ad Testificandum, 11/15/17. By July 2018, Earl was housed at the David Wade Correctional Center. *See* St. Rec. Vol. 9 of 12, 1st Cir. Writ Application, 2018 KW 0953, 7/8/18. In a March 27, 2019 order, the Trial Court indicated that it "believed" Earl was housed at the David Wade Correctional Center but had been transported to the Hunt Correctional Center to await further transport to the St. Tammany Parish Jail. St. Rec. Vol. 5 of 13, Order, at p. 1, 3/27/19. The Trial Court ordered The Louisiana Department of Corrections to take custody of Earl upon completion of the evidentiary hearing and transport him to the appropriate penal institution. Id., at 2. There is, however, no evidence that Earl advised the state district Clerk of Court of his change of address until January 2020 when he sought a copy of the evidentiary hearing transcript. *See* St. Rec. Vol. 5 of 13, Letter, 1/9/20 (dated 1/5/20).

whether he was diligent overall." *Jackson*, 933 F.3d at 411 (citing *Pace*, 544 U.S. at 419; footnote omitted). Thus, courts consider a prisoner's diligence at three stages: (1) the time after petitioner's conviction became final until he filed his state post-conviction application; (2) the time during the pendency of his state post-conviction application; and (3) the time after petitioner learned that his request for state post-conviction relief was denied until he filed his federal habeas application. *Id.* at 411-413. Earl has not demonstrated that he exercised reasonable diligence at two stages for the following reasons.

Initially, there is no question that Earl exercised diligence at the first stage. Earl filed his application for post-conviction relief on June 26, 2016, nearly a month before his conviction became final. *See Hardy*, 577 F.3d at 599 (petitioner exercised due diligence when he filed his state habeas petition two months after his conviction became final).

However, turning to the second stage, Earl failed to diligently monitor the status of his post-conviction application. At no time after the evidentiary hearing on July 1, 2019 until January 2021 did Earl inquire of the state district court about the status of his post-conviction. While he requested a copy of the transcript on January 5, 2020, five months after the evidentiary hearing, he did not inquire about the status of the case at that time.[59] Rather, Earl waited until October 2020, more than fourteen months after the hearing, to file a petition for writ of mandamus with the Louisiana First Circuit requesting it order the state district court to issue a final judgment.[60]

---

[59]St. Rec. Vol. 5 of 13, Letter, 1/9/20 (dated 1/5/20).

[60]St. Rec. Vol. 10 of 13, La. 1st Cir. Writ Application, 2020 KW 1092, 10/29/20.

These delays of Earl are compelling. He sat idle during an extended period without questioning the status of his application. As others in this court have recognized, "while ... incarcerated persons face more obstacles than free citizens in making routine status checks on pending court matters, even prisoners are not absolved of all responsibility to track their litigation diligently." *Smith v. Terrell*, No. 07-9449, 2009 WL 2139697, at *4 (E.D. La. July 13, 2009) (order adopting attached report and recommendation).

Earl sat idle without inquiry of the status of his case or seeking mandamus in a higher state court for fourteen months. This extended time crossed into unreasonable and does not warrant equitable tolling. *See, e.g.*, *Licona v. Vannoy*, No. 19-10502, 2020 WL 4014842, at *1 (E.D. La. Jul. 15, 2020) (petitioner who waited seven months before filing a status check and then another year before filing his second status check was not entitled to equitable tolling), *appeal dismissed*, No. 20-30466, 2021 WL 3232598 (5th Cir. Feb. 18, 2021); *Smith v. Terrell*, No. 07-9449, 2009 WL 2139697, at *4 (E.D. La. July 13, 2009) (lack of due diligence where petitioner waited a year after his initial inquiry to the Louisiana Supreme Court before again checking on the status of his case); *McIntyre v. Davis*, EP-17-CV-163-DCG, 2018 WL 1041304, at *4 (W.D. Tex. Feb. 22, 2018) (petitioner failed to show diligence where he waited six months to file his state habeas application, and additional seven months to file a status request, and three additional months to file his federal habeas petition); *Hicks v. Quarterman*, No. H-06-2208, 2007 WL 79706, at *5 (S.D. Tex. Jan. 8, 2007) (lack of diligence where prisoner waited one year to make first inquiry about the status of a filing and another year to make the second inquiry), *aff'd*, 298 F. App'x 346

(5th Cir. 2008); *Scott v. Dretke*, No. 3:05-CV-0609-H, 2006 WL 1831331, at *3 (N.D. Tex. June 29, 2006) (lack of diligence where prisoner waited ten months to inquire about the status of a filing); *Jones v. Cockrell*, No. Civ. A. 3:01-CV-0521M, 2002 WL 31298863, at *3 (N.D. Tex. Oct.8, 2002) (lack of diligence where prisoner waited approximately one year to inquire about the status of a filing).

Earl also fails to show reasonable diligence under the circumstances at the third stage. The state post-conviction proceedings were concluded on November 10, 2021. Earl nevertheless waited nearly five additional months to file his federal application. *Diggs,* 840 F. App'x at 782 (petitioner failed to demonstrate diligence where, once he received delayed notice that his state petition was denied, he waited another twenty-nine days to file in federal court); *Duran*, 2020 WL 8020242, at *1 (petitioner was not entitled to equitable tolling when he waited seven months to file his state habeas application and ten weeks after receiving the state court's decision to file his federal habeas application); *Derouselle v. Cain,* 279 F. App'x 320, 321 (5th Cir. 2008) (affirming denial of equitable tolling for lack of due diligence where petitioner waited two months after state post-conviction proceedings were completed to file habeas petition); *Gordon v. Quarterman*, 236 F. App'x 975, 976-77 (5th Cir. 2007) (same); *Simmons v. Johnson*, 210 F.3d 368, 2000 WL 293959, at *1 (5th Cir, Feb. 17, 2000) (district court did not abuse its discretion in finding equitable tolling not warranted where petitioner waited more than one month after receiving notice of denial of his state post-conviction application to file his habeas petition); *Wesley v. Vannoy*, Civ. Action No. 19-00141-BAJ-EWD, 2022 WL 989427, at *5 (M.D. La. Mar. 31, 2022) (petitioner's fifty-four day delay in filing his habeas petition after he received delayed notice that the Louisiana

Supreme Court had denied his writ application failed to act with reasonable diligence and was not entitled to equitable tolling), *appeal filed*, No. 22-30179 (5th Cir. April 13, 2022).

Earl claims that the COVID-19 pandemic and related restrictions upon movement in the prisons interfered with his ability to access the law library and confer with inmate counsel, and, therefore, timely file his habeas petition.  Earl, however, provides no specific dates when he was in lockdown or when he personally was denied access to the law library as a result of pandemic procedures.  Further, Earl provides no actual evidence that diminished library access *actually prevented* him from filing his habeas application earlier.  *Krause v. Thaler*, 637 F.3d 558, 561-62 (5th Cir. 2011); *accord United States v. Hall,* No. 16-68, 2021 WL 4989884, at *4 (E.D. La. Oct. 27, 2021) (petitioner was not entitled to equitable tolling for § 2255 motion where he did not explain why the pandemic prevented him from timely filing); *United States v. Pizarro*, No. 16-63, 2021 WL 76405, at *2 (E.D. La. Jan. 8, 2021) (denying equitable tolling where petitioner presented no evidence that any diminished library access due to COVID-19 lockdowns actually prevented him from filing § 2255 petition); *Ramos v. Lumpkin*, No. SA-20-CA-01448-FB, 2021 WL 3410314, at *3 (W.D Tex. Aug. 4, 2021) (no evidence that diminished library access due to COVID-19 prevented petitioner from filing federal petition).  Notably, the alleged restricted access to the prison library and inmate counsel did not prevent Earl from filing his writ application with the Louisiana First Circuit within thirty days of receiving notice that his application for post-conviction relief was denied by the state district court.[61]  Further, Earl filed his writ application

---

[61]*See* St. Rec. Vol. 11 of 13, 1st Cir. Writ App., 2021 KW 0312, 3/14/21.

with the Louisiana Supreme Court within nine days of the Louisiana First Circuit's April 26, 2021 decision denying relief.[62]

Additionally, intermittent lockdowns do not constitute "extraordinary circumstances" warranting equitable tolling. *Tate v. Parker*, 439 F. App'x 375, 376 (5th Cir. 2011) (temporary denial of access to research materials or the law library is not sufficient to warrant equitable tolling). Nor is the mere existence of the COVID-19 pandemic, without more, an "extraordinary circumstance." *See, e.g.*, *United States v. Clay*, No. 2:20-236, 2021 WL 2018996, at *3 (S.D. Tex. May 18, 2021); *Hines v. United States*, No. 20-CV-10064 (CS), No. 17-CR-364-2 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021). In fact, one court has found that a prisoner had not shown extraordinary circumstances when "his circumstances were not different than any other prisoner attempting to access legal resources, as they all were subject to COVID-19 protocols." *Rush v. Secretary, Florida Department of Corrections,* No. 21-10218-C, 2021 WL 3134763, at *1 (11th Cir. June 22, 2021) (denying certificate of appealability to appeal the dismissal of his habeas petition as untimely). Further, where, as here, a prisoner fails to show he was diligently pursuing his right before the pandemic restricted his access to the law library, he is not entitled to equitable tolling. *Hall,* 2021 WL 4989884, at *3 (petitioner was not entitled to equitable tolling for § 2255 motion); *Ferrell v. Lumpkin*, No. SA-21-CA-0420-FB, 2021 WL 4340971, at *3 (W. D. Tex. Sept. 23, 2021) ("prisoners are not entitled to equitable tolling if there is no evidence that they diligently pursued their right to file a petition prior to the lockdowns") (citations omitted), *appeal filed*, No. 21-51003 (5th Cir. Oct. 21, 2021).

---

[62]*See* St. Rec. Vol. 12 of 13, La. S. Ct. Writ Application, 21 KH 735, 5/26/21 (dated 5/5/21).

Finally, lack of legal assistance generally does not justify equitable tolling. *See Cruz v. Lumpkin*, 2021 WL 3710568, at *3 (N.D. Tex. Aug. 18, 2021) (holding that equitable tolling was not justified by pandemic-induced lockdowns, limited access to prison law library, and an inability to obtain legal assistance). A prisoner's *pro se* status simply does not constitute rare and exceptional circumstances warranting equitable tolling. *See, e.g.*, *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008) ("Proceeding pro se is alone insufficient to equitably toll the AEDPA statute of limitations."); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance [warranting equitable tolling] because it is typical of those bringing a § 2254 claim."); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.").

In summary, Earl has failed to establish that he acted with reasonable diligence at two stages. Earl is not entitled to equitable tolling, and his petition should be dismissed as untimely filed.

### C.    <u>No Other Excuse or Exception to Time Bar</u>

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" notwithstanding the "expiration of the statute of limitations" under the AEDPA. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* at 392, (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The Supreme Court, however, has cautioned that "[t]he miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' " *Id.* at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  The Supreme Court has made clear that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Schlup*, 513 U.S. at 321.

Earl does not invoke *McQuiggin* nor does he make the required showing.  As the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is unavailable in the vast majority of cases, claims of actual innocence are rarely successful," *Schlup*, 513 U.S. at 324, and thus rejected "in virtually every case." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

Here, Earl has not met the rigorous burden of proof imposed under the actual innocence exception.  First, the majority of the evidence Earl suggests supports his claim of innocence is not "new" because it was available to Earl upon reasonable investigation before trial.  In fact, he essentially concedes as much, in that he argues that his counsel was ineffective for failing to (1) subpoena co-defendant Branch to testify; (2) test the firearms and other items for DNA and fingerprints; and (3) elicit testimony from Williams about her prior criminal record.[63]  That is fatal,

---

[63]*See* Rec. Doc. No. 3-2, pp. 2-3; Rec. Doc. No. 3-6, pp. 3-5; Rec. Doc. No. 11, pp. 21, 26.

because evidence that was available to "[a petitioner] or trial counsel at or before trial" does not qualify as "new." *See Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018); *accord Tyler v. Davis*, 768 F. App'x 264, 265 (5th Cir. 2019); *Uptergrove v. Director, TDCJ-CID*, Civ. Action No. 4:18cv586, 2021 WL 3288296, at *2 (E.D. Tex. July 30, 2021) ("In order for evidence to constitute new evidence that can support a claim of actual innocence and allow a petitioner to overcome the limitations period, it must have been unknown to counsel and *not discoverable with reasonable investigation.*" (emphasis added)); *see also Shank v. Vannoy*, No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017) (Higginson, J., on denial of a certificate of appealability) ("Evidence that was available to be presented to the jury at the time of trial is not now 'new' evidence, even if it was not actually presented to the jury."). The Fifth Circuit has indicated that this rule applies even where, as here, a petitioner claims that his counsel was ineffective for failing to use that available information. *See Tyler*, 768 F. App'x at 265.

Further, yet another problem exists with respect to the evidence on which Earl relies: it is not sufficiently compelling to support a tenable actual innocence claim. The evidence in no way establishes that Earl did not commit the crime. For instance, while Earl generally contends that, had his trial counsel subpoenaed co-defendant Branch, Branch's testimony would have contradicted that of Williams, he presents no actual evidence of the content of that proposed testimony.[64]

---

[64]As noted by the Trial Court, Branch, awaiting trial himself, and there is no evidence that he was willing to testify on Earl's behalf and would not invoked his Fifth Amendment right against self-incrimination. *See* St. Rec. Vol. 5 of 13, Judgment on Post-Conviction with Incorporated Reasons, at p. 9, 4/6/17.

Next, Earl claims that DNA and fingerprint testing of the firearms and other items found would have shown that he did not handle them. Earl, however, presents no evidence of such testing. His mere speculation that his fingerprints and DNA would not have been found on the items does not constitute reliable new evidence of his factual innocence that could rise to the level such that no reasonable juror would have found Earl guilty.

Earl claims that evidence of Williams' prior criminal record would have caused the jury to doubt her testimony. The fact that Williams had a prior criminal history in no way establishes that Earl was innocent of the crime. Further, the jury was presented with other evidence of Williams's character. Williams testified that she had lured the victim to the scene where Earl and Branch were waiting to rob him.[65] The jury was also aware that Williams had pled guilty to the offense and was serving a five-year prison sentence.[66] It simply cannot be said that no juror, acting reasonably, would have convicted Earl in light of evidence that Williams had other prior convictions.

Finally, Earl claims that Williams's testimony at Branch's trial, which occurred after Earl's trial, differed from her testimony at Earl's trial and, therefore, casts doubt on her veracity. At Earl's trial, at Earl's insistence and against the advice of defense counsel, Williams was called as a defense witness.[67] In response to very limited questioning by defense counsel, Williams testified

---

[65]St. Rec. Vol. 2 of 13, Trial Transcript, pp. 376-77, 1/7/14.

[66]*Id.*, at p. 381.
[67]*See id.*, at pp. 360-369.

that she had met Allen at a Church's Chicken Restaurant.[68]  Williams did not testify how long she

had known him before the robbery.  Defense counsel did not specifically question Williams about

the robbery.  On cross-examination, Williams testified that Earl used a gun to force her to call

Allen.[69]  She testified that Earl and Branch hid in the bushes when Allen got close to the scene.[70]

Williams testified that, because the hood of her vehicle was up, she could not see the robbery, but

heard Earl tell Allen to give him his wallet.[71]

      Williams testified as a State's witness at Branch's trial and her testimony was much more

detailed.[72]  Williams testified that she met Allen about a month earlier at a Church's Chicken, and

that Earl did not learn that Williams and Allen had been communicating until the evening before

the robbery.[73]  Williams testified that Earl made her call Allen and tell him that she needed

assistance, and that he stood next to her with a gun telling her what to say.[74]  She explained that,

after she ended the call, Earl and Branch hid in the bushes.[75]  Williams testified that, while the

---

[68]*Id.*, at p. 373.

[69]*Id.*, at p. 376.

[70]*Id.*, at p. 377.

[71]*Id.*

[72]St. Rec. Vol. 5 of 13, Application for Post-Conviction Relief, Exhibit B Transcript of Williams's Testimony from Branch's Trial, p. 210, 6/27/16.

[73]*Id.,* at pp. 225-31.

[74]*Id.,* at pp. 231, 233-35.

[75]*Id.,* at pp. 212, 236.

hood of the vehicle was open, she could see Earl come towards the car and heard him tell Allen to give him his wallet.[76]

While Williams's testimony at the two trials differed in some instances, the differences are not so compelling that no juror, acting reasonably, would have voted to find Earl guilty beyond a reasonable doubt especially in light of Allen's testimony and the evidence found in the vehicle.

For these reasons, Earl does not make the showing demanded under *McQuiggin* to establish that no reasonable juror would have found him guilty beyond a reasonable doubt after considering the new evidence.

Finally, the fact that Earl has asserted ineffective assistance of counsel claims does not provide an exception to his untimely federal filing.  The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), and their progeny, simply do not provide a basis for review of an untimely filed federal petition.   In *Martinez*, the Court held that *a state court imposed* " 'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.' "  *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17).  This case, however, is not based on a state-imposed bar to review.

Instead, the bar at issue in this federal court arises from Earl's failure to meet the *federal* limitations deadline under the AEDPA.  The *Martinez* and *Trevino* decisions do *not* address or

---

[76]*Id.,* at pp. 212, 237-39.

provide an excuse for the untimely filing of a federal habeas petition.  *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report).  These cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA.  *See In re Paredes*, 587 F. App'x at 813; *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  Thus, neither *Martinez* nor *Trevino* excuse the untimely filing of Earl's federal petition.

Earl's federal petition deemed filed on April 6, 2022, was not timely filed within the one-year AEDPA statute of limitations period which expired on September 7, 2020.  There is no statutory tolling, equitable tolling, or other exception applicable to or that would excuse his untimely filing.  Earl's petition was not timely filed and should be dismissed for that reason.

## V.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Burnell Earl's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.

1996).[77]

New Orleans, Louisiana, this 30th  day of August, 2022.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[77]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.