*EARL VS-GOODWIN*
*NO. 22-462*

**RECEIVED**

JUL 2 5 2017

Legal Programs Department

Bernell Earl #154891
CBB/LR-3
La. State Penitentiary
Angola, LA 70712

July 26, 2017
(Date)

Clerk of Court,
La. Supreme Court
400 Royal Street, Ste. 4200
New Orleans, LA 70130-2104

RE:   *Bernell Earl v. Darrel Vannoy, Warden, Louisiana State Penitentiary*; On Application For
Writ of Review; to the First Circuit Court of Appeal, No. 2017-KW-0661; 22ⁿᵈ Judicial District Court,
Parish of St. Tammany, No. 539204-1, Hon. August J. Hand, Judge; Denial of Application for Post-
Conviction Relief.

Dear Clerk:

Please find enclosed an original of my pro se Application For Writ of Certiorari, that I
respectfully ask that you please file for judicial consideration and disposition.

Also, please find enclosed an original of my pro se Motion to Stay Proceedings of the
Application For Writ of Certiorari, that I respectfully ask that you please file for judicial consideration
and disposition.

Mr. Earl requests that this matter be Stayed as the Louisiana First Circuit Court of Appeals had
"Denied on the Showing Made in Part and Writ Denied in Part," informing Mr. Earl that he had failed
to include the Transcript of the Voir Dire concerning one of his Claims.

Mr. Earl respectfully requests that these Claims previously denied by the Court of Appeals be
allowed to be exhausted by the Lower State Courts to prevent a "Mixed Petition" in the event that he
has to proceed to the U.S. District Court.

Thanking you in advance, I remain...

Respectfully,

*Bernell Earl*
Bernell Earl

SCANNED at LSP and Emailed
_____ by _____ ____ pages
date      initials    No.

BE/dec#304580

Enclosure (1)

Cc:   District Attorney, St. Tammany Parish

EX-A2   EARL-vs-GOODWIN
NO. 22-962
(pgs-1-thru-3)

IN THE
LOUISIANA SUPREME COURT

STATE OF LOUISIANA

Vs.

BERNELL EARL

DOCKET NO: 2017-KH-1311

## MOTION TO STAY PROCEEDINGS

**MAY IT PLEASE THE COURT:**

NOW INTO THIS HONORABLE COURT comes, Bernell Earl, who moves the Court to stay all proceedings in the instant action. Bernell Earl respectfully submits the following facts, authorities, and argument:

Simultaneously, Mr. Earl has filed into this Honorable Court a Supervisory Writ from the First Circuit Court of Appeals from the denial of the 22nd Judicial District Court regarding his Application for Post-Conviction Relief.

On May 9, 2017, Mr. Earl filed for Supervisory Writs to the Louisiana First Circuit Court of Appeals after the denial of his Application for Post-Conviction Relief in the 22nd Judicial District Court without the benefit of an evidentiary hearing.

On July 10, 2017, the Louisiana First Circuit Court of Appeals "Denied on the showing made in part and Writ denied in part." Accordingly, Mr. Earl had failed to include the transcript from the Voir Dire concerning the ineffective assistance of counsel during jury selection.

At this time, Mr. Earl is requesting a Stay and Abeyance of the pending Supervisory Writ in order for the Court of Appeals to review the Claim which had been denied "On the Showing Made."

This Court has authority to "grant any necessary relief to prevent irreparable damage" to a party pending further litigation. *Harris v. Gibson*, 322 F.2d 780, 781 (5th Cir. 1963), *cert. denied*, 376 U.S. 908 (1964). The four factors generally applicable when a stay of proceedings is sought are: (1) the likelihood for success on the merits; (2) the possibility of irreparable injury to the moving party if a stay is not granted; (3) the possibility of injury to other parties; and (4) the public interest. See: *Bundy v. Wainwright*, 808 F.2d 1410, 1421 (11th Cir. 1987); *Jean v. Nelson*, 683 F.2d 1311, 1312 (11th Cir.

1.

1982); *Belcher v. Birmingham Trust National Bank*, 396 F.2d 685 (5th Cir. 1968); 11th Cir. R. 17(b)(1).

In Mr. Earl's case, the balance of considerations reflected in each of these criteria is in favor of granting a stay.

The Louisiana First Circuit Court of Appeals has informed him that, "in the event relator elects to file a new application with this court, the application shall be filed on or before September 8, 2017. Any future filings on this issue should include the entire contents of this application, the missing item noted above, and a copy of this ruling. With respect to the other claims, the writ application is denied.

In order to prevent Mr. Earl from having his Supervisory Writ from being considered "untimely," out of an "abundance of caution," Mr. Earl is filing such within thirty (30) days which this Honorable Court would deem such as "timely" filed.

WHEREFORE, for the foregoing reasons, Bernell Earl respectfully request that this Court stay any proceedings in the instant action pending a final ruling from the 22nd Judicial District Court and the Louisiana First Circuit Court of Appeals concerning these Claims.

Respectfully Submitted,

*Bernell Earl*
Bernell Earl #398433
CBB/LR-3
Louisiana State Prison
Angola, LA 70712

## CERTIFICATE OF SERVICE

I, Bernell Earl, hereby certify that a copy of the foregoing motion was served upon the District Attorney, Parish of St. Tammany by placing same in the U.S. Mail, properly addressed and postage pre-paid; and the Original pleading to the Clerk of Court's Office placed in the receptacle which has been designated for "Legal Mail to be Scanned" on this 26th day of July, 2017.

*Bernell Earl*
Bernell Earl

IN THE
LOUISIANA SUPREME COURT


STATE OF LOUISIANA

Vs.

Bernell Earl,
pro-se


DOCKET NO: 2017-KH-1311


ORDER TO STAY PROCEEDINGS


Bernell Earl has submitted before this Court a Motion to Stay Proceedings pending a final outcome from the Louisiana First Circuit Court of Appeals concerning the Claims which were re-submitted due the Court of Appeals' denial "On the Showing Made."

Bernell Earl's Motion to Stay Proceedings is hereby GRANTED.


Signed this __ day of _____, 2017.


_____
JUDGE


3.

EX-A3 *EARL -VS- GOODWIN*
*No. 22-962*
*(Pgs. i-thru ix; 1-thru-28)*

COURT RULES

APPENDIX C. SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET

No._____

TO BE COMPLETED BY COUNSEL
or PRO SE LITIGANT FILING APPLICATION

TITLE

Applicant: <u>Bernell Earl</u>
Have there been any other filing in this
Court in this matter? ☐ Yes X No

BERNELL EARL

VS.

Are you seeking a Stay Order? X No
Priority Treatment? X No
If so you MUST complete & attach a
Priority Form

DARREL VANNOY, Warden

LEAD COUNSEL PRO SE LITIGANT INFORMATION

APPLICANT:
Name: <u>Bernell Earl, #154891</u>
Address: <u>CBB/LR-3</u>
La. State Penitentiary, Angola, LA 70712-9818
Phone: <u>N/A</u>   Bar Roll No. <u>N/A</u>
Pleading being filed: X In Proper Person,

RESPONDENT:
Name: <u>Warren Montgomery</u>
Address: <u>701 N. Columbia St.</u>
<u>Covington, LA 70433</u>
Phone: <u>Unknown</u>     Bar Roll No. <u>Unknown</u>
   X In Forma Pauperis

Attach a list of additional counsel/pro se litigants, their addresses, phone numbers and the parties they represent.

TYPE OF PLEADING

☐ Civil, X Criminal, ☐ Bar, ☐ Civil Juvenile, ☐ Criminal Juvenile, ☐ Other

ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court:_____   Docket No.
Judge/Commission/Hearing Officer:_____   Ruling Date:

DISTRICT COURT INFORMATION

Parish and Judicial District Court: <u>St. Tammany: 22ⁿᵈ JDC</u> Docket Number: <u>No. 539204-1</u>
Judge and Section: <u>Hon. August J. Hand</u> Date of Ruling/Judgment: <u>April 4, 2014</u>

APPELLATE COURT INFORMATION

Circuit: <u>First COA</u> Filing Date: <u>May 9, 2017</u> Docket Number: <u>No. 2017-KW-0661</u>
Applicant in Appellate Court: <u>Bernell Earl</u> Ruling Date: <u>July 10, 2017</u>
Panel of Judges: <u>JEW, JMM, PMc</u> En Banc: ☐

REHEARING INFORMATION

Applicant:_____ Date Filed:_____ Action on Rehearing:
Ruling Date:_____ Panel of Judges:_____ En Banc: ☐

PRESENT STATUS

☐ Pre-Trial, Hearing/Trial Scheduled Date:_____, ☐ Trial in Progress, Post Trial
Is there a stay now in effect? _____ Has this pleading been filed simultaneously in any other court?
If so, explain briefly

VERIFICATION

I certify that the above information and all of the information contained in this application is true and correct to
the best of my knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X,
are attached to this filing. I further certify that a copy of this application has been mailed or delivered to the
appropriate court of appeal (if required), to the respondent judge in the case of a remedial writ, and to all other
counsel and unrepresented parties.

<u>July 26, 2017</u>
DATE

*Bernell Earl*
SIGNATURE

IN THE
LOUISIANA SUPREME COURT


**BERNELL EARL,**

(Petitioner)

**VERSUS**


**DARREL VANNOY, Warden,
Louisiana State Penitentiary**

(Respondent)

---

# APPLICATION FOR WRIT OF REVIEW;
# AND MOTION TO STAY PROCEEDINGS

---

On Application to the First Circuit Court of Appeal, No. 2017-KW-0661; 22nd Judicial District Court, Parish of St. Tammany, No. 539204-1, Hon. August J. Hand, Judge; Denial of Application for Post-Conviction Relief.


Respectfully submitted this 26th day of July, 2017.


*Bernell Earl*
BERNELL EARL #154891
CBB/LR-3
LA. STATE PENITENTIARY
ANGOLA, LA 70712


**CRIMINAL PROCEEDING**

## TABLE OF CONTENTS:

WRIT APPLICATION FILING SHEET

TABLE OF AUTHORITIES..............................................................................................iii

REASONS FOR GRANTING THE WRIT...........................................................................3

    Ineffective assistance of trial counsel during jury selection........................................3

    Insufficient Evidence..................................................................................................4

    Ineffective assistance of trial counsel........................................................................5

    Trial court's abuse of discretion in the Motion for Continuance.................................7

QUESTIONS AND ISSUES PRESENTED.............................................................................1

JURISDICTION.......................................................................................................................1

NOTICE OF PRO-SE FILING.................................................................................................1

STATEMENT OF THE CASE..................................................................................................1

STATEMENT OF THE FACTS...............................................................................................3

ARGUMENTS..........................................................................................................................3

ARGUMENT I..........................................................................................................................3

    Whether Mr. Earl was denied effective assistance of counsel during the course of the Voir Dire, as counsel failed to protect Mr. Earl's constitutional rights to a fair and impartial jury. Sixth and Fourteenth Amendments to the United States Constitution........................3

ARGUMENT NO. II.................................................................................................................15

    Whether the State failed to meet its constitutional burden of proof in the conviction of Mr. Earl for Armed Robbery With a Firearm; and whether appellate counsel was ineffective for failing to raise this issue on Appeal..............................................................................15

INCORPORATED ARGUMENTS.........................................................................................22

    B. Ineffective Assistance of Counsel........................................................................22

    1(c) Failure to elicit testimony from Adriana concerning her past criminal convictions and criminal history........................................................................................................22

    1(d) and (e) Failure to properly contest the validity of the two prior convictions alleged for enhancement............................................................................................................23

    1(f) Failure to look at the Discovery submitted by the State....................................23

    Incorporated Arguments Claim No. Four:..................................................................24

    The trial court erred denying Petitioner's request for a thirty day continuance for the purpose of hiring a lawyer........................................................................................................24

    (5) Multiple Offender Adjudication...........................................................................25

SUMMARY.............................................................................................................................26

CONCLUSION AND PRAYER..............................................................................................27

CERTIFICATE OF SERVICE................................................................................................28

VERIFICATION......................................................................................................................28

## APPENDIX:

"A"   Uniform Application for post-conviction relief with attachments;

"B"   April 6, 2017 Denial by 22nd Judicial District Court to grant post-conviction relief;

"C"   Notice of Intent w/Order.

"D"   Original Application for Supervisory Writs

"E"   Ruling from Original Supervisory Writ.

## EXHIBITS:

"A"   Voir Dire Transcript

<u>TABLE OF AUTHORITIES</u>

## <u>U.S. CONSTITUTION:</u>

Fourteenth Amendment to the United States Constitution.................................................15, 19
Fourth Amendment to the United States Constitution...................................................17, 20, 21
Sixth Amendment to the United States Constitution.............................................3, 4, 6, 22, 25
Sixth and Fourteenth Amendments to the United States Constitution.....................................3

## <u>FEDERAL CASES:</u>

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)...............................19
Briesno v. Cockrell, 274 F.3d 204, 207-10 (5th Cir. 2001).....................................................17
Coleman v. Goodwin, 833 F.3d 537 (U.S. 5 (La.) 8/15/16)......................................vii, viii, 26, 27
Dupuy v. Cain, 210 F.3d 582 (5th Cir. 2000).........................................................................16
Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998)...........................................................4, 5
Giglio v. United States, 405 U.S. 150, 153-54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)...........19
Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)....................................1
Ibarra v. Thaler, 687 F.3d 222 (5th Cir. 6/28/12)..............................................................vii, 26
In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L. Ed. 2D 368 (1970).............................15, 17
Irvin v. Dowd, 366 U.S. 717, 81 S. Ct. 1639, 1641-42, 6 L. Ed. 2D 751 (1961)....................4, 7
Jackson v. Cain, 3:13-cv-02725 (8/11/15)...............................................................................3
Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 60 (1979)...............................16
Lindsey v. Cain, 2012 WL 1366040 (5th Cir. Apr. 19, 2012)....................................viii, 19, 27
Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012)..........................vii, 26
Morgan v. Illinois, 504 U.S. ___, 112 S. Ct. 2222, 2228-29, 119 L. Ed. 2D 492 (1992)........4, 7
Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (195)............................19
Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)......................20
Sepulvado v. Cain, 707 F.3d 550 (C.A. 5 (La.) 2013)..............................................viii, 19, 27
Smith v. Phillips, 455 U.S. 209, 222, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)..............................5
Styron v. Johnson, 262 F.3d 438, 450 (5th Cir.2001).............................................................16
Tinsley v. Borg, 895 F.2d 520, 527 (9th Cir. 1990)...................................................................6
U.S. v. Bagley, 473 U.S. 667, 676-83, 105 S.Ct. 3375, 87 L.Ed.2d 215 (1985)......................19
United States v. Alexander, 48 F.3d 1477, 1484 (9th Cir. 1995)................................................5
United States v. Allsup, 566 F.2d 68, 71 (9th Cir. 1977)...........................................................5
United States v. Cerrato Reyes, 176 F.3d 1253, 1260-61 (10th Cir. 1999).................................6
United States v. Gonzales-Balderas, 11 F.3d 1218, 1222 (5th Cir. 1994)..................................5
United States v. Martinez-Salazar, 528 U.S. 305, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000)...4, 5
United States v. Nell, 526 F.2d 1223, 1228-29 (5th Cir. 1976)...................................................5
United States v. Plache, 913 F.3d 1375, 1378 (9th Cir. 1990)...................................................6
United States v. Torres, 128 F.3d 38, 43 (2nd Cir. 1997)..........................................................5
Virgil v. Dretke, 446 F.3d 598, 607 (C.A.5 (Tex.) 2006).......................................................4, 7
Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).....................................20

## <u>LA. CONSTITUTION:</u>

Article 5, § 5 of the Louisiana Constitution of 1974....................................................................1

## <u>STATUTORY PROVISIONS:</u>

La.C.Cr.P. art. 930.4 (c)...........................................................................................................17
La.C.Cr.P. art. 930.7(B).............................................................................................................17
La.C.Cr.P. Art. 927....................................................................................................................17
La.C.Cr.P. Art. 930.3............................................................................................................16, 25
La.C.Cr.P. Art. 930.4.................................................................................................................16
La.C.Cr.P. Art. 930.4(F)............................................................................................................17
LSA-R.S. 14:63..........................................................................................................................1
LSA-R.S. 14:64.3........................................................................................................................1
LSA-R.S. 14:95.1........................................................................................................................1
LSA-R.S. 15:529.1.....................................................................................................................26
Rule X, § 1..................................................................................................................................5

## STATE CASES:

Boyd v. State, 204 So.2d 165 (Miss. 1967)................................................................20
Knop v. McCain, 561 So.2d 229, 233 (Ala. 1989).......................................................4
State ex rel. Melinie v. State, 93-1380 (La. 1/12/96), 665 So.2d 1172...........................25
State ex rel. Womack v. Blackburn, 393 So.2d 1216 (La. 1981).....................................17
State v. Ballom, 520 So.2d 476...........................................................................17
State v. Browder, 471 So.2d 726, 728 (La.App. 4th Cir. 1985).......................................17
State v. Egana, 771 So.2d 638 (La. 2000)..................................................................1
State v. Flowers, 441 So.2d 707, 712 (La. 1983).........................................................20
State v. Fontenot, 383 So.2d 365, 367 (La. 1980)......................................................20
State v. Gaines, 97-1327 (La. App. 4th Cir. 9/19/97), 701 So.2d 688..............................18
State v. Hallal, 557 So.2d 1388, 1389-90 (La. 1990)....................................................4
State v. Jones, 610 So.2d 782 (La. 1992)................................................................16
State v. Lee, 559 So.2d 1310, 1318 (La. 1990)............................................................4
State v. Martin, 376 So.2d 300, 307 (La. 1979).........................................................20
State v. Matheson, 407 So.2d 1150, 1158 (La. 1982)...................................................20
State v. Moak, 387 So.2d 1108 (La. 1980).................................................................1
State v. Morris, 397 So.2d 1237, 1251 (La. 1981)......................................................17
State v. Perry, 502 So.2d 543, 558 (La. 1987)...........................................................20
State v. Raymo, 419 So.2d 858 (La. 1982)...............................................................17
State v. Schaffer, 767 So.2d 49 (La. App. 4th Cir. 04/12/00).........................................17
State v. Williams, 438 So.2d 1286, 1287 (La. App. 3rd Cir. 1983)..................................18
State v. Wilson, 467 So.2d 503, 515 (La. 1985).........................................................4

## MISCELLANEOUS:

110k394.1(1)...............................................................................................21
110k394.1(3)...............................................................................................21
349k123 & 125.............................................................................................21
47 Am. Jur.2d Jury §266 (1995)..........................................................................5

## <u>REASONS FOR GRANTING THE WRIT</u>

In accordance with this Court's *Rule X, § 1*, Mr. Earl presents for his reasons for granting this writ application that:

The decision of a Court of Appeals conflicts with a decision of another Court of Appeals, this Court, or the Supreme Court of the United States, on the same legal issue.

A Court of Appeals has erroneously interpreted or applied the constitution or law of this state or the United States and the decision will cause material injustice or significantly affect the public interest.

The Court of Appeals has so far departed from proper judicial proceedings or so abused its powers, or sanctioned such a departure or abuse by a lower court, as to call for an exercise of this court's supervisory authority.

*Ineffective assistance of trial counsel during jury selection:*

At the heart of a fair and impartial trial is a fair and impartial jury. Mr. Earl contends that he was not afforded such due to counsel's ineffectiveness during the course of the jury selection.

Mr. Earl has properly argued that, "[t]he presence of an impartial jury cannot be harmless," and that the bias or prejudice of even a single juror is enough to violate that guarantee" in accordance with *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998), and *United States v. Martinez-Salazar*, 528 U.S. 305, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000).

Mr. Earl has shown the Courts that he was denied a fair and impartial jury due to counsel's ineffectiveness during the jury selection with the failure to either challenge for cause or peremptorily challenge Ms. Gonzales, Mr. Hernandez, Mr. Whitacre, and Mr. Guinot.

Judge August J. Hand and Ms. Gonzales both admitted that Ms. Gonzales worked for Judge Hand's wife in a local bakery and that they were friends. There must be an inference to Ms. Gonzales' impartiality towards Mr. Earl due to her relationship with Judge Hand and his wife. It is also noted that Ms. Gonzales was selected as the Jury Foreman during this trial.

**Most importantly,** Mr. Earl had argued the fact that he **could not have** received a fair verdict from Mr. Hernandez. Mr. Hernandez was **adamant** about the fact that since one of the co-defendants had pled guilty, all of the defendants were guilty. Even during the time the State attempted to "rehabilitate" Mr. Hernandez, testimony from Mr. Hernandez admitted that even though the State informed him that each of the defendants deserved a fair trial, the fact that the co-defendant had pled guilty would affect his deliberations.

There can be **no** trial strategy for failing to dismiss Mr. Hernandez, either for cause, or peremptorily

due to the fact that Mr. Hernandez **would not** be fair and impartial during the deliberations. Mr. Hernandez had stated such during the Voir Dire.

Although Mr. Whitacre's testimony during Voir Dire was not as impartial as those listed above, one must take into consideration that it appeared as though Mr. Whitacre had actually boasted about the fact that his step-daughter had been convicted in St. Tammany Parish.

Mr. Earl contends that Mr. Guinot had not been rehabilitated during the jury selection process. Mr. Guinot explained that this type of case would "be difficult" for him due to the fact that his father and sister were victims of a Home Invasion, and that the perpetrator had a gun (which could also be interpreted as an Armed Robbery).

Mr. Guinot testified that the incident concerning his father and sister was a "pretty horrifying experience for them, and from me just hearing about it and knowing the danger they were in."

Mr. Guinot testified that this experience **would absolutely** influence his decision during these proceedings, and testified to the fact that his opinion would be "**Jaded.**"

Mr. Earl contends that Mr. Guinot, could not, and **was not** rehabilitated during the jury selection process, nor can it be determined that Mr. Guinot would be a fair and impartial juror.

Although the Courts may view Mr. Winglett differently than Mr. Earl, it must be noted that Mr. Winglett had testified that although the Mandeville Police Department had failed to properly follow-up his complaint, he had a "**Great Admiration**" for them. This, in itself, would show that Mr. Winglett would most probably give the officers more credibility than any witness that Mr. Earl would call for the defense.

It also appears as though the Louisiana First Circuit Court of Appeals may have determined to give this Claim more consideration due to the fact that they had denied such on the showing made, and allowed him ample time to re-file such.

WHEREFORE, for the above reasons, and the reasons argued in the previous pleadings, Mr. Earl contends that his trial counsel was ineffective for failing to protect his constitutional rights during the jury selection in this matter.

*Insufficient Evidence:*

Mr. Earl contends that it appears as though the Louisiana First Circuit Court of Appeals failed to properly review this Claim. The evidence in this matter **MUST** be viewed as a whole. Due to the fact that Adriena Williams had pled guilty as to her part in this alleged robbery, she testified as to two different scenarios of the actual series of events which allegedly occurred on the date in question.

In Mr. Earl's trial, she testified that she was unable to view the robbery due to the fact that the hood and the trunk were open, blocking her view. However, in the trial for William Branch, Ms. Williams testified that "since the hood and trunk were open, she could see the entire incident."

This Court must also view the fact that Ms. Williams was given leniency in her sentence in return for her testimony in the cases of Mr. Earl and William Branch. It appears as though she had ensured that the State would uphold their bargain by committing perjury in either Mr. Earl's or Mr. Branch's trial. Could this be due to the fact that Boris Allen's property was actually found in her purse after her vehicle had been pulled over?

Surely, this Court must consider her testimony as "self-serving" in each of these trials as she had testified differently in each trial to ensure the conviction of both Mr. Earl and Mr. Branch. During the trial of Mr. Earl, Mr. Allen (the alleged victim) testified for the State. However, in the case against William Branch, Mr. Allen failed to appear to testify. As it was, the State could not obtain a conviction in the case against William Branch. Ms. Williams "changed" her testimony in order to assist the State in obtaining the conviction in Mr. Branch's trial. Was this to ensure that the State would not renege on her leniency given to her in her sentence?

Once this case was "tainted" with perjury, the entire validity of any of the convictions must be called into question. Was either of the defendants given a fair trial?

WHEREFORE, for the reasons stated above, and in the previous pleadings, Mr. Earl contends that the State failed to submit sufficient evidence of guilt beyond a reasonable doubt.

*Ineffective assistance of trial counsel:*

Mr. Earl contends that, at a minimum, the district court should have ordered that an evidentiary hearing be Granted in order to obtain testimonial evidence to determine whether his ineffective assistance of trial counsel Claims were meritorious.

Mr. Earl also contends that he should have been appointed counsel during these collateral proceedings in accordance with *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012).

In *Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 6/28/12), the Fifth Circuit held that: "As the majority states, *Martinez* recognizes a limited exception to *Coleman v. Thompson*, 501 U.S. 722, 746-47, 111 S.Ct. 2546, 2562-63 (1991)." Specifically, in *Martinez*, the Court said:

"To protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a post-conviction proceeding does not qualify as cause to excuse a

procedural default. *This opinion qualifies* <u>*Coleman*</u> *by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.*"

Even more relevant is the United States Supreme Court's handling of <u>*Martinez v. Ryan*</u> in the unpublished opinion of <u>*Lindsey v. Cain*</u>, 2012 WL 1366040 (5th Cir. Apr. 19, 2012).[1] In <u>*Lindsey*</u>, this Court granted a COA and remanded for further proceedings in light of <u>*Martinez*</u>, saying:

> When a state, like Louisiana, requires that a prisoner raise an ineffective assistance of counsel claim on collateral review, a prisoner can demonstrate cause for the default in two circumstances: (1) "where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial" and, (2) where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the <u>*Strickland [v. Washington*</u>, 466 U.S. 668 (1984)]." *Id.* at *8 (citation omitted). Further, the prisoner must also show that "the underlying ineffective assistance of trial counsel is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

Most recently, in <u>*Coleman v. Goodwin*</u>, 833 F.3d 537 (U.S. 5 (La.) 8/15/16), the United States Fifth Circuit Court of Appeals held that: "… but Louisiana prisoners can benefit from the <u>*Martinez/Trevino*</u> procedural-default rule if they can show that they have submitted an IATC claim and received IAC from state habeas counsel;" overruling their own decision in <u>*Sepulvado v. Cain*</u>, 707 F.3d 550 (C.A. 5 (La.) 2013).

Mr. Earl further argues that his trial counsel should have questioned Adriana Williams about her criminal history. The district court had erroneously denied relief in this matter stating, "it is not reasonably probable that discrediting Adriana would have resulted in a different outcome." The Court has seemed to overlook the fact that Mr. Earl's argument is that Ms. Williams is the person who had taken Mr. Allen's property while Mr. Earl and Mr. Boris Allen were in a "heated argument" concerning Ms. Williams. Once again, Mr. Boris' property was actually found in Ms. Williams' purse.

Ms. Williams' credibility was a major issue during these proceedings. Had counsel properly attacked her credibility during her testimony, the possibility of a different outcome is substantial.

The district court appears to have contradicted itself in its ruling concerning Mr. Earl's Claim that, "failed to review the discovery by the State." The district court noted that Mr. Earl was correct in is argument that trial counsel **should** have reviewed the discovery by the State prior to the commencement of trial, but that this failure did not rise to the level of deficient performance, and that Mr. Earl failed to show that he was prejudiced.

Without reviewing the evidence which the State intends to present during the course of the trial, how could the attorney be prepared to defend his client? Surely, the prejudice must be assumed when

---

1    This unpublished case and others are mentioned to demonstrate how this Court and others have applied <u>*Martinez*</u>

counsel has failed to take the necessary precautions to ensure that he is prepared to argue against the State's evidence. It would be similar to that of bringing a knife to a gunfight.

*Trial court's abuse of discretion in the Motion for Continuance:*

Mr. Earl contends that since he had informed the Court of the discrepancies between himself and the appointed counsel, the trial court should have allowed for a continuance for Mr. Earl to have a retained counsel to represent him in these proceedings.

The district court was, or should have been aware, that Mr. Earl was not intending to disrupt the trial setting. Mr. Earl was attempting to ensure that he adequate counsel during the trial due to the fact that it appeared as though his attorney was only attempting to inform him of a 49 ½ year plea bargain.

Mr. Earl was adamant of his attorney's deficiencies when he requested the 30 day continuance in order to retain counsel.

The trial court should have known of the animosity between Mr. Earl and his counsel. Once Mr. Earl informed the court that his counsel was inadequate and of the specific problems in his representation, it would naturally be difficult for an attorney to "put his best foot forward" in representing Mr. Earl.

## QUESTIONS AND ISSUES PRESENTED

1. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING MR. EARL'S PCR WITHOUT THE BENEFIT OF AN EVIDENTIARY HEARING.

2. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN FAILING TO APPOINT COUNSEL TO MR. EARL CONCERNING HIS INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS.

## JURISDICTION

The Louisiana Supreme Court has supervisory jurisdiction over this proceeding pursuant to **Article 5, § 5 of the Louisiana Constitution of 1974**, as amended.

## NOTICE OF PRO-SE FILING

Mr. Earl requests that this Honorable Court view these Claims in accordance with the rulings of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *State v. Moak*, 387 So.2d 1108 (La. 1980)(Pro-se petitioner not held to same stringent standards as a trained lawyer); *State v. Egana*, 771 So.2d 638 (La. 2000)(less stringent standards than formal pleadings filed by lawyers). Mr. Earl is a layman of the law and untrained in the ways of filings and proceedings of formal pleadings in this Court.

## STATEMENT OF THE CASE

Bernell Earl was charged by Bill of Information with Armed Robbery With a Firearm, in violation of LSA-R.S. 14:63 and LSA-R.S. 14:64.3 On October 4, 2013, Mr. Earl was arraigned and entered a plea of not guilty (Rec.p. 1). On November 26, 2014, the State amended the Bill of Information to add the charge of Possession of a Firearm by a Convicted Felon, in violation of LSA-R.S. 14:95.1 (Rec.p. 53), and Mr. Earl was arraigned and entered a plea of not guilty to the amended bill (Rec.p. 2).

Count Two was severed for trial,[2] and on January 6, 2014, jury trial began on the Armed Robbery charge (Rec.p. 5). Mr. Earl filed a Motion to Suppress Identification and Motion to Suppress Evidence, which were denied by the trial court on January 7, 2014 (Rec.p. 10-11). Trial continued until January 7, 2014, after which Mr. Earl was found guilty as charged of Armed Robbery (Rec.p. 15). Mr. Earl filed a Motion for New Trial and Motion for Post-Verdict Judgment of Acquittal which were denied by the trial court on January 8, 2014 (Rec.p. 83).

The State subsequently filed a Multiple Offender Bill of Information to which Mr. Earl entered a denial (Rec.p. 17). After a hearing on April 4, 2014, the trial court adjudicated Mr. Earl a Fourth Felony Offender (Rec.p. 21). The trial court then sentence Mr. Earl to life imprisonment at hard labor in the

---

2   After Mr. Earl's conviction and sentence on the Armed Robbery charge, the State dismissed the charge of Possession of a Firearm by a Convicted Felon.

Louisiana Department of Public Safety and Corrections without the benefit of Probation, Parole, or Suspension of Sentence (Rec.p. 21). The Court then immediately denied Mr. Earl's Motion for Reconsideration of Sentence (Rec.p. 21). Mr. Earl appealed.

On November 14, 2014, Mr. Earl, through Louisiana Appellate Project attorney, Lieu T. Vo Clark, timely filed his Original Brief on Appeal. Mr. Earl had also filed a Supplemental Brief in this matter. On April 24, 2015, the First Circuit Court of Appeals, in Docket Number 2014 KA 1534, affirmed Mr. Earl's conviction and sentence.

On May 22, 2015, Mr. Earl filed for Writ of Certiorari to the Louisiana Supreme Court. On April 22, 2016, the Supreme Court affirmed Mr. Earl's conviction and sentence in Docket Number 2015-KO-1042.

On June 27, 2016, Mr. Earl filed his Application for Post-Conviction Relief with Memorandum in Support to the district court.

On December 9, 2016, Mr. Earl received the the State's Procedural Objection to Defendant's Application for Post-Conviction Relief, with the State requesting an evidentiary hearing concerning the first two (2) Claims.

However, on April 6, 2017, the 22nd Judicial District Court denied Mr. Earl's Application without the benefit of an evidentiary hearing, and with written reasons. On April 13, 2017, Mr. Earl timely filed his Notice of Intent to Seek Writs to the First Circuit Court of Appeals.

On April 13, 2017, Mr. Earl filed his Notice of Intent to Seek Writs to the Louisiana First Circuit Court of Appeals. Mr. Earl was notified that his Supervisory Writ was due on or before May 25, 2017.

On May 9, 2017, Mr. Earl filed his Supervisory Writ to the Louisiana First Circuit Court of Appeals. However, on July 10, 2017, the Court of Appeals had denied Mr. Earl's Application on the "showing made" due to the fact that Mr. Earl had failed to include the Voir Dire transcript.

On July 19, 2017, Mr. Earl re-submitted his Supervisory Writ to the Louisiana First Circuit Court of Appeals, including the transcript pages from the Voir Dire.

Out of an abundance of caution (due to the fact that the Court of Appeals had Denied one Claims "On the Showing Made;" and the remainder of the Claims were Denied), Mr. Earl is filing for Supervisory Writs to this Honorable Court. Mr. Earl is also simultaneously filing a Motion to Stay the Proceedings in order to allow the Court of Appeals to review the Claim concerning ineffective assistance of trial counsel during the course of jury selection.

## STATEMENT OF THE FACTS

Boris Allen met Adriena Williams at Church's Fried Chicken where the two exchanged phone numbers (Rec.p. 305). After communicating for two days, Ms. Williams contacted Mr. Allen indicating that she was having car trouble and needed help (Rec.p. 306). After arriving at Ms. Williams' location, Mr. Allen told the police that two men came out of the woods armed with guns and demanded he "give it up" (Rec.p. 307). Mr. Allen later identified Bernell Earl as one of the armed individuals to whom he gave his wallet (Rec.p. 312). Mr. Earl was arrested along with Ms. Williams and William Branch and charged with Armed Robbery.

Sadly, Ms. Williams testified to two entirely different stories in the trial(s) of Mr. Earl and Mr. Branch. For instance, in Mr. Earl's trial, Ms. Williams testified that she had only known Mr. Allen a few days. However, in Mr. Branch's trial, she testified that she had known Mr. Allen for over a month.

Also, in Mr. Earl's trial, Ms. Williams testified that she was unable to see the crime due to the fact that the hood and trunk of the car were open. But, during Mr. Branch's trial, Ms. Williams testified that she was able to witness the crime because the hood and the trunk were open, leaving her room to see what was going on.

### ARGUMENTS

### ARGUMENT I

**Whether Mr. Earl was denied effective assistance of counsel during the course of the Voir Dire, as counsel failed to protect Mr. Earl's constitutional rights to a fair and impartial jury. Sixth and Fourteenth Amendments to the United States Constitution.**

Mr. Earl contends that his counsel denied him effective assistance of counsel during the course of the Voir Dire and failed to protect his constitutional rights to a fair and impartial jury.

**First and foremost,** the selection of the jury is one of the most vital and strategic proceedings during the course of a defendant's proceedings. Failure to properly address and question the jury concerning bias and the proper aspects of the law denies a defendant his right to a fair and impartial jury; one that will decide his fate concerning these serious allegations. Ineffective assistance of counsel claim centers on the performance of this attorney during Voir Dire.

In *Jackson v. Cain*, 3:13-cv-02725 (8/11/15), the U.S. District Court for the Western District of Louisiana granted habeas corpus relief to Petitioner Ward Jackson because his defense counsel was deficient, and actions prejudicial, during jury voir dire due to errors similar to this case. The Court stated, "counsel's actions during voir dire amounted to a denial of Jackson's Sixth Amendment right to effective assistance of counsel."

In essence, "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent jurors ... 'The theory of the law is that the juror who has formed an opinion cannot be impartial.'" *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 1641-42, 6 L.Ed.2d 751 (1961) (citation omitted)(quoted with favor in *Morgan v. Illinois*, 504 U.S. ___, 112 S.Ct. 2222, 2228-29, 119 L.Ed.2d 492 (1992)).

"We find merit ... to Virgil's finding of found with counsel's lack of response in the face of express statements by [juror] Sumlin and Sims conceding bias against Virgil. Sumlin stated that his relationship with law-enforcement officers would preclude him from serving as an impartial juror. Sims, likewise, volunteered that his mother's mugging was weighing on him as to whether he could be partial or impartial, finally concluding that he could [p. 610] not be fair and impartial. We hold that Sumlin's and Sims' unchallenged statements during voir dire that they could not be fair and impartial obligated Virgil's counsel to use a peremptory or for cause challenge on these jurors. Not doing so was deficient performance under *Strickland*.[3] *Virgil v. Dretke*, 446 F.3d 598 (CA 5 2006).

There comes a point when, no matter how close an individual issue may be, the aggregate of a juror's answers make it very clear that a challenge for cause should have been sustained. See, e.g., *Robertson*, 630 So.2d at 1283 (basing its decision on juror's "entire voir dire," which included an inability to consider mitigating circumstances as well as a difficulty following the law, the Court held it was reversible error to deny a challenge for cause); *State v. Hallal*, 557 So.2d 1388, 1389-90 (La. 1990)(telling trial courts to consider jurors' responses as a whole); *State v. Lee*, 559 So.2d 1310, 1318 (La. 1990)(trial judge must look at responses during entire testimony); *State v. Wilson*, 467 So.2d 503, 515 (La. 1985) (court looks at "total performance" on voir dire to determine ability to be impartial); see also, *Knop v. McCain*, 561 So.2d 229, 233 (Ala. 1989) (holding that "[w]hen the aggregate effect of [juror's] responses tend to verify the existence of 'deep-seated impressions,' she must be excluded for cause.").

The Sixth Amendment guarantees criminal defendants a verdict by an impartial jury. *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998). The bias or prejudice of even a single juror is enough to violate that guarantee. *Id.* Accordingly, [t]he presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice. *Dyer*, 151 F.3d at 973, n. 2; see also *United States v. Martinez-Salazar*, 528 U.S. 305, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000).

Jury bias claims are fertile ground for Post-Conviction Relief. Most people are predisposed to

---

3  Finding prejudice, the Sixth Circuit reversed the district court's denial of habeas corpus.

believe that criminal convictions are secured by fair, open-minded, unbiased jurors. When jury bias evidence is presented, the veneer of jury fairness is tarnished. Jury bias claims are double-edged in that they are effective in securing relief, but the relief is frequently accompanied by the hostility that many courts, prosecutors and former jurors give to investigators and attorneys inquiring into potential acts of jury bias. Thus, not surprisingly, these claims are often difficult to litigate and are frequently controversial, striking at the heart of the American system of justice.

Challenges for cause are the means by which partial or biased jurors should be eliminated. To disqualify a juror for cause requires a showing of either actual or implied bias that is ... bias in fact or bias conclusively presumed as a matter of law. 47 Am. Jur.2d Jury §266 (1995). Although [b]ias can be revealed by a juror's express admission of that fact ... more frequently, jurors are reluctant [p. 1112] to admit actual bias, and the reality of their biased attitudes must be revealed by circumstantial evidence. *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977). Because determinations of impartiality may be based in large part upon demeanor, this court typically accords deference to the district court's determinations, and reviews a court's findings regarding actual juror bias for "manifest error" or abuse of discretion. See: *United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995). In contrast, implied bias presents a mixed question of law and fact which is reliable de novo. *Dyer*, 151 F.3d at 979.

In essence, "[a]ctual bias is 'bias in fact' - - the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *United States v. Torres*, 128 F.3d 38, 43 (2nd Cir. 1997). Accordingly, courts have found actual bias where, based upon personal experience, a potential juror stated he could not e impartial when evaluating a drug dealer's testimony, *Torres*, 128 F.3d at 44, where a juror in a case involving embezzlement from a labor union emphasized his negative experiences with unions and responded equivocally when asked if he could render a fair and impartial verdict despite those views. *United States v. Nell*, 526 F.2d 1223, 1228-29 (5th Cir. 1976), and where a juror in a drug distribution case admitted to a conviction for marijuana possession, but stated that he believed it to have been the product of entrapment. *United States v. Gonzales-Balderas*, 11 F.3d 1218, 1222 (5th Cir. 1994).

Although actual bias is the mere common ground for excusing jurors for cause, "[i]n extraordinary cases, courts may presume bias based upon the circumstances." *Dyer*, 151 F.3d at 981; see also *Smith v. Phillips*, 455 U.S. 209, 222, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "Unlike the inquiry for actual bias, in which we examine the juror's answers on voir dire for evidence that show was in fact partial, 'the

issue for implied bias is whether an average person in the position of the juror in controversy would be prejudiced." *United States v. Cerrato Reyes*, 176 F.3d 1253, 1260-61 (10th Cir. 1999)(quoting *Torres*, 128 F.3d at 45).

Accordingly, we have held that prejudice is to be presumed "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990). We have also stated that the relevant question "is whether '[the] case present[s] a relationship in which the "potential for substantial emotional involvement, adversely affecting impartiality,' is inherent." *United States v. Plache*, 913 F.3d 1375, 1378 (9th Cir. 1990).

Applying this standard, we have found implied bias in cases where the juror in question has had some personal experience that is similar or identical to the fact pattern at issue in the trial or where the juror is aware of highly prejudicial information about the defendant. See: *Tinsley*, 895 F.2d at 527-29.

Because the implied bias standard is essentially an objective one, a court will, where the objective facts require a determination of such bias, hold that a juror must be recused even where the juror affirmatively asserts (or even believes) that he or she can and will be impartial. See *Dyer*, 151 F.3d at 982 ("Even if the putative juror swears up and down that it will not affect his judgment, we presume conclusively that he will not leave [it] … at the jury room door."). However, a juror's statements that reflect a lack of impartiality may be relevant to a determination of implied bias. A juror's response that case doubt upon his ability or willingness to serve impartially will be considered along with the relevant objective factors in determining whether implied bias, exist. Dyer, 151 F.3d at 984 (holding that juror's responses and conduct, in combination with her personal history, add[ed] up to that rare case where we must presume juror bias); *Burton*, 948 F.2d at 1159.

Mr. Earl contends that he was denied his rights under the Sixth Amendment to the United States Constitution when his counsel failed to properly question potential jurors, and Mr. Earl was denied a fair and impartial jury.

Jury bias claims may be fertile ground for Post-Conviction Relief. Most people are predisposed to believe that criminal convictions are secured by fair, open-minded, unbiased jurors. When jury bias evidence is presented, the veneer of jury fairness is tarnished. Jury bias claims are double-edged in that they are effective in securing relief, but the relief is frequently accompanied by the hostility that many courts, prosecutors and former jurors give to investigators and attorneys inquiring into potential acts of jury bias. Thus, not surprisingly, these claims are often difficult to litigate and are frequently

controversial, striking at the heart of the American system of justice.

Ineffective assistance of counsel claim centers on the performance of this attorney during Voir Dire.

In essence, "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent jurors ... 'The theory of the law is that the juror who has formed an opinion cannot be impartial.'" *Irvin v. Dowd*, 366 U.S. 717, 81 S. Ct. 1639, 1641-42, 6 L. Ed. 2d 751 (1961) (citation omitted)(quoted with favor in *Morgan v. Illinois*, 504 U.S. ___, 112 S. Ct. 2222, 2228-29, 119 L. Ed. 2d 492 (1992)).

"Trial counsel's deficient performance, in failing to challenge either for cause or otherwise venirepersons who had indicated that, due to their past association with law enforcement officers or to crime committed against family member, they could not be fair and impartial to Petitioner, with result that both of these venirepersons were seated on petit jury that convicted Petitioner and sentenced him to 30 years in prison, prejudiced Petitioner ..." *Virgil v. Dretke*, 446 F.3d 598 (C.A.5 (Tex.) 2006).

The Sixth Circuit relied, in part, on the Fifth Circuit's opinion in United States v. Nell, which found actual bias on the part of a venireperson that expressed a strong dislike for Unions. There, a defendant appealed the denial of for-cause challenges to two jurors. The Court ordered a new trial finding both jurors actually biased and noting that "[d]oubts about the existence of actual bias should be resolved against permitting the juror to serve." *Virgil v. Dretke*, 446 F.3d 598, 607 (C.A.5 (Tex.) 2006).

Mr. Earl contends that his counsel was ineffective for failing to properly address the issue of whether Ms. Gonzales would be a fair and impartial juror. It is remarkable that Judge August Hand had informed defense counsel that Mrs. Gonzales had worked for his wife as a baker, yet Mr. Barrow failed to inquire as to how her relationship with Judge Hand and his wife would affect her during the deliberations.

Mr. Earl relies upon the following colloquies in determining that his counsel was ineffective for failing to properly question Ms. Gonzales during the Voir Dire:

THE COURT:
> My wife is a baker, and one of the prospective jurors out there works for my wife. I hate to tell her that, but they make the best bread. Anything else you have?

(Rec. p. 138, lines 4-8)

THE COURT:
> Before we get started with my questions, I want to disclose, and I commented on it earlier that Ms. Gonzales there is, well was - - my wife's temporarily closed her bakery. And I do think Dong Phuong has better bread, so Kathy, you better not tell her that. She was an employee of my wife's. It doesn't have really much of anything to do, but as a matter of full disclosure, I just wanted to let everybody know that.

(Rec.p. 217, lines 9-19).

THE COURT:

The same questions that I asked the last group. Does anybody have any relationship with, know the attorneys, the persons here present, Mr. Earl, the witnesses, the persons that were read off? Mrs. Gonzales, who do you - -

MRS. GONZALES:

You.

(Rec.p. 225, lines 7-14).

It appears as though Mrs. Gonzales was a "personal" friend and employee of Judge Hand's wife at a bakery owned by Judge Hand's wife. It was apparent that Judge Hand recognized Mrs. Gonzales upon her arrival in the courtroom as a friend and employee of the family. So much, that Judge Hand had commented on it early in the stages of Voir Dire.

Knowing that Mrs. Gonzales was a friend and employee of Judge Hand's wife, counsel failed to properly question Mrs. Gonzales to identify if there would be any kind of problem with her sitting on the jury. Not only was she selected to serve on the jury, she was also the Foreperson of the jury during this trial. At a minimum, defense counsels should have delved into any favoritism Mrs. Gonzales would have shown the State due to the fact that she was a friend and employee of Mr. Hand's family.

The State may state that Mrs. Gonzales was "rehabilitated" during Voir Dire. However, Mr. Earl contends that there was **nothing** to "rehabilitate" her due to the fact that there was NO questions asked of her concerning her partiality or bias as a jury member serving on a jury in Judge Hand's court. Mr. Earl contends that Mrs. Gonzales should have either been challenged for cause or premptorily challenged in order to prevent her from serving on this jury.

Counsel failed to attempt to question or challenge Mrs. Gonzales before she was selected to serve on this jury. The amount of prejudice that Mr. Earl was subjected to is indescribable due to the fact that there was nothing in the Voir Dire to show that Mrs. Gonzales would or would not be a fair person even though she was a friend and employee of Judge Hand's family.

Mr. Earl also contends that his counsel was ineffective for failing to challenge Jeffery Hernandez during the course of the jury selection. Mr. Hernandez was adamant on the fact that Mr. Earl's co-defendant plead guilty to Simple Robbery for a five (5) year sentence. Mr. Hernandez continued to harbor on the fact that, "If one of the defendants is guilty, then they are all guilty. And with one of the defendants pleading guilty, then all of the defendants in this case was guilty."

Mr. Earl contends that Mr. Hernandez was never rehabilitated on his personal opinion of the fact that, "If one defendant is guilty, then all of the defendants are guilty." Although Mr. Hernandez was never "rehabilitated" by the State, counsel failed to either challenge Mr. Hernandez for cause, or in the

alternative, peremptory excuse him from the jury. Counsel should have know that there would have been an automatic "guilty" verdict from Mr. Hernandez due to the answers to simple questions during Voir Dire.

However, due to counsel's unprofessional errors, Mr. Hernandez was selected for the jury in this matter without any attempt to either "rehabilitate" him, or remove him from the jury. The following colloquy proves that Mr. Earl was prejudiced by his counsel's failure to properly act as counsel for Mr. Earl:

MR. HERNANDEZ:

Are you telling me that one of them pled guilty?

MR. NORIEA:

Yes.

MR. HERNANDEZ:

The whole group was charged with the same crime?

MR. NORIEA:

They were all originally charged with Armed Robbery.

MR. HERNANDEZ:

**So if one of them pled guilty, why wouldn't they all plead guilt? (emphasis added).**

MR. NORIEA:

Because they have a right to a trial. If they want a trial, we give them a trial in St. Tammany. That's all I can say.

But let's get back to this. You may not even hear from her. I may not even call her. She is available. What I'm asking you is she pled guilty to Simple Robbery and got five years in the Department of Corrections. She is not out running around going to sorority dances.

Mr. Hernandez if she does happen to take the stand, could you consider her testimony and not say - -

MR. HERNANDEZ:

Yeah.

MR. NORIEA:

- - the grain of salt lady is here?

MR. HERNANDEZ:

**No. I could take her testimony. But I'm just saying if she pled guilty, then why is she pleading guilty, then why wouldn't they all not be guilty? (emphasis added).**

MR. NORIEA:

Well, that's why I asked you before.

MR. HERNANDEZ:

Right.

MR. NORIEA:

One person is on trial, and what another person does, and another person is awaiting trial. Would that affect your deliberations? Could you - -

MR. HERNANDEZ:

**I would think so, yes. (emphasis added).**

MR. NORIEA:

In what way? I mean, how would it effect you?

MR. HERNANDEZ:

**Not that I know she is already guilty, no. I think it would affect my – – (emphasis added).**

MR. NORIEA:

In what way? I mean, how would it effect you?

MR. HERNANDEZ:

Why would she plead guilty and the rest of them are innocent? It doesn't make sense.

MR. NORIEA:

Could be. I mean, you have to listen to their testimony when they get on the witness stand and make your determination. If she pleads guilty and no other witnesses are called, you're not going to find them guilty?

MR. HERNANDEZ:

I'm just saying now that you told me that it kind of strikes me as odd.

MR. NORIEA:

I've never quite looked at it like that before. She is the witness to a crime. The question is can you listen to her testimony – –

MR. HERNANDEZ:

Yes.

(Rec.pp. 179-82).

According to the answers by Mr. Hernandez, since one of the defendants was guilty of the charge, all of the defendants were guilty. Mr. Hernandez held strong to that fact through all of the questions presented by the State. At one point, when the State asked Mr. Hernandez if he could listen to the testimony of the other defendant, Mr. Hernandez informed the State that, "Not that I know she is already guilty, no. I think it would affect my – –."

Defense counsel should have known that there was no "rehabilitation" for Mr. Hernandez due to the fact that although the State tried, Mr. Hernandez stood firm on the belief that "if one of the defendants was guilty, then all of the defendants were guilty." Mr. Earl was prejudiced by Mr. Hernandez being selected to serve on this jury. It was counsel's duty to either challenge Mr. Hernandez for cause, or peremptorily challenge him in order to prevent him from serving as a juror.

Given the answers by Mr. Hernandez during questioning by the State, the Court would have had no choice but to allow Mr. Hernandez to be dismissed for Cause. Counsel's deficient performance during the course of jury selection allowed Mr. Hernandez the opportunity to be selected as a biased and prejudiced member of this jury. Surely, no attorney would want Mr. Hernandez on a jury in this type of situation where one defendant has already plead guilty in this case.

Mr. Earl also contends that defense counsel was deficient for failing to challenge Mr. Whitacre during the course of selection of the jury. Mr. Whitacre disclosed that his oldest daughter had recently been prosecuted by the 22nd Judicial District Court, and that he believed that, "she got what she deserved." Mr. Whitacre even stated that he believed he could be fair to the State and defense in this matter.

Although this issue does not seem to be noteworthy, Mr. Earl contends that although Mr. Whitacre stated that he could be fair, one must wonder, "What type of family member would actually state that their loved one deserved to be incarcerated?" Could it be that Mr. Whitacre held some type of animosity towards his fellow man that his daughter was incarcerated? Could it be that Mr. Whitacre was of the opinion that since his daughter was incarcerated, others needed to know the pain that she suffered? That will never be known due to the fact that defense counsel failed to ask Mr. Whitacre of his feelings about his daughter's incarceration.

Naturally, the State would want Mr. Whitacre on the jury. He stated that his daughter got what she deserved when she got prosecuted by their District Attorney's Office. No one even thought to delve into the history of the case involving his daughter. Was she incarcerated due to an Armed Robbery? If so, was Mr. Whitacre of the opinion that everyone arrested for Armed Robbery was guilty? There are so many questions that will NEVER be answered on this matter due to the fact that neither the State, nor the defense counsel decided to properly question Mr. Whitacre to determine his bias towards the State, or his prejudices against Mr. Earl as a defendant in a criminal charge.

Sadly, Mr. Whitacre did voice his opinion as to the State's prosecution of his daughter in the following colloquy:

MR. WHITACRE:

> Good afternoon. My name is Victor Whitacre. I've lived in St. Tammany since 1980. I work in retail as a store manager. I have five, adult children, two stepchildren. Recently widowed. My oldest stepdaughter she is incarcerated by the state. Two, stay-at-home moms. My only son works for Firestone. I have a 19-year-old special needs daughter that goes to Fontainebleau High School. I think that's it.

THE COURT:

> Well, you bring up a point at least I want to talk to you a little bit about. You have a daughter who was prosecuted by the District Attorney here in St. Tammany Parish or was it another jurisdiction?

MR. WHITACRE:

> It would have been here, yes, sir.

THE COURT:

> Do you think she was wrongfully incarcerated?

MR. WHITACRE:

Not at all.

THE COURT:

Do you hold any animosity toward the State or the District Attorney's Office for having pursued a criminal proceeding against your daughter?

MR. WHITACRE:

No, sir. I pretty much feel she got what she deserved.

THE COURT:

So you can be both fair to the State and the defense?

MR. WHITACRE:

I believe so, yes, sir.

(Rec.pp. 127-28).

Mr. Earl contends that defense counsel failed to question Mr. Whitacre to make a proper determination if he could, in fact, be fair to the defense in this matter. In order to made a determination if a person would be fair to both the State and defense, questions must be asked of the potential jury member. In this case, defense counsel allowed Mr. Whitacre to be selected without properly questioning him in order to make a determination if he would, in fact, be fair to his client.

Mr. Earl contends that his counsel was ineffective for failing to either challenge Mr. Guinot for Cause, or challenging him peremptorily during the course of the jury selection. Mr. Guinot informed the Court of an incident which occurred to his father and younger sister involving a Burglary, where the person committing the Burglary was armed with a weapon.

Mr. Guinot even informed the Judge that this incident would influence him during this trial concerning an Armed Robbery. When asked by the Court if his experience with that incident would influence him during this particular trial, Mr. Guinot simply answered, "Absolutely."

Mr. Earl contends that the deficient performance by his counsel allowed Mr. Guinot to serve as a juror in this case unchallenged. According to his answers during Voir Dire, Mr. Guinot **SHOULD HAVE BEEN** removed from the jury, either by a Challenge for Cause or a peremptory challenge by the defense. Surely, the Court would have allowed Mr. Guinot to be removed for Cause after Mr. Guinot informed the Court that his opinion would be "jaded" in this matter. Simply put, with Mr. Guinot informed the parties of the fact that he was "definitely" biased towards the defendant and that the incident involving his family members would influence him during this trial, Mr. Guinot was STILL allowed to sit in judgment of Mr. Earl.

With Mr. Guinot informing the parties that he would definitely be biased against Mr. Earl during this trial, most definitely, Mr. Guinot had decided that Mr. Earl was "Guilty" before the first witness

was called to testify in this matter. Furthermore, the State and defense counsel failed to fully question Mr. Guinot to make a determination if he could be "rehabilitated" in order to be a fair and impartial juror in this case.

MR. GUINOT:

> My father's house was burglarized while they were still home. My parents and my younger sister were home. The guy had a gun. Luckily, my dad also had a gun and kind of chased the guy off. It was a pretty horrifying experience for them, and from me just hearing about it and knowing the danger they were in.

THE COURT:

> Right. Do you think that will bear any influence in this particular trial?

MR. GUINOT:

> **Absolutely. (emphasis added).**

THE COURT:

> You think it will?

MR. GUINOT:

> **Yeah. (emphasis added).**

THE COURT:

> So you're not going to be able to sit here and listen to the witnesses that come and decide, well, the State's born its burden of proof or it hasn't and segregate it?

MR. GUINOT:

> **It seem like my opinion may be a little jaded by it. (emphasis added).**

(Rec.pp. 160-61).

Mr. Earl contends that his counsel was ineffective for failing to challenge Mr. Guinot either for Cause or peremptorily during the course of the jury selection. Mr. Guinot was honest with the Court from the onset of the selection when he stated that the experience with his family members would affect his opinion; and the fact that his opinion would be jaded in a case such as this. Surely, with the circumstances surrounding this case, Mr. Guinot was automatically a vote for "guilty," mostly due to the experience he had informed the Court of.

Mr. Earl also contends that his counsel's ineffectiveness is shown during the course of the questioning of Mr. Winglett. Mr. Winglett informed the Court that he has a "great admiration" for the law enforcement in the area due to him being a victim of a crime.

Defense counsel failed to question Mr. Winglett for a proper determination if, in fact, Mr. Winglett would give more credibility to the officers involved in this case. The very limited colloquy of Mr. Winglett shows that counsel was not attempting to ensure that Mr. Earl was going to trial with a fair and impartial jury.

In Mr. Earl's determination that his counsel was ineffective during the questioning of Mr. Winglett,

Mr. Earl relies on the following colloquy:

ERNEST WINGLETT:

> One of the neighbors next door, their kid shot a window out of my wife's car. We called the
> Mandeville Police. They came out and arrested them.

THE COURT:

> What happened with it after that point and time?

ERNEST WINGLETT:

> I'm not sure. We lost track after he was arrested.

THE COURT:

> Did they repair the window in the vehicle?

ERNEST WINGLETT:

> No. We did that.

THE COURT:

> You were never contacted by any prosecutor or law enforcement as a follow-up to that that?

ERNEST WINGLETT:

> No, we never did. He got in a lot more trouble after that.

THE COURT:

> Were you disappointed with the lack of follow-up by the law enforcement?

ERNEST WINGLETT:

> No.

THE COURT:

> So you don't hold any animosity toward Mandeville PD, Sheriff's Department?

ERNEST WINGLETT:

> **No. As a matter of fact, I have a great admiration for them. (emphasis added).**

(Rec.pp. 230-31).

Mr. Earl contends that with Mr. Winglett's **GREAT ADMIRATION** of the law enforcement
officers, there is no doubt that he would give the officers more credibility than any witnesses that Mr.
Earl would call to testify in this case. See: *Virgil v. Dretke,* supra.

The purpose of the Voir Dire is to determine which potential jury members will be fair to both the
State and defendant for the purpose of a fair trial. However, in this case, the Voir Dire has failed Mr.
Earl. Or, simply put, Mr. Earl's attorney has failed him during the course of the Voir Dire. Each of the
potential jury members stated above **could not** give Mr. Earl a fair chance in this trial. Either because
of the fact of his charge, personal opinions, events that have take place in their own lives, or their
families lives, or their **great admiration** for the law enforcement in their area.

A defendant is not guaranteed a jury that will "lean" towards a "not guilty" verdict, but should be
guaranteed that the jury selected will not "lean" towards a "guilty" verdict. In this case, it is evident
that the persons selected to serve as jurors will not be fair and impartial during this trial. It was defense

counsel's duty to ensure that Mr. Earl was to be tried by a jury which would be fair and impartial; and would listen to the evidence before making a determination of the verdict.

After reviewing the above colloquies, it must be determined that Mr. Earl was not afforded a fair and impartial jury in this matter. These five persons chosen to serve on this jury informed the parties of their bias and prejudice during the course of the Voir Dire. One would consider that their answers and remarks to guarantee a vote of "guilty" by each of these jury members. Defense counsel failed to properly protect his client's rights in the selection of this jury.

Jury selection is one of the most important and vital portions of proceedings against a defendant, and counsel's duty is to protect his client's rights to a fair and impartial jury. In this case, Ms. Gonzales, Mr. Hernandez, Mr. Whitacre, Mr. Guinot, and Mr. Winglett could not serve as impartial juries in this trial. However, counsel failed to adequately protect Mr. Earl's rights in these proceedings.

Basically, counsel had abandoned his client during the course of the selection of the jury in this case. Counsel was not acting in the best interest of his client when it came to choosing a fair and impartial jury for a charge of Armed Robbery, or any type of "crime of violence."

Mr. Earl contends that he has shown this Honorable Court five (5) biased and prejudicial potential jurors that were able to serve on the jury without defense counsel challenging for Cause or peremptorily during the course of the Voir Dire. Counsel's deficient performance denied Mr. Earl the right to a fair and impartial jury in this matter.

WHEREFORE, for the above reasons, this Honorable Court, after a review of the argument, laws, and constitutional rights violated, must make the determination that Mr. Earl's counsel failed to protect Mr. Earl's constitutional rights during the course of the Voir Dire, and reverse the conviction and remand for a new trial.

## ARGUMENT NO. II

**Whether the State failed to meet its constitutional burden of proof in the conviction of Mr. Earl for Armed Robbery With a Firearm; and whether appellate counsel was ineffective for failing to raise this issue on Appeal.**

Mr. Earl contends that the State failed to meet its burden of proof in the case lodged against him in this matter. Furthermore, Mr. Earl contends that appellate counsel was ineffective for failing to raise this particular Issue during the course of the Appeal.

The Due Process Clause of the Fourteenth Amendment protects persons accused of a crime against conviction unless the State proves every element of the offense beyond a reasonable doubt. *In re*

*Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L. Ed. 2d 368 (1970).[4]

Both the La. Supreme Court and U.S. Supreme Court have reviewed insufficient evidence claims raised in post conviction petitions. First and foremost the United States Supreme Court set the standard in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 60 (1979). On writs from the denial of insufficient evidence claim raised in a state Application for Post-Conviction Relief. The Louisiana Supreme Court reviewed the 'Insufficient Evidence' claims raised in a post conviction application. *State v. Jones*, 610 So.2d 782 (La. 1992), 91-KH-1101, Reversed, Relator sought Post-Conviction Relief in the district court again challenging the sufficiency of evidence. The district court denied relief. The Fourth Circuit affirmed that ruling, and the Louisiana Supreme Court, after review of the record, concluded that relator's claim has merit and reverse accordingly.

In *Jackson*, the United States Supreme Court reached the legal standard of review, *i.e.*, ". . . whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt ..." In the court's view, the factfinder's role as weigher of evidence was preserved by considering all of the evidence in the light most favorable to the prosecution: ". . . The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319, 99 S.Ct., at 2790, 61 L.Ed.2d at 573-574. This standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *id. at* 324 n. 16, 99 S.Ct. at 2791 n. 16. *Dupuy v. Cain*, 210 F.3d 582 (5ᵗʰ Cir. 2000).

Louisiana law provides for review of Claims of Constitutional Errors upon Post Conviction Relief. La.C.Cr.P. Art. 930.3 Ground's for Relief (1): That the conviction was obtained in violation of the Constitution of the United States or the State of Louisiana.

Even though La.C.Cr.P. Art. 930.4 provides that "any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction shall be denied by the court" and "any claim which you raised in the trial court and inexcusably failed to pursue on appeal shall be denied by the court", the "may in both instances is discretionary and there are exceptions.

Mr. Earl also argues appellate counsel was ineffective for failing to raise insufficiency of evidence claim in his appeal. "[T]he *Strickland* standard applies to claims of ineffective assistance of counsel by both trial and appellate counsel." *Styron v. Johnson*, 262 F.3d 438, 450 (5ᵗʰ Cir.2001), *cert. denied*, ___

---

4    This type of error has been recognized as patent error preventing conviction for the offense, La.C.Cr.P. art. 920(2), see indicative listing at *State v. Guillot*, 200 La. 935, 9 So.2d 235, 239 (1942). Quoting: *State v. Crosby*, 338 So.2d 584, 588 (La.1976).

U.S. __, 122 S.Ct. 1175, 152 L.Ed.2d 118 (2002). If a Petitioner is able to show a reasonable probability that a claim omitted by his counsel would have resulted in the trial court's judgment being vacated or reversed, a viable ineffective assistance of counsel claim exist. See: *Briseno v. Cockrell,* 274 F.3d 204, 207-10 (5th Cir. 2001). Appellate counsel should have raised this claim on appeal but failed to do so.

However, a plain reading of our law appears to provide unconstitutional sufficiency of evidence can be raised either on appeal or in a collateral proceeding.

The trial court erred in failing to comply with La.C.Cr.P. Art. 930.4(F) which states:

> "F. If the court considers dismissing an application for failure of the Petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the Petitioner to state reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim."

Mr. Earl contends that if the trial court complies with the above statute he can show that his failure to present this claim on appeal was excusable. In *State v. Ballom,* 520 So.2d 476, the court addressed an insufficiency of evidence claim on Post-Conviction Relief and held:

> "The defendant filed yet another application for post conviction relief in the trial court alleging **insufficiency of evidence** to support his conviction. After the trial court denied this application, [] he applied for relief to this court. Defendant alleged a claim which, if established, would entitle him to relief. La.C.Cr.P. Art. 927. However, if a post conviction application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief. C.Cr.P. art. 930.4 (c), *after* ordering the petitioner to state the reasons for his failure. Art. 930.4 (F). Thus, [t]he court ordered defendant to show cause why his application should not be dismissed and pursuant to C.Cr.P. art. 930.7(B) appointed counsel to assist him in preparing his statement of reasons." (Emphasis added).

More on point in *State v. Schaffer*, 767 So.2d 49 (La. App. 4th Cir. 04/12/00); the Court held: Appellate counsel only presented in his brief issues relating to the Fourth Amendment claim and thus did not raise the question of whether the evidence presented was constitutionally sufficient to convict defendant. However, in *State v. Browder*, 471 So.2d 726, 728 (La.App. 4th Cir. 1985), the court stated, "Although not specifically assigned as error, the sufficiency of evidence to support the appellant's conviction must be reviewed as per *State v. Raymo*, 419 So.2d 858 (La. 1982)." In *Raymo*, the Supreme Court stated, because the state's case was devoid of evidence of an essential element of the charged offense . . . defendant's conviction and sentence must be set aside. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1069, 25 L.Ed.2d 368 (1970), regardless of how the error is brought to the attention of the reviewing court. *State ex rel. Womack v. Blackburn*, 393 So.2d 1216 (La. 1981); Id. 1220 (Lemmon, J. Concurring); cf. *State v. Morris*, 397 So.2d 1237, 1251 (La. 1981) (on rehearing), 419 So.2d at 861. Additionally, "[w]e do not hold that insufficiency of the evidence is an error patent which should be

checked in every case. But, if the error comes to the attention of the Court, the Court should recognize it, because no one should be put in prison if he has been convicted on insufficient evidence." *State v. Williams*, 438 So.2d 1286, 1287 (La. App. 3rd Cir. 1983) (citing *State ex re. Womack*, supra). In *State v. Gaines*, 97-1327 (La. App. 4th Cir. 9/19/97), 701 So.2d 688, this court held; the question could be reviewed "on its own motion".

Mr. Earl admits that he is relying on two different transcripts of Ms. Williams' testimony in order to meet his burden of proof in this Issue. Mr. Earl's trial was on January 7, 2014; Mr. William Branch's trial was on May 20, 2014. (See: Exhibit "A" transcript of Mr. Bernell Earl pp. 370-383; and, Exhibit "B" transcript of Mr. William Branch pp. 210-247).

It appears that the State has allowed Ms. Williams testimony to go uncorrected in either of these cases. Either she could see the crime being committed; or she couldn't. The State has allowed this alleged co-defendant to testify on behalf of the State in two different aspects of this case, apparently changing her testimony to meet the needs of the State in order to meet her obligations of the plea agreement she has made with the State.

Ms. Williams had plead guilty to Simple Robbery for a 5 year sentence. Apparently, part of the plea agreement was that she had to testify for the State against the other two co-defendants in this case; Mr. Bernell Earl and Mr. William Branch. A reading of both of the testimonies for the same incident, as allegedly observed by Ms. Williams, places doubt as to the State's case against either of these defendants.

One of the strangest occurrences pertaining to Ms. Williams testimonies is the fact that in Mr. Earl's trial, Ms. Williams testified that she was unable to see the actual crime being committed due to the fact that the hood and trunk were open on the car. However, at the trial of Mr. Branch, Ms. Williams testified that she was able to see the entire crime due to the fact that the hood and trunk were open on the car, and she was able to see through the "cracks" of the openings.

Most likely, Ms. Williams had testified to being able to see the incident during Mr. Branch's trial must have been due to the fact that Mr. Allen had not appeared to testify in the trial against Mr. Branch. It appears that the State had to rely solely on the testimony of Ms. Williams as an eyewitness to the crime in order to convict Mr. Branch of any wrongdoing.

Furthermore, during Mr. Earl's trial, Ms. Williams testified that Mr. Earl and Mr. Branch had been hiding in the bushes prior to the arrival of the alleged victim in this case. However, during the trial of Mr. Branch, Ms. Williams testified that Mr. Earl was standing next to her with a gun pointed at her

head when the alleged victim was driving up the the scene of the crime. Ms. Williams then testified that when the alleged victims was a few yards from where this crime allegedly happened, Mr. Earl "jumped" into the bushes.

In Mr. Earl's case, Ms. Williams testified that she had known the alleged victim for "a few days," stating that she had met him at Church's Chicken on Friday, met him on Saturday, and then he was robbed on Sunday. However, in Mr. Branch's trial, she testified that she had been dating the alleged victim for approximately a month before the robbery occurred.

**Inconsistencies of this magnitude** from the State's star witness greatly prejudiced Mr. Earl and has denied him the right to a fair trial. Surely, with these inconsistencies, where does the perjury stop and the truth begin? How is the Court to determine if ANY of her testimony is accurate or truthful?

The Supreme Court has interpreted Fourteenth Amendment Due Process protections to require a new trial when convictions are obtained through material evidence known to be false by representations of the State. *Giglio v. United States*, 405 U.S. 150, 153-54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (195). This is true regardless of whether the State solicits false testimony or merely allows testimony which it knows to be false to go uncorrected. *Giglio*, 405 U.S., at 153, 92 S.Ct. 763; *Napue*, 360 U.S., at 269, 79 S.Ct. 769. "Any understanding or agreement as to a future prosecution would be relevant to [the witness's] credibility and the jury [is] entitled to know of it." *Id.*, at 155, 92 S.Ct. 763. In addition, when the prosecution has evidence favorable to a defendant in its possession it must produce that evidence. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The evidence need not be exculpatory; a constitutional violation also occurs when material impeachment evidence is withheld. *U.S. v. Bagley*, 473 U.S. 667, 676-83, 105 S.Ct. 3375, 87 L.Ed.2d 215 (1985). The State's duties regarding favorable evidence are commonly referred to as the *Brady* rule.

Based on the particular circumstances surrounding this robbery, which include the fact that there was no physical evidence, and the nature of Ms. Williams' testimony, which is the only evidence that served to convict, this matter should be resolved by reversing the conviction, vacating the sentence, and remanding for a new trial.

Mr. Earl contends that the weapons allegedly used in the commission of this crime must be tested for DNA and fingerprints in order to ensure who had handled these weapons. Mr. Earl has simultaneously filed a Motion for Post-Conviction DNA and Fingerprint Testing.

According to the testimony adduced during the course of the trial, officers had searched and found

the weapons at the time that Mr. Earl's vehicle was pulled over on the side of the street. However, the State is alleging that the weapons were not pulled from the vehicle until AFTER the Search Warrant had been signed.

"The government's right to search the person of the accused when legally arrested to discover and seize the fruits or evidence of crime has little applicability to searches involving intrusions beyond the body's surface. Such intrusions are forbidden by the Fourth Amendment unless (1) there is a clear indication such evidence will be found; (2) the search is authorized by a warrant issued by a neutral and detached magistrate, absent an emergency which threatens destruction of the evidence during the delay necessary to obtain a warrant; and (3) the search or intrusion is performed in a reasonable manner. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)." *State v. Fontenot*, 383 So.2d 365, 367 (La. 1980).

In *Boyd v. State*, 204 So.2d 165 (Miss. 1967), the Court suppressed evidence seized from a truck, holding:

> "[T]he motion to suppress the evidence discovered during the search of appellant's truck should have been sustained ... Personal service of the warrant [to search the truck] could have been easily obtained, but no service was secured. [T]he evidence obtained under the search was inadmissible.
> *Seizure — What constitutes a seizure*: "Whenever a police officer accosts an individual and

restrains his freedom to walk away, he has 'seized' that person." *State v. Flowers*, 441 So.2d 707, 712 (La. 1983).

*Standing*: The Louisiana concept of standing is much broader than that found under federal law. "The Louisiana Constitution does not limit standing to challenge a search to those who live in the premises and thus have a reasonable expectation of privacy in it. Louisiana Constitution of 1974, Art. I, Section 5 provides in pertinent part: 'Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.'" *State v. Perry*, 502 So.2d 543, 558 (La. 1987)(emphasis in original).

*Warrant requirement*: "It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions." *State v. Matheson*, 407 So.2d 1150, 1158 (La. 1982). "In the case of a warrant-less search the burden of proof rests on the State to show that an exception to the requirement of a search warrant is applicable." *State v. Martin*, 376 So.2d 300, 307 (La. 1979)(citing cases).

Requirement that person or thing to be seized be particularly described applies to both arrest and search warrants. *Wong Sun v. U.S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Fourth

Amendment to the United States Constitution; and, 349k123 & 125.

Evidence seized during unlawful search cannot constitute proof against victim of search, and exclusionary prohibition extends to indirect as well as to direct products of such invasion. Fourth Amendment to the United States Constitution; 110k394.1(1).

Test of excludability is not whether evidence would not have come to light but for illegal actions of police but whether evidence was come at by exploitation of illegality rather than by means sufficiently distinguishable to be purged of primary taint. *Wong Sun v. U.S.*, supra; Fourth Amendment to the United States Constitution; and, 110k394.1(3).

Mr. Earl admits that the trial court has previously denied a Motion to Suppress the firearms during the course of pre-trial. However, during the course of this trial, witnesses specifically testified that these firearms were removed from Mr. Earl's vehicle prior to the issuance of a Search Warrant for the vehicle in which the officers allege the weapons were found.

Mr. Earl contends that had the State tested these weapons, DNA and fingerprint evidence would have shown that these weapons were handled by the officers prior to the Search Warrant being signed and issued.

Mr. Earl further contends that had the officers handled these weapons prior to the Search Warrant being obtained, these weapons would therefore be excluded from the trial due to the illegal search of Mr. Earl's vehicle.

Testimony adduced during the course of the trial shows that these weapons were, in fact, handled by the officers soon after the vehicle was pulled over, parked on the side of the road, and the occupants secured. As the occupants were all contained (or restrained), there was no imminent danger of any of them returning to the car to retrieve any type of weapon which could inflict damage upon the officers.

Scott Powers testified that the guns were handled by officers at the scene (Rec.p. 354). Ms. Williams also testified that the officers took the guns out of the car (Rec.p. 374)(He went and told me he got them)(He came back to the officer and told him that he retrieved the guns from the car) (Rec.p. 375).

According to the record, the Crime Lab made no attempt to obtain DNA or fingerprints from these weapons (Rec.p. 349).

WHEREFORE, for the reasons stated above, this Honorable Court MUST find that the State failed to meet its constitutional burden of proof in the conviction Mr. Earl for Armed Robbery With a Weapon, and grant the relief sought in this matter.

## INCORPORATED ARGUMENTS
### B. Ineffective Assistance of Counsel

Petitioner argued here that his attorney failed to investigate and prepare for his defense. The record reflects that prior to trial, Petitioner informed the Court that he was not satisfied with his attorney. He told the Court his counsel had not investigated nor prepared for his trial and he asked the Court for 30 days to allow him to hire another attorney (See: Tr.pg. 104).

Petitioner further informed the Court that he met his attorney for the first time on Oct. 4, that he had not read any of the paperwork, that he came in telling Petitioner 49 ½ years or they were going to bill him and give him 198 years. That the next time he saw counsel, the offer was life. Counsel took Petitioner to trial based upon a split second interview at the jail where he said he was ready for trial, telling him then that he would be convicted, that all he intended to do was cross-examine the State's witnesses.

Denying relief here, the Court concludes that Petitioner does not show what other witnesses counsel could have found or what they could have said in support of Petitioner's theory. The Court also finds that counsel argued Petitioner's version of events to the jury. Denying relief the Court says: "Petitioner does not show how counsel provided the deficient performance or how his deficient performance could have resulted in a different outcome sufficient to raise doubt as to the jury's verdict. However, it is respectfully argued that the Court should have appointed him counsel and should have conducted an evidentiary hearing on his Claim of ineffective assistance of trial counsel in this regard. The demands of _Strickland_, are not insurmountable and trial counsel in the instant case fell well short of the minimus of competency and effectiveness contemplated by the Sixth Amendment. Ineffective counsel requires a cumulative analysis. It is not proper to merely divide up each issue and evaluate it in isolation; rather, the Court should review the totality of the circumstances and the cumulative effect of trial counsel's ineffective and deficient conduct. _Strickland_, 466 U.S., at 690.

Denying Post-Conviction Relief on this claim, the court isolated the issues, a procedure the _Strickland_ Court condemned.

### 1(c) Failure to elicit testimony from Adriana concerning her past criminal convictions and criminal history.

Here, Petitioner contends that counsel erred failing to question Adriana about her past criminal history. The court says Petitioner cannot show prejudice in this regard. The Court concluded that it is not reasonably probable that discrediting Adriana would have resulted in a different outcome. Petitioner disagrees, in fact discrediting Adriana further would lend credence to the defense theory that

Adriana and Boris had set him up. In fact, the evidence showed that Adriana had all Boris' property in her purse. Showing the jury the extensive criminal history of Adriana may have resulted in the jury believing she was capable of most anything and that is another reason Petitioner wanted counsel to put her on the stand. It is reasonably probable that additional bad acts committed by Adriana would have resulted in a different outcome.

**1(d) and (e) Failure to properly contest the validity of the two prior convictions alleged for enhancement.**

Petitioner argued here that counsel failed to adequately investigate and prepare for the multiple offender hearing. Petitioner referred the court's attention to pg. 425 of the trial record:

Defense counsel stated: "Your Honor, I believe I have a Motion to Quash Bill of Information pending, first of all. Second, of all please note my objection to bills of information generally on all constitutional grounds and that's it."

As the court noted in its denial, the record reflect that counsel filed a Motion to Quash, arguing that the evidence produced by the State was inadequate (Tr.p. 425). The Court notes that although Bills of Information were used to identify the various records, the State entered the actual case files for the two prior convictions, that the Court did not rely on the Bills of Information alone, that the Court noted the (same name, date of birth, and social security number for each of the prior convictions). The Court states also that it checked through the records of the previous convictions to ensure that the defendant was the same.

Petitioner does not know what the Court is saying or implying when it says the State entered the actual case files for the two prior convictions, that it did not rely on the Bills of Information alone. The Court missed the point of Petitioner's argument here, he has argued that his counsel's performance here was deficient because he did not orally argue the insufficient evidence. He did file a Motion to Quash , but did not argue that actual convictions, fingerprints and/or photographs were necessary. Counsel's failure to point out the deficiency allowed the State to introduce the records to the Court without argument of the sufficiency of the evidence. The Court erred concluding that counsel's performance here was adequate, and that the claim has no merit.

**1(f) Failure to look at the Discovery submitted by the State.**

Petitioner contends that counsel failed to review some photographs that were later admitted into evidence. The record shows that defense counsel objected when the State offered into evidence Exhibits 1-7, which were identified as photographs of the automobile Adriana was driving on the day she claimed her car broke down. Counsel's objection was based on his belief that the photos were not

provided in pre-trial discovery. The State responded that they were included on a disc different from the one that also contained the confession of Petitioner's co-defendant, William Branch, and the victim's statement.

Denying relief, the Court noted that Petitioner is correct that counsel should have thoroughly reviewed discovery by the State before trial. But that this failure does not rise to deficient performance and that Petitioner cannot show how he was prejudiced. Petitioner disagrees and again contends that it is not proper to merely divide up each issue and evaluate it in isolation; rather the Court must review the totality of the circumstances and the cumulative effect of trial counsel's ineffective and deficient performance. See: *Strickland*, 466 U.S., at 690.

In the instant case, the failure to review documents obtained from the State through discovery before trial lends credibility to Petitioner's allegation that counsel was not investigating and preparing for the trial.

It is respectfully argued that counsel's errors were severe and pervasive and robbed Petitioner of the constitutionally effective defense of which the United States and Louisiana Constitutions guarantee him and there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.

### Incorporated Arguments Claim No. Four:

**The trial court erred denying Petitioner's request for a thirty day continuance for the purpose of hiring a lawyer.**

The record clearly reflects here that Petitioner requested from the Court, a continuance of 30 days so that his son could retain him another lawyer (See: Tr.pp. 104-113). The record clearly reflects that Petitioner told the Court his reasons for wanting to employ another attorney: Counsel had consulted with him one time and that was to offer him a 49 ½ year plea bargain, the next it was life. Petitioner told the Court that counsel was not concerned of his innocence or guilt, and that he told him he would probably be convicted, that all he was going to do was cross-examine State witnesses.

Petitioner told the Court counsel had done no investigation and had not prepared to defend him, that he did not feel safe with him. The Court, at the time, said Petitioner had not given it a valid reason for discharging his attorney. This is the first time Petitioner had asked for a continuance. Denying relief here the Court said: "The Court did not err in refusing to allow Earl to disrupt the trial setting for the possibility that he might obtain retained counsel." Thus, what the Court is implying is that Petitioner was attempting to disrupt the trial setting, and that is the only reason given for denying the 30 day

continuance.

However, nothing in the record indicates that Petitioner was attempting to disrupt the trial setting. Nothing in the record indicates that Petitioner was attempting to manipulate so as to obstruct orderly procedure. And nothing in the record indicates that Petitioner asked for this continuance in an attempt to thwart the administration of justice. And without one of these findings, it was error for the Court to deny the requested 30 days continuance for the purpose of obtaining new counsel.

The Court has given no compelling purpose for denying Petitioner his Sixth Amendment right to retained counsel by denying his request for a 30 day continuance. This error is a structural defect and no amount of prejudice is required. See: Law and Jurisprudence cited to the Court below in the attached lower court briefs.

### (5) Multiple Offender Adjudication

Petitioner argued here that the evidence introduced by the State to support the multiple offender adjudication is insufficient. Petitioner argued that the State introduced no fingerprints, photos or eyewitness testimony, or pen packs to identify him as the one and same person alleged in the prior conviction.

Petitioner also contends the State failed to prove the 10 year cleansing period did not lapse with regard to the prior convictions because nothing introduced by the State showed discharge dates. Because both these arguments deal with sentencing issues, the trial court denied relief pursuant to La.C.Cr.P. Art. 930.3 and *State ex rel. Melinie v. State,* 93-1380 (La. 1/12/96), 665 So.2d 1172.

Art. 930.3 sets out grounds for Post-Conviction Relief, although it does not provide a basis for review of claims of excessiveness or other sentencing error on Post-Conviction as far as the State is concerned federal courts demand that all claims must be exhausted before being brought into federal court and in some cases have disagreed with the State on this issue when as Petitioner raised here, the sufficiency of the evidence to support the habitual offender adjudication.

Even though the Court concludes that the habitual offender adjudication constitutes sentencing for purposes of *Melinie,* supra; and Art. 930.3, it is respectfully argued that the insufficiency of the evidence to support habitual offender adjudication is proper on Post-Conviction and can even be considered "error patent."

Petitioner has submitted this issue for the purpose of exhaustion of his state court remedies. If the evidence is insufficient, there will be no sentence. If the evidence is insufficient and a sentence is pronounced then the sentence is illegal.

It is respectfully argued that the trial court erred denying relief of the sufficiency of the evidence to support the habitual offender adjudication.

LSA-R.S. 15:529.1 requires proof of an accused's alleged prior felony conviction as well as his identity. The burden of proof rests with the State. If the State establishes a prior felony conviction, then it must offer that the accused is the same person who was convicted of the prior felony. The sufficiency of the evidence of identity to support adjudication of habitual offender is properly raised on collateral review.

## SUMMARY

Mr. Earl contends that the district court abused its discretion in denying his PCR without the benefit of an evidentiary hearing in this matter. Accordingly, the State, in its Answer requested that an evidentiary hearing be held before the Court ruled on this Claim.

Mr. Earl also contends that the Louisiana First Circuit Court of Appeals abused their discretion in denying him relief, especially concerning the ineffective assistance of trial counsel.

It must also be noted that the district court Judge abused his discretion in the denial of Claim 1 concerning the ineffective assistance of trial counsel during jury selection, as he has erroneously stated that, "... Ms. Gonzales was a **former** employee of the Judge's wife, who owned a bakery" (**emphasis added**). However, according to the Judge's own remark, it was stated that his wife's bakery was only "temporarily" closed. This would insinuate that the bakery would not be closed permanently.

Furthermore, it appears as though the district court has overlooked the Claim as a whole concerning the ineffective assistance of trial counsel during jury selection. Mr. Earl was, in fact, arguing that the trial counsel had failed to properly question Ms. Gonzales concerning her close relationship with the Judge. Mr. Earl also argued the fact that the trial counsel failed to protect his rights during the course of the entire Voir Dire.

Mr. Earl argued that he was denied his right to a fair and impartial trial with the trial counsel's failure to properly conduct jury selection in its entirety as defense counsel had allowed persons to be chosen for the jury that would be biased and/or prejudiced against Mr. Earl during these proceedings.

Mr. Earl avers that the district court should have appointed counsel to properly address the ineffective assistance of trial counsel Claims pursuant to *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012); *Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 6/28/12); and *Coleman v. Goodwin*, No. 14-30785 (U.S. 5 (La.) 8/15/16).

In *Lindsey v. Cain,* 2012 WL 1366040 (5th Cir. Apr. 19, 2012),[5] the U.S. Fifth Circuit Court of Appeals granted a COA and remanded for further proceedings in light of *Martinez,* saying:

> When a state, like Louisiana, requires that a prisoner raise an ineffective assistance of counsel claim on collateral review, a prisoner can demonstrate cause for the default in two circumstances: (1) "where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial" and, (2) where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the *Strickland* [*v. Washington,* 466 U.S. 668 (1984)]." *Id.* at *8 (citation omitted). Further, the prisoner must also show that "the underlying ineffective assistance of trial counsel is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

Most recently, in *Coleman v. Goodwin,* 833 F.3d 537 (U.S. 5 (La.) 8/15/16), the United States Fifth Circuit Court of Appeals held that: "… but Louisiana prisoners can benefit from the *Martinez/Trevino* procedural-default rule if they can show that they have submitted an IATC claim and received IAC from state habeas counsel;" overruling their own decision in *Sepulvado v. Cain,* 707 F.3d 550 (C.A. 5 (La.) 2013).

## CONCLUSION AND PRAYER

**WHEREFORE,** Mr. Bernell Earl respectfully prays that for the reasons presented herein, that this Honorable Court GRANT the instant writ application and therefor GRANT him the relief he is entitled to as a matter of both federal and state constitutional law.

Additionally, Mr. Earl respectfully request that this Honorable Court allow him to Stay these proceedings until the Louisiana First Circuit Court of Appeals has ruled upon the Claim which had been "Denied on the Showing Made."

Respectfully submitted this 26th day of July, 2017.

Bernell Earl

Bernell Earl, #154891
CBB/LR-3
La. State Penitentiary
Angola, LA 70712

---

5   This unpublished case and others are mentioned to demonstrate how this Court and others have applied *Martinez*.

## CERTIFICATE OF SERVICE

I, Bernell Earl hereby certify that I have served a true and correct copy of the above and foregoing upon the Clerk of Court's Office, Louisiana Supreme Court by forwarding a copy to Legal Programs to be filed electronically; and the District Attorney, St. Tammany Parish, by placing same in the Institution's Legal Mail System for depositing in the U.S. Mail, properly addressed and with proper, first-class postage pre-paid, this 26th day of July, 2017.

*Bernell Earl*
Bernell Earl

## VERIFICATION

I, Bernell Earl, hereby verify that I have read and understand the statements made in the above and foregoing and that the statements made are true and correct to the best of my knowledge, belief, and information under the penalties of perjury.

*Bernell Earl*
Bernell Earl



*Supreme Court*
STATE OF LOUISIANA
*New Orleans*

**EX-B1**

*EARL -vs- GOODWIN*
*NO. 22-962*

CHIEF JUSTICE
  BERNETTE J. JOHNSON

Seventh District

JOHN TARLTON OLIVIER
CLERK OF COURT

JUSTICES
  GREG G. GUIDRY
  SCOTT J. CRICHTON
  JAMES T. GENOVESE
  MARCUS R. CLARK
  JEFFERSON D. HUGHES III
  JOHN L. WEIMER

First District
Second District
Third District
Fourth District
Fifth District
Sixth District

400 Royal St., Suite 4200
NEW ORLEANS, LA 70130-8102

TELEPHONE (504) 310-2300
HOME PAGE  http://www.lasc.org

July 28, 2017

Bernell Earl, #154891
CBB/LR-3
Louisiana State Penitentiary
Angola, LA  70712

**RECEIVED**

AUG 06 2017

Legal Programs Department

**SENT VIA ELECTRONIC TRANSMISSION**
**PAGES SENT INCLUDING THIS COVER:** 2

Re:  2017 - KH - 1311

Bernell Earl
vs.
State of Louisiana

Attached are documents being transmitted to the inmate in the captioned case.

John Tarlton Olivier
Clerk of Court

JTO: sst
ccs: Hon. A. J. Hand
     Hon. Melissa R. Henry, Clerk
     Hon. Warren Montgomery
     Hon. Rodd Naquin, Clerk
     Court of Appeal, First Circuit, Number(s)          2017 KW 0661
     22nd Judicial District Court  Div. "B"  Number(s)   539204-I



**Supreme Court**
STATE OF LOUISIANA
New Orleans

CHIEF JUSTICE
  BERNETTE J. JOHNSON

JUSTICES
  GREG G. GUIDRY
  SCOTT J. CRICHTON
  JAMES T. GENOVESE
  MARCUS R. CLARK
  JEFFERSON D. HUGHES III
  JOHN L. WEIMER

Seventh District

First District
Second District
Third District
Fourth District
Fifth District
Sixth District

**EX-B2**

EARL-VS- GOODWIN
NO. 22-962

JOHN TARLTON OLIVIER
CLERK OF COURT

400 Royal St., Suite 4200
NEW ORLEANS, LA 70130-8102

TELEPHONE (504) 310-2300
HOME PAGE http://www.lasc.org

July 28, 2017

Bernell Earl, #154891
CBB/LR-3
Louisiana State Penitentiary
Angola, LA 70712

Re:  2017 - KH - 1311

Bernell Earl
vs.
State of Louisiana

This is to advise that the pleadings in the above entitled matter were received and filed on 7/26/2017.
The filing was Angola E-Filed on 7/25/2017.  The case bears the above number on the Docket of this
Court.

John Tarlton Olivier
Clerk of Court

JTO: sst
ccs: Hon. A. J. Hand
     Hon. Melissa R. Henry, Clerk
     Hon. Warren Montgomery
     Hon. Rodd Naquin, Clerk
     Court of Appeal, First Circuit, Number(s)          2017 KW 0661
     22nd Judicial District Court  Div. "B" Number(s)   539204-1

EX-"C"   *Earl vs Goodwin*
No. 22-962

CLERK OF COURT
22nd Judicial District Court
Parish of St. Tammany

P.O. Box 1090 · Covington LA 70434 · (985) 809-8700

March 14, 2018

BURNELL EARL #154891
N3C #7
DWCC 670 BELL HILL ROAD
HOMER, LA. 71040-2150

DIVISION B
Re:     State of La.
         Vs. #539204-1
         BERNELL EARL

Dear Sir/Madam:

ENCLOSED PLEASE FIND A COPY OF AFFIDAVIT FOR SEARCH WARRANT AS PER YOUR REQUEST.

Yours very truly,

*Sherri L. Viviano*

SHERRI L. VIVIANO
Deputy Clerk

**Ex – "D"**

*Melissa R. Henry*

*Earl -vs- Goodwin*
*No. 22-962*

**CLERK OF COURT**
22nd Judicial District Court
Parish of St. Tammany

P.O. Box 1090 · Covington LA 70434 · (985) 809-8700

April 2, 2018

BURNELL EARL #154891
N3 D4
DWCC 670 BELL HILL ROAD
HOMER, LA. 71040

DIVISION B

RE:   STATE OF LA.
      VS. #539204-1
      BERNELL EARL

Dear Sir/Madam:

Pursuant to *State ex rel.  Scott v. Cain, 647 So. 2d. 1094*, please be advised that you are only entitled to the following documents one time free of charge, (1) transcripts of guilty plea colloquy; (2) copies of the bill of information or indictment; (3) copis of the district court minutes for various portions of their trials; (4) copies of transcripts of evidentiary hearings held on applications for post conviction relief; and (5) copies of the court documents committing to custody.   Therefore, enclosed are copies of the Bill of Information and Court minutes dated April 2, 2018.

Additional information such as minutes and transcripts will not be forwarded unless requested.

Further, any additional copies of documents already provided will cost $.50 per page.

Yours very truly,

*Sherri L. Viviano*

SHERRI L. VIVIANO



*EX-"E"*   EARL -VS- Goodwin
No. 22-962

**CLERK OF COURT**
22ⁿᵈ Judicial District Court
Parish of St. Tammany

---

P.O. Box 1090 · Covington LA 70434 · (985) 809-8700

April 10, 2018

BURNELL EARL #154891
N3 D4
DWCC 670 BELL HILL ROAD
HOMER, LA. 71040

                          DIVISION B
                          Re:    State of La.
                                    Vs. #539204-1
                                    BERNELL EARL

Dear Sir/Madam:

ENCLOSED PLEASE FIND DOCUMENTS THAT YOU HAVE REQUESTED UCH AS
FOLLOWS, A CERTIFIED COPY OF THE BILL OF INFORMATION, EXTRACT OF
MINUTES, AND UNIFORM COMMITMENT ORDER ALONG WITH A COPY OF
TRANSCRIPT.

                        Yours very truly,

                        SHERRI L. VIVIANO
                        Deputy Clerk



_Melissa R. Henry_

EX-G    EARL-vs-GOODWIN
No. 22-962

**CLERK OF COURT**
22nd Judicial District Court
Parish of St. Tammany

February 22, 2021

Bernell Earl #154891
C/O David Wade Correctional Center, HZ A
607 Bell Hill Road
Homer, LA 71040

                    **Division B**
       RE:   **STATE OF LOUISIANA**
                    **Vs. #539204-1**
                    **BERNELL EARL**

Dear Sir/Madam:

In response to your letter filed January 29, 2021, enclosed please find a copy of the transcript from July 1, 2019, a certified copy of the Minutes from July 1, 2019 and a certified copy of the Judgment of Post-Conviction After Remand for Evidentiary Hearing which was originally mailed to you on August 12, 2019.

                    Yours very truly,

                    _Anna D. Cooper_
                    Tara Cooper Deputy Clerk