U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    Dec 28 2022

CAROL L. MICHEL
CLERK

BWN                            Mail

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

CASE NO: 22-30640

USDC NO: 22-cv-962

BURNELL EARL

PETITIONER-APPELLANT

VERSUS

JERRY GOODWIN, WARDEN, DAVID WADE CORRECTIONAL CENTER

RESPONDENT-APPELLEE

MOTION FOR ISSUANCE OF CERTIFICATE APPEALABILITY

COMES NOW the Petitioner, Burnell Earl #154891, in pro se, in necessity, and hereby moves this Court to issue a Certificate of Appealability pursuant to 28 U.S.C. 2253 (c)(2). He herein seeks C.O.A. authorizing him to appeal the denial of his 28 U.S.C. § 2254 Habeas Corpus, to vacate his unlawful conviction and/or sentence. See, Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed. 2d 542 (2000); and Miller El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed. 2d 931.

I.

STATEMENT OF JURISDICTION

The jurisdiction to issue a C.O.A. is invoked pursuant to 28 U.S.C.

(1)

§ 2253 And 2254.

## II.

### STATEMENT OF THE CASE

Petitioner was tried by a jury as to the charge of Armed Robbery with a firearm, and was found guilty as charged. The State filed a multiple bill of information and on April 4, 2014, the trial court adjudicated Petitioner as a fourth felony offender and sentenced him to life imprisonment without the benefit of Probation, parole, or the suspension of sentence.

Petitioner filed a timely direct appeal notice, that was granted by the Court. Petitioner's Appellate Counsel filed a brief and him a ProSe Brief. The First Circuit Court of Appeal affirmed on April 24, 2015 (No. 2014-KA-1534, 2015-WL-1893190). A Writ of Certiorari was subsequently submitted to the Louisiana Supreme Court, which issued a one word denial on April 22, 2016 (No. 2015-KO-1042, 191 So.3d 1044). On July 21, 2016 Petitioner's conviction and sentence were final (90) days later, because he did not file for a Writ of Certiorari with the United State Supreme Court, and as of such it's considered as the finality determination under 28 U.S.C. § 2244 (d)(1)(A).

From this point and importantly starting at this point of herein subjudice-matters, Albeit, Petitioner's conviction and sentence becomes final as determined by § 2244 (d)(1)(A), on July 21, 2016, he ultimately filed his-ProSe Application for Post Conviction Relief in a fashion post dated June 27, 2016, thus, twenty-five (25) days "PRIOR" to his finalized date Required to trigger the initiative of equitable or statutory tollings for Purposes of the "AEDPA," therefore, within itself evidently as explicitly expresses due diligence filing and that Petitioner on same such

date still possessed the fully one-year grace period (365-days) for to file his

28 U.S.C. § 2254 Habeas Corpus Application.

In Petitioner's June 27, 2016 initial pursued Application for Post Conviction Relief

he asserted such constitutional violation claims as: (1) Ineffective Assistance of

Trial Counsel by failing to: (a) Properly question potention jurors; (b) Investigate

and prepare a defense; (c) Question the testimony of co-defendant about her past

criminal convictions; (d) Investigate the validity of two prior convictions alleged

for the enhancement of sentence; (e) Argue that the State failed to show the ten-years

cleansing period had elapsed; and (f) Review the discovery submitted by the State; (2)

Insufficient of the evidence; (3) The cumulative effects of errors denial him a

constitutionally fair criminal trial; (4) Ineffective Assistance of Appellate Counsel

for failing to raise insufficient of evidence on direct appeal; (5) Trial Court erred

in denying his request for continuance for to hire a new attorney; (6) Insufficient

evidence to support the multiple offender adjudication; and (7) State failed to

prove that the ten-years cleansing period elapsed between the prior conviction

and the offense. (St. Rec. Vol. 5 of 13). On April 6, 2017 the trial court

denied Petitioner's initial Post Conviction Relief Application. On May 10, 2017

Petitioner soughted Supervisory Writ Review in the Louisiana First Circuit Court

of Appeals, which on July 10, 2017 denied writ on shown made in part and writ denied

in part because Relator failed to include the voir dire transcript to support

his claim that his attorney was ineffective for failing to challenge baised

jurors. The Court also, invited Petitioner that in event he elects to file a new

application with the First Circuit Court of Appeals, the application shall be filed on

or before September 8, 2017 and that any future filing peritenting to this

issue should include the entire contends of that application, the missing item noted

above, and a copy of said ruling; and with respect to the other claims, the writ

application is denied. (2017-KW-0661) On or about July 26, 2017, Petitioner perinent to

the First Circuit "judgment" and "claim" invited to resubmit if chose, and denied claims soughted review of denied claims, but a stay to allow fully exhaustion of his ineffective assistance of counsel due to lack of questioning baised jurors, in that he if denied, may have all initial post-conviction relief claims viewed together upon collateral review, by collateral entry of the Louisiana Supreme Court for Supervisory Writ and Motion to Stay, docketed 2017-KH-1311, filed within (17) days of First Circuit's judgment peritenting to issues of subjudice-matters, simultaneously collateral reviews soughted. While these collateral proceedings were pending in the Louisiana Supreme Court under Docket No. 2017-KH-1311, Petitioner resubmitted the Ineffective Assistance of Counsel related to baised jurors to the First Circuit (State. v. Earl, 2017-WL-4883189) which on October 30, 2017 ordered writ granted inpart and denied inpart. The district court's ruling denying Relator's application for Post Conviction Relief is vacated in part and "this matter is remanded to the district court [for the sole purpose of holding an evidentiary hearing"] on Relator's claim that his attorney was ineffective for failing to properly question the potential jurors during voir dire. The remaining claims are denied.

Quite a bit of time passed between issuance of the order that an evidentiary hearing be held (October 30, 2017) and the holding of that hearing (July 1, 2019). Between those two dates, Petitioner soughted a mandamus ordering direct the trial court to hold the evidentiary hearing. (St. Rec. Vol. 9) The First Circuit denied mandamus as moot because by the time of its ruling the trial court had held the evidentiary hearing on July 1, 2019. And on August 7, 2019 the trial court denied Post Conviction Relief "again" on claim of ineffective assistance of counsel inregard the First Circuit's order explicitly expressed the matters was remanded "for the sole purpose to hold a evidentiary hearing, "not" for trial court to rule on merit which court possessed no jurisdiction. Due to the duration of inordinate time, Petitioner not aware of the points that things in these matters event

(4)

awry, writes to the district court in a letter formed motion requesting a copy of evidentiary hearing transcript peritenting to forward judgment by the First Circuit, so he could prepare argument insupport of his defense, and trial court granted evidentiary hearing transcript, the Clerk of Court forwarded same and the disposition of the trial court's denial of Post Conviction July 1, 2019 but sent Petitioner on Febrary 22, 2021, by deputy Clerk of the 22nd Judicial District Court, Tara Cooper. Petitioner initially became in reception of said disposition following Clerk Cooper's forwarding based upon the trial court's order January 21, 2020. Petitioner less than sixteen days of the receipted of notice judgment peritent to claim denied of Clerk Cooper, he soughted Supervisory Writ, on March 14, 2021 (2021-KW-0312), The First Circuit denied writ on April 26, 2021. On May 5, 2021 Petitioner soughted Supervisory Writ in the Louisiana Supreme Court (2021-KH-00735) dispite his original pending "Stay" and on Additional claims denied by the First Circuit (2017-KH-0661) and "Stay" pertinent to claim invited to resubmit (La. Sup. Ct. -2017-KH-1311), that "never" been ruled upon in those collateral proceedings, Louisiana Supreme Court collateral proceedings challenges: The trial court error of "jurisdiction" once the Petitioner invoked Supervisory jurisdiction of the Louisiana First Circuit Court of Appeals; and Petitioner's claim denial of effective assistance of counsel during "vior dire", related to baised jurors. (2021-KH-00735), but are still peritent of (La. Sup. Court's collateral proceedings, (2017-KH-1311).

On November 10, 2021, the Louisiana Supreme Court denied writ application (2021-KH-00735).

On April 6, 2022, Petitioner filed his original petition for federal habeas corpus. Petitioner raised the following claims for relief; (1) ineffective assistance of counsel during jury selection and failure to confer; (2) violation of equal protection as the jury was not impartial; and (3) the search and seizure violated the

Fourth Amendment.

The State filed a response claiming that Petitioner's petition is untimely. Petitioner filed a traverse claiming that, due to COVID-19 protocol, he had no access to the prison law library or inmate counsel. Petitioner also submitted a second memorandum reiterating his claims.

On August 30, 2022, the United States Magistrate Judge-Karen Wellsroby issued a Report and Recommendation, recommended that Petitioner's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be dismissed with prejudice as time-barred.

On September 12, 2022, Petitioner filed a written objection to the district judge inregard to the Magistrate Judge's Report and Recommendation.

On September 15, 2022, the United States District Judge-Eldon E. Fallon issued two orders: (#13) "The Court, having considered the complaint, the record, the applicable law, the Report and Recommendation of the United States Magistrate Judge, and the failure of any party to file an objection" to the Magistrate Judge's Report and Recommendation, hereby approves the Report and Recommendation of the United States Magistrate Judge and adopts it as its opinion in this matter. Therefore, ordered Petitioner's petition for issuance of a writ of habeas filed pursuant to 28 U.S.C. § 2254 be dismissed with prejudice, (#14) Judgment same.

On September 21, 2022, Petitioner filed "Motion For Rehearing And Reconsideration."

On September 26, 2022, the U.S. District Judge Fallon issued order and reasons, after reconsidering its September 15, 2022 orders and Petitioner's Motion, the Court noted that the Petitioner contrary to its earlier orders, objection were timely filed by Petitioner, withdrawed its September 15, 2022 order of dismissal and substitutes such Order and Reasons in its place: The Court, having considered the complaint, the record, the applicable law, the Report and Recommendation of the Magistrate Judge and adopts it as its opinion in

this matter, and ordered Petitioner's Petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be dismissed with prejudice.

On October 3, 2022, Petitioner filed a "Notice of Appeal" from the judgment entered in this subjudice matter on September 26, 2022.

On October 12, 2022, United States Court of Appeals Fifth Circuit Clerk- Mary Stewart sent Petitioner notice of his docketed appeal, as "Earl v. Goodwin, No. 22-30640, USDC No. 2:22-CV-962; and Court Rule and Fed. R. App. P. use in support of his appeal.

On October 17, 2022, Petitioner filed a "Motion For Status Clearification And/Or Verification Of Petitioner's Civil Action Pending",

On October 18, 2022, Petitioner in the USDC for the Eastern District of Louisiana a "Application To Proceed In Forma Pauperis pursuant to 28 U.S.C. § 1915.

On October 21, 2022, the USDC - District Judge Fallon issued order: "Considering Petitioner's Motion for Status Clarification and/or Verification of Petitioner's Civil Action Pending, Rec. Doc. 22; Petitioner is notified that, pursuant to his Notice of Appeal, R. Doc. 19, Petitioner's case is now pending on appeal to the United States Court of Appeals for the Fifth Circuit. Petitioner's Case Number for his appeal is No. 22-30640, All future filings in this matter must be filed with the Fifth Circuit Court of Appeal.

On October 24, 2022, the USDC - District Judge - Fallon granted Petitioner's Application entitling him to proceed in forma pauperis.

On November 9, 2022, forwarded a letter to the Clerk of Court Honorable Lyle W. Cayce placing notification that the United States District Court had granted Petitioner to proceed in the Fifth Circuit, Court of Appeals in forma pauperis on October 24, 2022; and to send Petitioner notification on the future procedural steps required to move forward in these proceedings.

# III.

## STATEMENT OF THE FACTS.

Boris Allen met Adriena Williams At Church's Fried Chicken where the two exchange phone numbers. After communicating for two days, Ms. Williams contacted Mr. Allen indicating that she was having car trouble and needed help. After arriving at Ms. Williams' location, Mr. Allen told the police that two men came out of the woods armed with guns and demanded he give it up. Mr. Allen later identified Petitioner as one of the armed individuals whom he gave his wallet. Petitioner was arrested along with Ms. Williams and William Branch and charged with Armed Robbery.

Ms. Williams testified to two entirely different stories in the trials of Mr. Branch and Petitioner. In Petitioner's trial, Ms. Williams testified that she had only known Mr. Allen a few days. However, in Mr. Branch's trial she testified that she had known Mr. Allen for over a month. Also, in Petitioner's trial, Ms. Williams testified that she was unable to see the crime due to the fact that the hood and trunk of the car were open, albeit, during Mr. Branch's trial, Ms. Williams testified that she was able to witness the crime because the hood and trunk were open, leaving her room to see what was going on.

# IV.

## THE LEGAL STANDARD THAT CONTROLS THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY.

In the Supreme Court case, Buck v. Davis, 580 ——, U.S. ——, 137 S.Ct. ——, 197 L.Ed.2d 1 (2017), the Court held that the Fifth Circuit exceeded the limited scope of the C.O.A. analysis. The C.O.A. statute sets forth a two-step

PROCESS: An initial determination whether a claim is reasonably debatable, and then if it is, an appeal in the normal course.

Chief Justice Roberts, writing for the Court, held that the Certificate of Appealability "inquiry," we have emphasized, is not coextensive with a merit analysis. According to the Chief Justice, "the question for the Fifth Circuit was not whether Buck had shown extraordinary circumstances. Those are ultimate merits determinations the panel should not have reached. We reiterate what we have said before: A Court of Appeals should limit its examination at the C.O.A. stage to a threshold inquiry into the underlying merit of the claims, and ask only ... if the District Court's decision was debatable."

In Henry v. Cockrell, 327 F.3d 429, 431 (5th Cir. 2003), the Court explained that: Under the Antiterrorism and Effective Death Penalty Act (A.E.D.P.A.), a Petitioner must obtain a Certificate of Appealability before he can appeal the District Court's decision. See, 28 U.S.C. § 2253 (c)(1). A C.O.A. will be granted only if the Petitioner makes "a substantial showing of the denial of a constitutional rights." See, 28 U.S.C. § 2253 (c)(2).

In order to make a substantial showing, a Petitioner must demonstrate that a "reasonable jurist would find the District Court's assessment of the constitutional claim debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed. 2d 542 (2000). When the District Court has denied a claim on "procedural grounds," the Petitioner must demonstrate that a "jurist of reason would find it debatable whether the District Court was correct in its procedural ruling," id. As the Supreme Court indicated in its decision in Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1039, 154 L.Ed. 2d 931 (2003), a C.O.A. is a "jurisdictional prerequisite," and "until a C.O.A. has been issued, the Federal Court of Appeals lack jurisdiction to rule on the merits of appeal from habeas Petitioner." When considering a request for a C.O.A., "the question is the debatability of the

(9)

underlying Constitutional Claim, not the resolution of that debate," id - at 1042.
Within this guideline of the legal standard for issuance of a C.O.A., Petitioner
herein will proceed by presenting his his claims and show how they are debatable
among jurists of reason.

## ISSUE ONE

The State Courts And The Federal District Court Currently Continued
Deprivation Of Petitioner's Sixth And Fourteenth United States
Constitution Rights In Their Denial Of Collateral Relief Of Constitutional
Violations Occurred At His Criminal Trial And That So Impinged Upon
His Due Process Right.

Petitioner seek this United States Court of Appeals for the Fifth Circuit
to grant him a Certificate of Appealability upon the making of a
substantial showing by demonstrating that his § 2254 claims are of a
constitutional magnitude; and that his claims are debatable among
jurists of reason.

The claim in question and as presented is that: "Petitioner was denied
effective assistance of counsel during the course of the voir dire, as
counsel failed to protect his constitutional rights to a fair and
impartial jury pursuant to the Sixth and Fourteenth Amendment Rights
of the United States Constitutions.

Herein Petitioner points out five individual potential jurors' present
in essence actual bias in fact the existance of a state of mind that
lead to an inference that they would not act with entire impartiality
and the trial counsel silent in questioning or objecting to those

JURORS sitting on his jury, resulted in the counsel's failure to protect Petitioner's Constitutional Right to a fair and impartial jury, denying him a fundamental fair criminal trial.

Petitioner relies upon the following colloquies in determining that his counsel was ineffective for failing to properly question Ms. Gonzales, Mr. Hernandez, Mr. Whiteacre, Mr. Guinot and Mr. Winglett:

THE COURT:

My wife is a baker, and one of the prospective juror out there work for my wife. I hate to tell her, that, but they make the best bread. Any thing else you have? (Rec. P. 138 lines 4-8)

THE COURT:

Before we get started with my questions, I want to disclose, and I commented on it earlier that Ms. Gonzales there is, well was -- my wife's temporarily closed her bakery. And I do think Doug Phuoq has better bread, so Kathy, you better not tell her that. She was an employee of my wife's. It doesn't have really much of anything to do, but as a matter of full disclosure, I just wanted to let everybody know that. (Rec. 217, lines 9-19).

THE COURT:

The same questions that I asked the last group. Does anybody have any relationship with, know the attorneys, the persons here present, Mr. Earl, the witnesses, the persons that were read off? Mrs. Gonzales, who do you -

MRS. GONZALES: You. (Rec. P. 225, lines 7-14)

MR. HERNANDEZ:

Are you telling me that one of them pled guilty?

MR. NORIEA:

Yes.

MR. HERNANDEZ:

(11)

The whole group was charged with the same crime?

MR. NORIEA:

They were all originally charged with armed robbery.

MR. HERNANDEZ:

So if one of them pled guilty, why wouldn't the All plead guilty (Emphasis added)

MR. NORIEA:

Because they have A right to a trial. If they want a trial, we give them a trial in St. Tammany. That's all I can say.

But let's get back to this. You may not even hear from her. I may not even call her. She is available. What I'm asking you is she pled guilty to Simple Robbery and got five years in the Department of Corrections. She is not out running around going to sorority dances.

MR. HERNANDEZ if she does happen to take the stand, could you consider her testimony and not say--

MR. HERNANDEZ:

Yeah.

MR. NORIEA:

-- the grain of salt lady is here?

MR. HERNANDEZ:

No. I could take her testimony. But I'm just saying if she pled guilty, then why is she pleading guilty, then why wouldn't they all not be guilty? (Emphasis added).

MR. NORIEA:

Well, that's why I asked you before.

MR. HERNANDEZ:

(12)

Right.

MR. NORIEA:

One person is on trial, and what another person does, and another person is awaiting trial.

Would that effect your deliberation? Could you--

MR. HERNANDEZ:

I would think so, yes.

MR. NORIEA:

Could you listen?

MR. HERNANDEZ:

Not that I know she is already guilty. No I think it would affect my--

MR. NORIEA:

In what way? I mean, how would it effect you?

MR. HERNANDEZ:

Why would she plead guilty and the rest of them are innocent? It doesn't make sense.

MR. NORIEA:

Could be, I mean, you have listen to their testimony when they get on the witness stand and make your determination. If she pleads guilty and no other witnesses are called, you're not going to find them guilty?

MR. HERNANDEZ:

I'm just saying now that you told me that it kind of strikes me as odd.

MR. NORIEA:

I've never quite looked at it like that before, she is the witness to a crime. The question is can you listen to her testimony --

MR. HERNANDEZ:

Yes. (Rec. P. 179-82).

(13)

MR. WHITEACRE:

Good AFTERNOON. My NAME is Victor Whiteacre, I've lived in St. Tammany since 1980. I work in Retail as a store manager. I have five, adult children, two stepchildren, Recently widowed. My oldest stepdaughter she is incarcerated by the State. Two, stay-at-home moms. My only son work for Firestone. I have a 19-year-old special needs daughter that goes to Fontainbeua High School. I think that's it.

THE COURT:

Well, you bring up a point at least I want to talk to you a little bit about you have a daughter who was prosecuted by the District Attorney here in St. Tammany Parish or was it another jurisdiction?

MR. WHITEACRE:

It would been here, yes, sir.

THE COURT:

Do you think she was wrongly fully incarcerated?

MR. WHITEACRE:

Not at all.

THE COURT:

Do you hold any animosity toward the State of the District Attorney's Office for having pursued a criminal proceeding against your daughter?

MR. WHITEACRE:

No, sir. I pretty much feel she got what she deserved.

THE COURT:

So you can be both fair to State and the Defense?

MR. WHITEACRE:

I believe so, yes, sir.

(Rec. pp. 127-28)

(14)

MR. GUINOT:

My father's house was burglarized while they were still home. My parents and my younger sister were home. The guy had a gun. Luckily, my dad also had a gun and kind of chased the guy off. It was a pretty horrifying experience for them, and from me just hearing about it and knowing the danger they were in.

THE COURT:

Right. Do you think that will bear any influence in this particular trial?

MR. GUINOT:

Absolutely. (Emphasis Added)

THE COURT:

You think it will?

MR. GUINOT:

Yeah. (Emphasis added)

THE COURT:

So you're not going to be able to sit here and listen to the witnesses that come and decide well, the state's born its burden of proof or it hasn't and seggregate it?

MR. GUINOT:

It seem like my opinion may be a little jaded by it. (Emphasis Added)

(Rec. pp. 160-61)

MR. WINGLETT:

One of the neighbors next door, their kid shot a window out of my wife's car. We called the Mandville Police. They came out and addressed them.

THE COURT:

What happen with it after that point and time?

MR. WINGLETT:

(15)

I'm sure. We lost track after he was arrested.

THE COURT:

Did they repair the window in the vehicle?

WINGLETT:

No. We did that.

THE COURT:

You were never contacted by an prosecutor or law enforcement as a followup by the law enforcement?

WINGLETT:

No.

THE COURT:

So you don't hold any animosity toward Mandville PD, Sheriff Department?

WINGLETT:

No. As a matter of fact. I have a great admiration for them.

It appears as though Mrs. Gonzales were a personal friend and employee of Judge Hand's wife. Not only was she selected to serve on the jury, she was also the foreperson. Its very highly suspicion, as what she assumed judge Hand wanted of her, or other jurors, that she is trust worthy, since her having a close relationship with him and family, therefore relied on Mrs. Gonzales leadership in directing them toward a verdict, although Mrs. Gonzales may have wrongly believe absent regardless of the presented evidence or lack of evidence, believed the judge desire a guilty verdict. Mrs. Gonzales should have been questioned on whether or not she were influenced by the relationship of the judge and his family.

Jeffery Hernandez during the course of jury selection was adamant on the fact that Petitioner's co-defendant plead guilty to Simple Robbery, and he continued to habor on the fact that, if one of the defendant is guilty, then they all are guilty. Mr. Hernandez never was questioned on his locked in belief of all co-defendants are

(16)

guilty due to one of them plead guilty. MR. HERNANDEZ WAS NEVER Rehabilitated by the State, NOR peremptory challenge FOR CAUSE due to the FACT his mind-set have been fixed of AN automatic guilty verdict. Mr. HERNANDEZ should have been questioned on whether or not he were influenced by the fact one defendant had plead guilty would Render him serving As a partial prospective juror.

Mr. WhiteACRE Responded, that his daughter deserved incarcerated Raised A red flag About his mind-set to Anyone charged with a crime, and the FACT such is not normal for a father to accept his daughter incarceration most favorable toward the State. Defense Counsel should have questioned Mr. WhiteAcre's partiality, or at least challenged him for CAUSE to excuse him.

Mr. Guinot's family members experienced being victimized by an individual burglarizing their home, with a gun while them At home. Mr. Guinot admitted his opinion of guilty of the Petitioner would be jaded, due to the knowledge of his family's burglarized experience. Mr. Guinot should have been questioned on whether or not he could be Rehabilitated, disregarding his jadeness And serve As A impartial juror.

Mr. Winglett's wife CAR's window were shot out, although there were no finalize prosecution of the accused, Mr. Winglett possessed a great Admiration for the law enforcement in the AREA. Defense Counsel should have questioned Mr. Winglett on the fact whether or not he would give more credibility to the officers involved in this case, then that of the Defense, simply due to his specific Admiration for the law enforcement.

Petitioner has aboved shown that five (5) biased and prejudicial jurors were able to serve on his jury trial, without Defense Counsel's questioning nor challenging them for CAUSE or peremptorily during the course of vior dire denied him A Right to A fundamental fair impartial jury trial in this matter.

INEFFECTIVE ASSISTANCE OF COUNSEL centers of the performance of Petitioner's

(17)

during vior dire for this claim of deprivation of his Sixth Amendment Right to counsel and due process right.

In Jackson v. Cain, 3:13-cv-02725 (8/11/15), the United States Court for the Western District of Louisiana granted habeas corpus relief to Petitioner-Ward Jackson because his defense counsel was deficient, and action were prejudicial, during jury vior dire error similar to this case of Petitioner-Earl. The Court stated, "Counsel" actions during vior dire amounted to a denial of Jackson's Sixth Amendment Right to effective assistance of counsel.

In essence, the right to jury trial guarantees to criminally accused a fair trial by a penal of impartial, in different jurors. "The theory of the law is that the juror who has formed an opinion cannot be impartial." Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 1641-42, 6 L.Ed.2d 75 (1961)(citation omitted)(quoting with favor in Morgan v. Illinois, 504 U.S. __, 112 S.Ct. 2222, 2226-29, 119 L.Ed.2d 492 (1992).

In Virgil v. Dretke, 446 F.3d 598 (5th Cir. 2006) the Court in granting relief, stated we find merit to Virgil's finding or found with counsel's lack of response in the face of express statements by jurors Sumlin and Sims conceding bias against Virgil. Sumlin stated that his relationship with law enforcement officers would preclude him from serving as an impartial juror. Sims, likewise, volunteed that his mother's mugging was weighing on him as to whether he could be partial or impartial. Finally concluding that he could not be fair and impartial. We hold that Sumlin's and Sims' unchallenged statements during vior dire that they could not be fair and impartial Virgil's counsel to use a peremptory or for cause challenge on these jurors. Not doing so was deficient performance under Strickland.

Certainly, there comes a point when, no matter how close an individual issue may be, the aggregate of a jurors' answers make it very clear that a challenge for cause should have been sustained. See, Robertson, 630 So.2d __, at 1283 (basing its decision on juror's entire voir dire, which included an inability to consider mitigating

(18)

CIRCUMSTANCES AS WELL AS A difficulty following the law, the Court held it was Reversible error to deny a challenge FOR CAUSE, State v. Halla, 557 So.2d 1388, 1389-90 (La. 1990)(telling trial courts to consider jurors' responses as a whole; State v. Lee, 559 So.2d 1310, 1318 (La. 1990)(trial judge must look at responses during entire testimony); State v. Wilson, 467 So.2d 503, 515 (La. 1985)(Court look at total PERFORMANCE on Vior dire to determine ability to be impartial; and Knop v. McCain, 561 So.2d 229, 233 (Ala. 1989)(holding that when the aggregate effect of juror's responses tend to verify the existance of deep seated impressions she must be excluded FOR CAUSE. In Hughes v. United States, 258 F.3d 453, 463 (6th Cir. 2001) the Court held that counsel was constitutionally ineffective FOR FAiling to strike juror who admitted bias. The question of whether to seat a biased juror is not a discretionary or strategic decision. The seating of a biased juror who should have been dismissed FOR CAUSE requires reversal of the conviction, Id,. Miller v. Webb, 385 F.3d 666, 677 (6th Cir. 2004), the Court founded that counsel's Failure to object to empaneling an actual biased jury was presumptively prejudicial constituting ineffective assistance; Also see, Smith v. Gearinger, 888 F.2d 1334 (11th Cir. 1989), here the Court held that trial counsel's failure to contest two prospective jurors that Counsel knew were within the prohibited degree of consanguinity with victim or her mother required an evidentiary hearing to resolve claim of ineffective assistance of counsel.

The Sixth Amendment quaranteed criminal defendants a verdict by an impartial jury. Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998). The bias or prejudice of even a single juror is enough to violate that quarantee, Id,. Accordingly, the presence of a biased juror can't be harmless, the error requires a new trial without a showing of actual prejudice. Dyer, 152 F.3d ___, At 973 N3; And United States v. Salazar, 528 U.S. 305, 120 S.Ct. 774, 145 L.Ed. 2d 792 (2000); Irvin, Supra;

AND MORGAN, SUPRA.

The aboved, ARE EXAMPLES of REASONAble Jurists who have found that .....
impingements upon Petitioner's Sixth Amendment Right to EFFECTIVE Assistance
of tRial counsel during VIOR DIRE proceedings and FourtEENTH Amendment Right
to Due Process as of Right to A criminal fundamental fAir impartial Jury trial.

Additional ERRORS of ineffective of tRial counsel may be identified under StRickland
standards. The Sixth Amendment provides that in all criminal prosecutions, the
accused shall enjoy the Right to have the Assistance of Counsel for his defense. U.S.
Const. VI . The Sixth Amendment Right to Counsel Applies to All FEDERAL And State
criminal prosecutions. Johnson v. ZERbst, 304 U.S. 458, 463 (1938); Gideon v.
Wainwright, 372 U.S. 335, 342 (1963)(6th Amendment Right to counsel in criminal
proceedings Applies to States through 14th Amendment. If the Sixth Amendment
violation PERVADES the entire proceeding, then harmless ERROR anaylasis is
inApplicable, and the violation is enough to overturn A conviction REgARDless of
the seveRity of the Results. SAtterwhite v. Texas, 486 U.S. 249, 256 (1988); And
U.S. v. CRonic, 466 U.S. 648, 659 n.25 (1984).

The Sixth Amendment Right to counsel is the Right to EFFECTIVE Assistance of
counsel. McMann v. RichaRdson, 397 U.S. 759, 771 n.14 (1970). In StRickland v.
Washington, the U.S.SupReme Court established A two-prong test to evaluate
ineffective Assistance claims. 466 U.S. 668, 687 (1984). To obtain REVERSAL
of A conviction under the StRickland standard, the defendant must prove that
counsel's PERFORMANCE fell below an objective standard of REASONAbleness. Id, at
687, 688. That counsel's deficient PERFORMANCE pRejudice the defendant, Resulting
in an unReliable or fundamentally unfair outcome in the proceeding. Id, at 687.

Petitioner was denied EFFECTIVE Assistance of counsel at trial, when counsel failed to
view discovery and pREPARE for trial. The trial court's RECORDS of co-defendant
BRANch and trial transcript RECORDS of the Petitioner show that the Prosecutor

(20)

use two different theories in separate trials of the same crime to convict one of another. The Prosecutor's action violated due process and the trial counsel render ineffective assistance from not viewing discovery and the distintish trial testimony of co-defendant-Ms. Williams, state's star witness. During Petitioner's criminal trial Ms. Williams testified that she was "unable to see the actual crime being committed due to the fact that the hood and trunk were open on the car. During co-defendant's, Branch criminal trial she testified that "she was able to see the entire crime due to the fact that the hood and trunk were open and she was able to see through the cracks of the opening.

On another theory, in Petitioner's criminal trial Ms. Williams testified that "he and Mr. Branch had been hiding in the bushes prior to the arrival of the alleged victim", but at Mr. Branch's criminal trial, Ms. Williams then testified that Petitioner-Earl "was standing next to her with a gun ponited at her head and the victim standing an few yards as the crime happened, and Petitioner-Earl jumped into the bushes.

On another note of theories, at Petitioner's criminal trial Ms. Williams testified that she had known the alleged victim for an few days, stating she met him at Church's Fried Chicken of Friday, met him on Saturday, and then he was robbed on Sunday. But, differently, at Mr. Branch's criminal trial, 'she testified that she was dating the alleged victim for approximately a month before the robbery occurred. This could have be used as impeachment evidence of two different theories of same crime, The jury was not able to take a adequate assessment of Ms. Williams' credibility nor the fact of the prosecutorial misconduct pursuing to different theories of same crime, in two different trials on merits. Inconsistencies of this magnitude pursued by the State and its star witness left without a defense objection, denied Right to effective assistance of counsel and due process Right to a fundamentally fair criminal trial.

In Thompson v. Calderon, 120 F.3d 1045, at 1058-59 (9th Cir. 1997), upon reversing

Petitioner's conviction based upon erroneous prosecution's theories of the same crime in two different trials negate one another and noted: The prosecutor may not "become the architect of a proceeding that does not comport with the standards of justice." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). The prosecutor, therefore, violates the Due Process Clause if he knowingly presents false testimony - whether it goes to the merits of the case or solely to a witness's credibility. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed.2d 791 (1935). Moreover, the prosecutor has a constitutional duty to correct evidence he knows is false, even if he did not intentionally submit it. Giles v. Maryland, 386 U.S. 87 S.Ct. 793, 17 L.Ed.2d 737 (1967). From these bedrock principles, it is well established that when no new significant evidence comes to light a prosecutor cannot, in order to "convict two defendants at separate trials" offer inconsistent theories and facts regarding the "same crime." Then-Judge Kennedy wrote for the Court that when there are claims of inconsistent prosecutorial conduct, reversal is not required where the underlying theory remains consistent. Hayes v. Cupo, 827 F.2d 435, 439 (9th Cir. 1987). Here, little about the trials remains consistent other than the prosecutor's desire to win at any cost.

In Drake v. Kemp, 762 F.2d 1447 (11th Cir. 1985)(en banc), bears remarkable similarities to this case. There, the State charged two men with murder and robbery. The State prosecuted the "first defendant," Campbell on the theory that Campbell alone committed the murder." But in the "second defendant's trial," the State asserted that Campbell, "due to illness, were physically incapable of killing the decedent." Rather, the State argued, the "second man, Drake, must have actually beat the victim" and in support of this theory, the State presented Campbell as its star witness. Id, at 1472 (Clark, J, concurring). On direct examination, Campbell recited the same testimony that the State had refuted at

(22)

Campbell's trial. Drate was convicted of murder and robbery.

The Court granted habeas relief on other grounds, by Judge Clark wrote separately to emphasize that the prosecutor's actions of advancing inconsistent theories constituted a "fundamental and egregious error" that violated Due Process Clause. Id., at 1470 (Clark, J. concurring). Judge Clark reasoned: "The prosecution's theories of the same crime in the two different trials negate one another. They are totally inconsistent. The flip flopping of theories of the defense was inherently unfair. Under the particular facts of this case the actions of the prosecutor violates the fundamental fairness essential to the very concept of justice. Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed.2d 166 (1941). However, it makes no sense to say that only Campbell's due process rights were violated by the inconsistent theories. This is especially true in this case because the fingerprint, blood tests, and a witness linked Campbell and not Drake to the crime. The evidence is highlighted by Campbell's subsequent recantation.

The State cannot divide and conquer in this manner. Such actions reduce criminal trials to mere gamesmanship and rob them of their supposed search for truth. In prosecuting Campbell and Drake for the murder of Mr. Eberhart, the prosecutor "changed his theory of what happen to suit the State. This distortion rendered Henry Drake's trial fundamentally unfair. Id., at 1479. See, Nichols v. Scott, 69 F.3d 1255 (5th Cir. 1995) (finding that the use of inconsistent, irreconcilable theories to convict two defendants for the same crime is a due process violation). See also, Stumpf v. Mitchell, 367 F.3d 594, at 610-11 (6th Cir. 2004) citing Turner v. Louisiana, 379 U.S. 466, 471-72, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) Nothing, that the United States Supreme Court has also emphasized that because the prosecutor is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not

ESCAPE OR INNOCENCE SUFFER, it is as much his duty to REFRAIN FROM improper method calculated to Produce a WRONGFUL conviction as it is to use EVERY legitimate method to bring about one. BERGER v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), overruled on other grounds. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

Habeas Petitioner has been granted Relief when counsel had failed to confront prior inconsistent evidence. HARRIS v. SENKOWSKI, 298 F.Supp. 2d 320 (U.S.D.C. (E.D. N.Y. 2004), citing Strickland v. Washington, 466 U.S. 668 (1984), HARRIS, supra, at 337, 338, 339 and cases cited therein, and BERRYMAN v. MORTON, 100 F.3d 1089 (U.S. 3Rd Cir. 1996) holding that counsel was ineffective in failing to use victim's inconsistent identification from alleged accomplice's previous trial, Id., at 1097, 1098, 1099 and 1100.

The aboved, are examples of REASONABLE jurists who have found that impingements upon Petitioner's Sixth Amendment right to effective assistance of trial counsel during the commence of criminal trial for lack of pretrial preparation and fourteenth Amendment right to a CRIMINAL fundamental fair criminal trial due to State's misconduct and defense Attorney's allowance without objections or confronting such State's misconduct that denied Due Process Clause right to a fundamentally fair trial. The aboved most importantly has been conceded by the United States Magistrate Judge KAREN WELLSBY in her Report and Recommendation at PAGE 28, on August 30 2022, that different thories existed in two seperated trials of co-defendant BRANCH and that of the Petitioner, but the wrong standard were provided by the Magistrate applying what seem to be the harmless error standard, contrary to the United States Supreme Court precedents cited by the Petitioner, which all holds must REVERSE conviction because such violates Due Process Clause in multiple AREAS, and cannot be considered harmless. PRIOR Courts on this point has made a legal conclusion in the Petitioner's case contrary to the findings of those legal issues by the United States Supreme Court PRECEDENTS or other lower courts.

(24)

Further, Petitioner contends that the weapons allegedly used in the commission of this crime should had be tested for DNA and Fingerprints in order to ensure who had handled those weapons, Petitioner had simultaneously filed a Motion for Post Conviction DNA and Fingerprint Testing.

According to the testimony adduced during the course of the trial, officers had searched without warrant and found weapons at the time that Petitioner's vehicle was pulled over. However, now on merit in collateral proceedings, the State disputes these facts, although in earlier criminal trial proceedings conceded, Trans. page, 272:

MR. NORIEA:

　　Look in Scott Power's report, I think Scott Powers indicated that after the vehicle was impounded, he did a search warrant just out of an abundance of caution, because most of the stuff in the vehicle, the other stolen property, the guns, were fairly easily seen with the doors all open.

MR. BARROW:

　　Let me just propose this. If the State is willing to stipulate that "after the car was searched and the CDs and the guns found, the car was impounded, and then a search warrant was obtained." If they're willing to stipulate to that, then I'm - -

MR. NORIEA:

"Well, that's what happened."

Explicitly, the State conceded to Petitioner's Fourth Amendment Right forbidding intrusions of his privacy. The State witnesses' testimony provides that there were no emergency to search car without warrant. As a fact, State witnesses testified all persons found in vehicle was immediately detained and removed away from vehicle cuffed; providing no danger of harm, nor possible escape.

The government's right to search the person of the accused when legally arrested to discover and seize the fruits or evidence of crime has little applicability to searches involving intrusions beyond the body's surface. Such intrusions are forbidden by the Fourth Amendment unless: (1) there is clear indication such evidence will be found; (2) the search is authorized by a warrant issued by a neutral and detached magistrate, absent an emergency which threatens destruction of the evidence during the delay necessary to obtain a warrant; and (3) the search or intrusion is performed in a reasonable manner. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); and State v. Fontenot, 383 So.2d 365, 367 (La. 1980).

In Boyd v. State, 204 So.2d 165 (Miss. 1967), the Court suppressed evidence seized from a truck, holding:

"The motion to suppress the evidence discovered during the search of Appellant's truck should have been sustained. Personal service of the warrant to search the truck could have been easily obtained, but no service was secured. The evidence obtained under the search was inadmissable. Seizure - What constitutes a seize: 'Whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person." State v. Flowers, 441 So.2d 707, 712 (La. 1983). Standing: The Louisiana concept of standing is much broader than that found

under Federal law. The Louisiana Constitution does not limit standing to challenge a search to those who live in the premises and thus have a reasonable expectation of privacy in it, Louisiana Constitution of 1974, Art. I, Section 5 provides in pertinent part: "Any person adversely affected by a search or seizure conducted in violation of this section shall have standing to raise its illegality in the appropriate court." State v. Perry, 502 So.2d 543, 558 (La. 1987).

Warrant Requirement: "It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well delineated exceptions." State v. Matheson, 407 So.2d 1150, 1158 (La. 1980). In the case of a warrant-less search the burden of proof rests on the State to show that an exception to the requirement of a search warrant is applicable". State v. Martin, 376 So.2d 300, 307 (La. 1979).

Requirement that person or thing to be seize be particularly described applies to both arrest and search warrants. Wong Sun v. U.S, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); Fourth Amendment to the United States Constitutions. Evidence seized during unlawful search cannot constitute proof against victim of search, and exclusionary prohibition extends to indirect as well as to direct products of such invasion. Test of excludability is not whether evidence would not have come to light but for illegal actions of police but whether evidence was come by exploitation of illegality rather than by means sufficiently distinguishable to be purged of primary taint. Wong Sun v. U.S, supra.

The criminal recorded testimony of State's witnesses and State's conceding to the facts upon same criminal record is a primcie face showing that the evidence petitioner sought to suppress but to no avail, and later used at his criminal trial were inadmissable, When petitioner disputed the officer's allegation that petitioner had consent

(27)

the burden of PROOF shifted upon the State to demonstrated that the illegal seized evidence were admissible, this showing was never made by the State.

The aboved, are examples of reasonable jurists who have found that impingements upon Petitioner's Fourth Amendment right that forbidden the government's unlawful intrusion of his privacy without proper method of obtaining a warrant, or under asserted exceptions.

Also, Petitioner contends COA is warrant due to the fact his Sixth Amendment right to counsel was violated, when trial court denied his motion for a (30) days continuance for him to hire a adequate lawyer to represent his case. The trial court recorded criminal trial sustains a support that defense counsel knew little or absolutely nothing of significant to adequately defend the Petitioner at trial, he know nothing of the essentails for representation due to lack of view State's open file discovery, or read value investigating reports on gathered evidence, to learn whether or not such would be use in trial is admissible or inadmissible, whether or not the submitted report alleged other crimes of evidence, for instance, one investigating report were submitted in evidence and testified thereof as of other crimes, "that he possessed a stolen gun, a felony he was not on trial for.

The record clearly reflects that Petitioner request for a thirty day continuance of (30) days so that his son could retain him another lawyer. Althoug the State was grant continues at their own will without proper justifications, Petitioner gave reasons not to delay criminal trial for unreasonable delays, bult for good reasons for the want to employ a adequate lawyer. Petitioner further reasonings he explained to the trial court that counsel had consulted with him one time and that was not concerned of his innocence or guilt, and that the lawyer informed him, as of his representation, Petitioner would probably be convicted, since counsel just was going to cross-examine State witnesses, indicating counsel had no available real trial strategy. This were shown within the two times that counsel had consulted with Petitioner, the first time to acknowledge that the State

has offered a plea bargain of 49½; and the second and final time the State offered a harsher life sentence. This show the lawyer had no intent to take Petitioner's case to trial and indicates counsel's reasons of lack of preparation of a trial tactic. The Courts alone have found "lawyers" to be ineffective in pleading a defendant guilty to a harsher sentence, than that of a previously much lenient lesser sentence offered. Turner v. State of Tenn, 858 F.2d 1201 (6th Cir. 1988) Also, Turner v. State of Tenn, 664 F.Supp. 1113 (M.D.Tenn. 1987), and U.S. v. Burdeau, 168 F.3d 352 (9th Cir. 1999).

Petitioner gave a valid reason for discharge of trial counsel due to the facts counsel done no investigation, had not prepared to adequately Represent the criminal trial on merits and for those reasons did not feel I safe in counsel's representing his criminal trial. This was Petitioner first prose request for continuance, a right of continuance as similar used by the State for little or no adequate reason, and granted. In this aspect the trial court erred in denying Petitioner a (30) days continue for to hire a counsel of his choice although indigent and may do so by others of financial ability. A defendant should be afford a fair opportunity to secure counsel of his own choice. Powell v. Ala, 287 U.S. 45, 53 (1932). This to retain one's attorney of choice extends to indigent defendants, it does not afford them carte balance in the selection of appointed counsel. U.S. v. Myers, 294 F.3d 203, 206 (1st Cir. 2002); U.S. v. Rankin, 77 F.2d 956, 960 (3rd Cir. 1986), right to counsel violated by court's refusal to grant continuance to enable defendant's chosen counsel. U.S. v. Mullen, 32 F.3d 891, 897 (4th Cir. 1984), right to counsel violated by court's refusal to appoint substitute counsel because defendant made timely request for court-appointed lawyer and there was total breakdown in communication between defendant and initial counsel. U.S. v. Pollard, 146 F.3d 269, 273-74 (5th Cir. 1998) right to counsel violated by court's denial of prose defendant's request to be reapresented by counsel at trial because arranged representation and no delay was required. U.S. v. Santo, 201 F.3d 953, 958 (7th Cir. 2000) Right to counsel violated by Court's arbitrary denial of continuance because such denial rendered defendant unable to procure counsel of his choice despite fact that he was

Able to hire another competent Attorney.

Petitioner Also contents that counsel was ineffective for failing to contest the validity of two prior convictions alleged for enhancement. Counsel failed to adequate, investigate and prepare for the multiple offender hearing. Tr.p. 425:

> "Defense court stated: "Your Honor, I believe I have a Motion to Quash Bill of Information Pending, First of All. Second, of all please note my objection to bills of information generally on all constitutional grounds and that's it."

As the court noted in its denial, that Counsel filed a Motion to Quash, arguing that evidence produced by the State was inadequate. Here the Court missed the point of Petitioner's Argument, whereas he argued that his counsel's performance was deficient because counsel did not orally argue insufficient of evidence, nor argue that State had failed to prove that the underlying felonies use for enhancement purpose, that there ten years cleansing period had not elapsed. In these alleged deficiencies, counsel's failure to raise objections and contest rendered counsel ineffective, constituting Petitioner denied of his Sixth amendment right to effective counsel, and due process right to fundamental criminal proceedings.

In U.S. v. FRANKS, 230 F.3d 811, 814-15 (5th Cir. 2000) the Fifth Circuit held that counsel's failure to object to sentence enhancement in face of three Court of Appeals cases holding enhancement was improper in similar circumstances was ineffective Assistance. See also, U.S. v. Russell, 221 F.3d 615, 621-22 (4th Cir. 2000) founded that counsel's failure to confirm status of two of the defendant's three prior convictions, after defendant had informed counsel that convictions were invalid, was prejudicial because defendant's credibility were central to government's case. U.S. v. Stricklin, 290 F.3d 748, 751 (5th Cir. 2002).

The Above, are examples of reasonable jurists who have found that counsel's failure to object to enhancement of sentence proceedings that was invalid on its face, constitutes ineffective Assistance and are debatable among them

Petitioner contends that both direct appellate counsel and/or post conviction counsel stood in at evidentiary hearing in these criminal sub judice matters rendered ineffective assistance when they failed to either allege any of the aboved asserted constitutional violation claims. Roe v. Flores-Ortega, 528 U.S. 470, 483-84 (2000), prejudice presumed where defendant demonstrate a reasonable probability that but for counsel's deficient failure to consult defendant about an appeal, counsel would have timely appealed. See, Strickland v. Washington, 466 U.S. 668, 692 (1984); Hernandez v. U.S. 202 F.3d 486, 489 (2nd Cir. 2000) prejudice presumed when alleged ineffective assistance of counsel based on "unexcused" failure to bring a direct appeal from a criminal conviction upon the defendant's direction to do so.

Here the record show that defendant's desire to appeal any and all constitutional violations, the counselors' chosed not to bring these now asserted non-frivolous in a timely manner was prejudiced because the lack thereof damaged Petitioner's opportunity to file those constitutional claims herein without subject to procedural time barred claims, that as here currently faced, rendered ineffective assistance of counsel. Evitts v. Lucey, 469 U.S. 387, 396 (1985), Due Process requires effective assistance of counsel during first appeal "same" right to effective assistance of counsel in initial post conviction collateral proceedings. Murray v. Giarratano, 492 U.S. 1, 10 (1989); Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012); Ibarra v. Thaler, 687 F.3d 222 (5th Cir. 2012); and Coleman v. Goodwin, No. 14-30785 (U.S. 5th Cir. 2016). Herein, the Petitioner's case, these asserted claims should have earlier been raised, and counselors' lack thereof rendered ineffective assistance. As herein, alike in Lindsey v. Cain, 2012-WL-1366040 (U.S. 5th Cir. 2012), granted a C.O.A. and remanded for further proceedings in light of Martinez, supra, saying:

"When a state, like Louisiana, requires that a prisoner raise ineffective assistance of counsel claim on collateral review, a prisoner can demonstrate cause for the default in two circumstances: (1), where the state court did not appoint counsel in the initial-

Review collateral proceeding for a claim of ineffective assistance at trial"; and (2), where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the Strickland v. Washington, 466 U.S. 668 (1984), Id., at *8 (citation omitted). Further, the prisoner must also show that "the underlying ineffective assistance of trial counsel is a substantial one, which is to say that the petitioner must demonstrate that the claim has some merit."

Petitioner states that the trial court did not appoint counsel in initial post conviction collateral review until the Louisiana Appellate court remanded case for evidentiary hearing concerning bais jurors associated with trial counsel's ineffective assistance during vior dire proceedings. And alike the the appellate counsel, the post conviction counsel did not consult with Petitioner, or considered the criminal trial record for damaging evidence of prosecutorial conduct for supporting than and now current collateral review.

The Aboved, are examples of reasonable jurists who have found that counsel's failure to raise non-frivolous constitutional claims on direct appeal or in initial review of post-conviction proceedings renders ineffective assistance, and of such are debatable among them, and or were wrongly legal conclusions.

Petitioner finally submits that the cumulative effect of errors denied him of a constitutionally fundamental fair criminal trial. The totality of counsel errors and omissions pointed out above demonstrates both trial, appellate and post conviction counselors all at some point of Petitioner's criminal subjudice matters did render ineffective assistance in violation of both state and federal constitutions. Helein, Petitioner submits that counselors' unprofessional errors and omissions must be considered in light of the totality of the circumstances. In other words, the prejudicial effect must be considered together. Arrowood v. Clusen, 732 F.2d 1364 (7th Cir. 1984). Furthermore, herein the totalities of counselors' unprofessional errors and omissions constitute ineffective assistance of counselors, and must requries reveral of Petitioner's conviction. Goodwin v. Balkcom, 684 F.2d 794 (11th Cir. 1982).

On Special note, Petitioner request this Court to consider all previous claims raised in this subjudice matter as apart and support of the granting of a C.O.A.

WHEREFORE NOW ABOVE PREMISSES CONSIDERED, Petitioner moves this Court for further consideration of the standard of COA's essentially question; "does his case presents debatability of the underlying constitutional claims asserted" and if found so, to issue a Certificate of Appealability Authorizing Mr. Earl the Petitioner to appeal the lower Court's denial of his constitutional and Procedural claims presented throughout as a whole herein. In the Alternative this Court should GRANT Petitioner a COA, so he may proceed to appeal.

Done this 6th day of December, 2022, At Homer, Louisiana.

Burrell Earl            #154891
David Wade Correctional Center, H4R
670 Bell Hill Road
Homer, Louisiana 71040



CERTIFIED MAIL™

MR. BURNE II EARL # 154891
David Wade Correctional Center, H4A
670 Bell Hill Road
Homer, Louisiana 71040

USDC-22-cv-962

"LEGAL MAIL"

CLERK'S OFFICE
United States District Court
Eastern District of Louisiana
500 Poydras Street, Room C-151
New Orleans, Louisiana 70130



US POSTAGE
ZIP 71040
02 4W
0000376940
$ 009.89°
DEC 21 2022

