U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    Aug 11 2025

CAROL L. MICHEL
CLERK
cf                    Mail

United States District Court
Eastern District of Louisiana

Date filed:

Deputy Clerk

In re: Burnell Earl —    No. 22-cv-0962

Motion For leave To Amend
And or Supplement the 1st Federal
Habeas Corpus in the interest of
Justice And ▓▓▓ fundamental Fair
Ness Pursuant to Rule 15, of the
Federal Rules Civil Procedure; and
Rhines ★ Weber, 544 U.S. 269 [2005];
United State ★ Elam, 930 F.3d 406;
409 [5th Cir. 2019] United States ★
Riascos, 76 F.3d 93, 94 [5th Cir.
1996] and Dussoy ★ Gulf Coast
Inv. Corp, 660 F. 2d 594, 597-98
[5th Cir. 1981].
... Proof of Exhaustion of diff
erent Claims with a Request For Th
Suppressed Video/Audio tapes etc. list-
ed ▓ in Law And Argument 2.A pg.
20-21 and Never reviewed by Counsel;

Foot Note(s)
1. Wilder ★ Cockrell, 274 F.3d 255, 259
[5th Cir. 2001]; O'Sullivan ★ Boer-
ckel, 526 U.S. 838, 119 S.Ct. 1728, 144
L. Ed 2d 1 [1999]; and Picard ★ Connver,
404 U.S. 270, 276; 92 S.Ct. 509, 512
[1971]

I

1. Petitioner EARL was denied PCR/ and Sentencing Relief by the trial Court on 8-05-24 and recieved on 9-30-24 without reasons

2. The 1st Circuit Court of Appeal denied relief on 12-18-24. I recieved the Judgment [ LA. App. 1 Cir. 2024, No. 24-KW-1041

3. The Louisiana Supreme Court denied Writs on May 20, 2025 which raises Substantial Constitution-al Violation of my 1st, 4th, 5th, 6th And 14th Amendment rights Not presented in this MANNER in the Trial Court; Direct Appeal; And Collateral Review. See No. 2025-KH-00194 [ LA. Sup. 5/24/25] attached

4. Both the State of Louisiana thru Matthew Caplan — Asst. District Attorney And Magristrate Judge Karen Wells Roby has by delib-erately Actions has failed in their duties to determine when the Tolling period Starts; interrupted; and Starts again Since the 1st Circuit Accepted the Writ Application And Ruled on the Merits. See No. 2024-KW-1041 [ LA. App. 1cir. 12/18/24]

II.

wherefore petitioner Earl Prays this Court allow the Amended And or Supplemental Complaint be granted and served on Counsel of records.

Respectfully Submitted this 4th day of August, 2025 under the penalty of perjury and good-faith.

Burnell Earl

Please serve          Burnell Earl
1. Matthew Caplan    Doc # 154891
Asst District        EHCC- Fox 4-D
Attorney             P.O. Box 174
701 N. Columbia St.  St. Gabriel, LA,
Covington, LA 70776           70776

order

It's order the State of Louisiana thru Matthew Caplan-ADA; show Cause by "written opposition why leave to Amend/Supplement the Original Application for Federal Habeas Corpus:

Clerk To serve all Parties a Copy of this motion And order

Said And done this ___ day of ___ 2025.

_____
U.S. District Judge

III

**Interested Parties**

1. **Nick Noriea**
   **Ass. District Attorney**
   **701 N. Columbia St**
   **Covington, La 70433**

2. **Bernell Earl # 154891**
   **EHCC** ~~Earl~~ *Fox 4 - D*
   **PO Box 174**
   **St. Gabriel, La 70776**

3. **Ernest Barrow III**
   **Attorney At Law**
   **143 East 23rd Ave**
   **Covington, La. 70433**
   **[985] 871-7374**

1.

**Issues And Questions Presented**

1. Defendant <u>Bernell Earl</u> and his Co-defendant <u>William Branch</u> was denied a fundamentally full and fair litigation of their Fourth Amendment claims. Due to <u>Suppression of Brady</u> material that would refute the officers claim of obtaining <u>oral consent</u> and waiver of <u>Miranda</u> rights.

2. Defendant <u>Bernell Earl</u> and his co-defendant <u>William Branch</u> was denied a fundamentally fair trial. When the illegal obtain evidence was introduced at defendants <u>Bernell Earl</u> and co-defendant <u>William Branch</u> due to defense counsel <u>Barrow</u> failed to obtain the audio/video tapes from their body camera and vehicles. Which would refute the False Testimony that <u>Oral Consent</u> was given after the giving of <u>Miranda</u> warnings.

3. Defendant <u>Earl</u> and <u>Branch</u> avers the <u>State of Louisiana Suppressed</u> <u>DNA and Finger Print Evidence.</u> Which would reveal several officers handling of evidence by their naked hands.

4. Defense Counsel <u>Barrow</u> was ineffective at the <u>Motion To Suppress Evidence</u> and <u>Trial</u> by not seeking the officers audio/video of their body cameras and vehicle.

2.

**Table Of Contents**                                                    **Pages**

1. Interested Parties …………………………………………………    1

2. Issues and questions …………………………………………….    2

3. Table of Contents……………………………………………....    3

4. Table of Authorities……………………………………………    4 -5

5. Jurisdiction …………………………………………………..    6

6. Statement of Facts……………………………………………….    6

7. Law and Argument 1……………………………………………    6-20

8. Law and Argument 2 ………………………………………….    21-22

9. Law And Argument 3 …………………………………………..    22-23

10. Law And Argument 4 ………………………………………….    22-23

3.

Table of Authorities:

[Cases]

1. Brady v. Maryland, 373 U.S. 83, 87, 83 S.ct. 1194 [1963]…………………..21

2. U.S. Bagley, 473 U.S. 667, 676 [1983]………………………………………...21

3. Giglio v United States, 405 U.S. 150, 154 [1972]………………………………21

4. United States v Sink, 586 F.2d 1041, 1051 [5th cir.1976]……………………21

5. Pointer v Texas, 380 U.S. 400, 403, 85 S.ct. 1065. 13L.Ed 2d 923 [1965]…….7

6. Crawford v Washington, 504 U.S. 36, 51, 124 S.ct 1354, 158 L.Ed 2d 177 [2004]…..8

7. White v Illinois, 502 U.S 346, 365, 112 S.ct. 736, 116 L.Ed.2d 848 [1992]…………..8

8. Manson v Brathwaite, 432 U.S. 98……………………………………………..8

9. Neil Biggers, 409 U.S. 188……………………………………………………..8

10. Melendez Diaz v Massachusetts 577 U.S.__, 129 S.ct 2527, 174 L. Ed 2d 314 [6/25/09]…...9

11. State v King, 355 So.2d 1305 [La. 976]………………………………………...9

12. Tennessee v Street, 417 U.S. 400, 413 [1985]…………………………………...10

13. Idaho v White, 110 S.ct. 3129…………………………………………………..10

14. State v Hearold, 603 So.2d 731 [La. 1992]……………………………………...10

15. Ohio v Roberts, 488 U.S. 56, 65-66……………………………………………..10

16. State v Polkey, 529 So.2d 474,476 [La. App. 1 Cir 1988] Writ denied, 536 So.2d 1223 [La.1989]……………………………………………………………………..10

17. Busta Monte, 412 U.S. 218, 219, 93 S.ct. 2401,36 L.Ed. 2D 854 [1973]…………………..10

18. State v Brumfield, 560 So.2d 534, 536 [La. App. 1 Cir.] Writ Denied, 565 So.2d 942[La.1980]……………………………………………………….10,11

19. State v Kilerease, 379 So.2d 737, 739 [La.1980]……………………………………...11

20. State v Crosby, 403 So.2d 1217,1219 [La.1981]……………………………………...11

21. State v Cousin, 700 So.2d 1016 [La. App. 1Cir 1977] Writ Denied,712 So.2d 875[La. 1998]...11

22. Chimel California, 395 U.S 752, 763 89 S.ct. 2034, 240, 23 L.Ed. 2D 685 [1969]….12

23. New York v Belton, 453 U.S. 454,101 S.ct. 2860, 69 L.Ed. 2D 768 [1981]……….12

24. State v Carey, 499 So.2d 283, 286, N.2 [La. App.1 Cir. 1986]……………………..12

25. State v Ganezaro, 957 So.2d 136 [La. 6/01/07]……………………………………..12

26. State v Roche, 928 So.2d 761, 765 [La. App. 5 Cir. 2006]…………………………18

27. State v Harris, 86 So.2d 798, 801-02 [La. App. 5 Cir. 2005]……………………..18

4.

28. <u>State v Holliman</u>, 900 So.2d 999, 1003 [La. App. 5 Cir. 2005]...................18

29. <u>Collidge v Hampshire</u>, 403 U.S. 443, 91 S.ct. 2022, 99 L.Ed 504 [1971].........19

30. <u>Arizona v Hicks</u>, 107 S.ct. 1149 [1987]...............................................19

31. <u>Dickerson v United States</u>, 530 U.S 428, 444 [2000]................................20

32. <u>Michigan v Tucker,</u> 417 U.S. 433 [1974]..............................................20

33. <u>Stoval v Denno</u>, 388 U.S. 293, 87 S.ct 1967, 18 L.Ed. 2D 1199 [1967].............20

34. <u>Strickles v Greene,</u> 119 S.ct. 1936 [1999]..........................................22

35. <u>Kyles v Whitey,</u> 514 U.S. 419,434, 115 S.ct. 1555, 131 L.Ed 490...................22

36. <u>State v Fuller,</u> 721 So.2d 1, 13 [La. Cir. 1998].....................................22

37. <u>United States Constitution:</u> Amendment Four & Amendment Sixth,.....6,9,10,18

38. <u>Louisiana Constitution 1974:</u> Article 1 section 2, Article 1 section 5, Article 5 section 2, Article 5 section 5............................................................6,10,18

39. <u>Louisiana Revised Statutes:</u> 15:529.1, 15:529.2(c)(1), 15:529.1.D(1), 15:529.1.(c)(2), 14:64.3, 14:95.1, 14:64, 15:451...................................................20,21,23

40. <u>Louisiana Code of Evidence:</u> Article 703.D, Article 801(c)....................9,11

41. <u>Louisiana Code of Criminal Procedure:</u> Article 841, Article 882................10

**Jurisdiction**

Jurisdiction of this court is invoked pursuant to Article 5 section 2,10 of the Louisiana Constitution 1974.

**STATEMENT OF FACTS**

On July 31, 2024 the following pleadings was filed into the 22nd Judicial district Court Parish of St. Tammany:

(A) Motion To Vacate And Set Aside Conviction And Sentence

(B) Motion To Vacate Judgments; Denying The Motion To Suppress All Physical Evidence On January 7, 2024 along with co-defendants William Earl and Detective Buckner;

(C) Motion To Vacate And Set Aside Multiple Bill Adjudication and Sentence; and

(D) Motion For Production Of Documents.

**ACTION BY TRIAL JUDGE**

On August 5, 2024 the Trial Judge denied all pleadings with no written reasons. Petitioner Earl received the judgments on the 30th day of September, 2024. I received copy of filed pleading/judgments

**Action by 1st Circuit Of Appeal**

On the 18th day of December, 2024 I received the judgment denying my writ application without written reasons in which set forth several constitutional claims in which I cannot have a fundamental due process hearing without production of the requested documents as indigent. (See United States v Agurs, 427 U.S. 97, 96 S.ct. 2392 (1976); United States v Bagley, 473 U.S. 667, 676, 105 S.ct 3375. Law and Argument 1,2,3:

In Stone v Powell, 428 U.S. 465 [1976] the Supreme Court limited the scope of federal habeas review of Fourth Amendment violations. Id. at.494. The Court held that a State prisoner is not entitled to habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at her trial. If the state has provided an opportunity for full and fair litigation of the Fourth Amendment.Id.at 481-82. This limitation on federal habeas review does not apply to Sixth Amendment Claims of ineffective of counsel. Based on deficient representation in litigating a Fourth Amendment issue. Kimmelman v Morrison,471 U.S. 365, 382-83 [1986] or to Fifth Amendment Claims of statements obtained in violation of Miranda v Arizona, see Withrow v Williams, 113 S.ct 1745,1754. [1993]

6.

The sixth amendment of the United States Constitution, made applicable to the States the fourteenth amendment. Pointer v Texas,380 U.S. 400,403,85 So.Ct. 1065,13 L.Ed 2d 923 [1965], provides that "in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." In Crawford v Washington, 504 U.S. 36,51,124 S.Ct. 1354, 158 L.Ed. 2D 177[2004], after reviewing the clause's historical underpinnings, the court held that it guarantees a defendants right to confront those who bear testimony against him. A witnesses testimony against a defendant is thus inadmissible unless the witness appears at trial, or if the witness is unavailable the defendant had a prior opportunity for cross- examination. Ideat 54,124 S.ct. 1354,158 L.Ed.2d 177.

The Crawford opinion described the class of testimonial statements covered by the "Comfrontation Clause"  as follows:

"Various formulations of this core class of testimonial statements exist: ex parte in court testimony or its functional equivalent that is, material such as affidavits, custodial examinations, prior testimony that

the defendant was unable to cross examine or similar pretrial statements that declarations would reasonably expert to be used prosecutorially; extrajudicial statements. Contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confession lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Id. At 51-52,124 S.ct. 1354,158 L.Ed.2d 177[internal quotation marks and citations].

**Footnotes**

1. Moreover the court noted that "in general no comparable, meaningful opportunity exists for full and fair litigating. Counsel failure to object to the exculpatory statements. which resulted in finding of the alleged used in an armed robbery at the Motion To Suppress Evidence and trial without being allow to confront and cross- examine co-defendants Adrienne Williams and Detective Buckner.

7.

There is little doubt that, the arrest reports and what co-defendant "Adrienne Williams told the officers after being arrested and placed separately in three patrol cars at gunpoint prior to being identified by the victim Boris Allen" in a suggestive identification', at the scene of our arrests fall within the core class of testimonial statements thus described. The courts description of that category mentions affidavits twice. See also White v Illinois,502 U.S. 346,365,112 S.ct.736,116 L.Ed 2d 848 [1992] [Thomas J, Concurring in part and concurring in judgments] the confrontation clause is implicated by extrajudicial statements only insofar as they are contained in formalized materials, such as affidavits, depositions, prior testimony or confessions]. The police reports in which involves the victim Boris Allen, Adrienne Williams and what the officers did and was told are plainly affidavits 2. They are incontrovertible a solemn declaration or affirmation made for the purpose of establishing, a fact. Crawford, supra, at 51,124 S.ct. 1354,158 L. Ed.2d 177 [quoting 2N,webster, an American Dictionary of the English Language [1828]. Unlike Crawford, exculpatory statements of co-defendant.

Adrienne Williams and the victim Boris Allen was testimonial statements in light of the fact she was a witness and he the victim for purpose of the sixth amendment. Absent showing that Adrienne Williams were unavailable to testify at the 'Motion To Suppress' the evidence and defendant Earl and Branch had a prior opportunity to cross-examine them. Defendant Earl and Branch was entitled to be confronted with co-defendant Adrienne Williams. Whereas the officer testimony was hearsay and became substantive in light of counsel Barrow did not object based upon the sixth amendment confrontation clause. Crawford, Supra, at 54,124 S.ct. 1354,158 L.Ed.2d 177.


Footnotes:

    2. See Manson v Brathwaite,432 U.S. 98; Neil v Biggers,409 U.s. 188.

    3. See Affidavit In Support of Search Warrant.


**8.**

The contrast between the text of the "confrontation clause" and the text of adjacent "compulsory process clause" confirms defendant Earl and Branch's right to be confronted with the witnesses against them. While the "confrontation clause" guarantees defendants Earl and Branch's right to be confronted with the witness against him, the compulsory process clause guarantees Earl and Branch's the right to call witnesses in their favor. U.S. Const. Amendment 6. the text of the Amendment contemplates two classes of witnesses, those against dependent Earl and Branch and those in his favor. The prosecution must produce the former, defendant Earl and Branch may call the later. Melendez Diaz v Massachusetts, 577 U.S._____,129 S.ct. 2527,174 L.ED 2d 314 [6/25/09].

The fact that the Compulsory Process Clause gave defendant Earl and Branch through. Counsel Barrow the ability to subpoena co-defendant Adrienne Williams doesn't lessen the Confrontation Clause violation. Exercise of this power, under state law or the compulsory process clause, it is no substitute for the right of confrontation. Unlike the confrontation clause, those provisions are no use to defendant Earl and Branch when the witness is unavailable or simply refuses to appear. Davis,547 U.S. 820,126 S.ct. 2266,165 L.Ed.2d 224[the witness was subpoenaed, but she did not appear at trial]. Converting the prosecutions duty under the confrontation clause into dependents Earl and Branch under the compulsory process clause shifts the consequences of adverse witness no shows from the state to the accused. More fundamentally, the confrontation clause imposes a burden on the prosecution to present its witnesses, not on defendants Earl and Branch to bring those adverse witnesses into court. Its valve to the defendants Earl and Branch is not replaced to which the prosecution presents its evidence via ex parte exculpatory statements and wait for defendants Earl and Branch to subpoena the co-defendant Adrienne Williams if they chooses.

A hearsay statement is a statement, other than one made by the witness while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. John H. Wigmore, evidence at trial at common law 1364 [Chad Bourn, Rev. 1924]; 4 Jack B. Weinstein and Margaret A. Berges, Weinstein evidence 800-04 [1991]; La. Code Evid. Art. 801 (c); State v King, 355 So.2d 1305 [la.1978]

In this case Nick Noriea- Asst. District Attorney was allowed through its witnesses Ricky Edwards; Brian Estes; Scott Powers and Boris Allen [Victim] to testify as to what co-defendant Adrienne Williams told them as to the alleged "Armed Robbery" and oral consent to search the vehicle for the weapons used in connection of the Armed Robbery. Whom the state elected use to subpoena for

**9.**

the motion to suppress hearing resulting in their hearsay testimony becoming substantive evidence when counsel Barrow failed to object and state the reasons why for the same resulting in an unconstitutional waiver under La.Cr.C.Pr art 841 on "Direct Appeal" as of right. Idaho v white, 110 S.ct. 3129; State v Hearold,603 So.2d 731 [La. 1992].

As held by the United States Supreme Court in Tennessee v Street, 471 U.S. 409,413[1985], the Confrontation Clause is violated when "hearsay evidence" is admitted as substantive evidence against defendants Earl and Branch with no opportunity to confront and cross-examine co-defendant Adrienne Williams at the Motion To Suppress Hearing. Ohio v Roberts, 488 U.S. 56, 65-66. As to counsel Barrow failure to object to the State witnesses testimony as to what co-defendants Earl and Branch did or said resulting in the giving of "oral consent" to retrieve the guns from behind the drivers seat panel and that I [Earl] put a gun to her head forcing for assistance with her car, knowing she would not be there upon arrival but her boyfriend Bernell Earl, and William Branch.

Claim Two :

2. Unlawful arrest, search and seizure due to invalid consent of co-defendant Adrienne Williams who had no authority to give consent to search.

The United States and Louisiana Constitutions prohibit unreasonable searches and seizure. U.S. Const. Amend.4; La. Const. Art 1,5. A search conducted without a warrant is per se unreasonable, subject only to a few specifically and well- delineated exceptions. Schneck Bustamonte, 412 U.S. 218, 219, 93 S.ct 2401, 93 S.ct 2401, 2043, 36 L.Ed.2d 854 [1973]. Both the United States Supreme Court and the Louisiana Supreme Court have recognized a true inventory search to be an exception to the warrant requirement. State v Brumfield, 560 So.2d 534,536 [La. App. 1st Cir.], writ denied, 565 So.2d 942 [La.1980] [and cases cited therein].

The justification for an inventory search is ostensibly to protect the occupant against loss of his property or to protect the law enforcement agency against the occupant's claim for failure to guard against such a loss. A valid inventory search is conducted not on probable cause to secure evidence, but

Footnotes

3. See State v Polkey, 529 So.2d 474,476 [La. App. 1 Cir. 1988], writ denied, 536 So.2d 1223 [La.1989]

**10.**

merely to inventory the vehicle's contest in order to safeguard them, as an incident to the vehicle's necessarily being taken into lawful police custody. Id.

Because the inventory search is a narrow exception to the requirement of a warrant and the requirement of probable cause, it must be strictly limited to these practical purposes for which it is justified. State v Killcrease, 379 So.2d 737, 739[La.1980]. An inventory search may not be used as a subterfuge for rummaging through the arrestee's vehicle without a warrant for the primary purpose of seizing evidence. Brumfield, 560 So.2d at 536. To fall within the inventory exception, however the state must prove that pounding of the defendants vehicle was necessary and that inventory of the vehicle's contents was necessary and reasonably in it's scope. State v Crosby, 403 So.2d 1217,1219 [La. 1981]. Inventory searches that take place at the place of arrest rather than at the place of pound of the car are suspect and have frequently been found to be a subterfuge for a search for evidence. See Killcrease, 379 So.2d at 739. Factors that are significant in determining whether a so-called "inventory search" was a subterfuge that are significant in determining whether search without probable cause are.

1. The vehicle could not have remained safely at or near the place it was stopped;
2. The search was not conducted in the field;
3. The tow truck was called before the search commenced;
4. Formal impoundment procedures were followed;
5. The vehicle operator was asked if he consented to a search, if the car contained valuables, or if he would consent to the agency's failure to afford him the protection of an inventory search; and
6. Arrangements were made for someone designated by the operator to take possession or protective custody of the vehicle for him. Brumfield, 560 So.2d at 536-537.

The absence of a few of the elements to be considered in evaluating whether a true inventory search was conducted should not necessarily invalidate the search; rather, it is the totality of the circumstances and the true purposes of the inventory that determines the issue. See State v Cousin, 700 So.2d 1016,1019 [La.App. 1st Cir 1997], Writ denied, 712 So.2d 875 [La.1998]; See also Brumfield, 560 So.2s 537. At the motion to suppress hearing, the state had the burden of establishing the admissibility of the evidence seized without a warrant. La.C.Cr.P Art.703D.

**11.**

Contrary to the state's assertions, the search at issue cannot be justified as a search incident to defendants Earl, Branch, and Williams arrest. The search incidental to an arrest exception to the warrant requirement allows a search of the person arrested, as well as the immediate area within his control. See Chimel v California, 395 U.S. 752, 763, 89 S.ct 2034, 240,23 L.Ed.2d 685 [1969]. When the individual arrested is the occupant of a vehicle the exception, also allows a search of the entire passenger compartment of the vehicle and any containers found therein. See New York v Belton,453 U.S. 454, 460,101 S.ct 2860, 2864,69 L.Ed.2d 768 [1981]. The exception has not yet been extended to cover containers locked inside a vehicle's trunk. See State Carey, 499 So.2d 283,286 N.2 [La.App. 1st Cir. [1986] ; State v Ganezaro, 957 So.2d 136 [La. 6/01/07].

On July 21, 2013 defendant Williams was driving my vehicle while I was in the passenger seat, with Branch and Williams daughter was in the back. We were stopped 1-12 on the ramp from highway 11. A order was given to the driver [Williams] to turn the car off and throw the keys out the window in which she complied. Williams, Earl, and Branch was given orders to exit the car with our hands up and walk backwards toward them, with their guns drawn on us, handcuffed and placed in separate patrol cars. Never advised at this point the reasons for their action.

Testimony of witnesses involved in the search of my vehicle and arrest at the January 7, 2014 Motion To Suppress Identification and Evidence:
Deputy Rickey Edwards, St. Tammany Parish Sheriff's Office:
Q. Did you have the occasion to investigate an armed Robbery that occurred at the intersection of 5th street near St. Tammany Avenue?
A. Yes sir
Q. In connection with that investigation, you were present when the victim was brought to the scene by another deputy for an on scene identification?
A. yes, Sir, I was
Q. what role, if any did you play with that on scene identification?
A. When the victim was brought to the scene by the other deputy, my roll was to escort the suspects to an area to allow the victim to be able to identify the suspects. Tr.p.264, line 12-22
Q. In connection with your further investigation, did she give consent to search her purse?
A. Yes, she did
Q. Tell the court how that came about.

**12.**

A. I went to her, I had a rapport with her. I asked her, I said, you know, what's going on? Where is your ID at? So we could get all the Id(s) from the suspects and run them and make sure they didn't have any kind of warrants or attachments. She said her ID was in her purse. I said, can I get your purse? She said, yes. I said, can I go through your purse and make sure your ID is in there, Tr.p. 264, line 12 to p.265, line 31.

Q. In so far as this investigation concerning the identification and collection of evidence, did you have any other responsibilities?

A. Outside of me finding the victims card in the female suspect's purse. No, I didn't.

Q. Where was that female suspect's purse located that she had?

A. Inside the suspect vehicle, Tr.p.266, line 14-27

Q. On the things you found in the purse, did you get any authorization did you ever find out who owned the vehicle?

A. Not until after the search.

Q. You didn't ascertain who the vehicle belonged to before you went in and searched for the purse?

A. No, I didn't.

Q. Did you see anything in plain view inside the vehicle?

A. The purse in question that I was trying.

Q. The purse in question, so you took the purse and Ms. Williams claimed ownership of the purse?

A. Correct Tr.p. 266 line 14 to p. 268, line 30.

Q. That's all you found that is relevant to this incident were the victim's possession in the purse?

A. Correct.

Q. Did you ever get permission from Mr. Earl to search the vehicle?

A. No, Sir, I didn't

Q. Did you ever advise Mr. Earl of his rights to deny you entry into his vehicle?

A. I don't remember mirandizing him. Tr.p. 266,line 14- p.270, line 5

Mr. Noriea Asst. District Attorney:

Your Honor, I'm saying it was provided, and also, there was reference made to it in the police report that frankly, under these circumstances, I think they needed a search warrant to search the vehicle. But in an abundance of caution, they got a search warrant.

**13.**

<u>Mr. Barrow Defense Counsel:</u>

In the police report, it say's that, and we are going to dispute this, but it says they didn't need a search, because <u>Mr. Earl</u> gave permission. So why would we have subsequent to that a search warrant? Tr.p. 271, line 16-30.

<u>Mr. Noriea:</u>

Look in Scott Power's report. I think Scott Powers Indicated that after the vehicle was impounded, he did a search warrant just out of an abundance of caution, because the stuff in the vehicle, the other stolen property, the guns, were fairly easily seen with the doors all open. Tr.p. 272, line 9-17.

<u>Mr. Barrow:</u>

Let me just propose this, if the state is willingly to stipulate that after the car was searched and the CD's and the guns were found, the car was impounded and them a search warrant was obtained. If they're willing to stipulate to that, then I'm.

<u>Mr. Noriea:</u>

Well, that's what happen.

<u>The Court :</u>

There was an inventory search of the vehicle?

<u>Mr. Barrow:</u>

No. They tore apart the vehicle and found

<u>Mr. Noriea:</u>

**14.**

They were never removed from the vehicle until after. Tr.p. 272 line 18 p.273 line 14

Q. All the people who were in the car are now out of the car?

A. Yes, Sir

Q. Are they Secure?

A. Somewhat, They were in handcuffs, but not in police cars. Tr.p.281, line 15-31.

Mr.Earl:

Q. Did you at anytime ever give permission for anybody to search you, was that your vehicle?

A. It was my vehicle's

Q. You owned it?

A. Yes, Sir

Q. Did you at anytime give anybody permission to search your vehicle after you were stopped?

A. No,Sir

Q. Did anybody approach you and ask you if they could search your vehicle?

A. I don't know his name, but one of them asked me could they search the vehicle. They said, do you have any weapons in there? I said, I don't even want to talk.

Q. So you did not. Somebody asked you if they could search your vehicle, and you said I want to remain silent, I don't want to talk?

A. Yes, Sir.

Mr.Barrow:

If I could read from the report, your Honor it says that deputy Estes observed a rear panel cover of the front passenger seat partially dislodge. When he removed that panel from the door frame, then he found the guns. That's a little bit more than Tr.P. 277, line 22-29

Complaint Arrest Affidavit- Narrative Continuation in Relevant Part:

Deputy Bryant Estes

**15.**

Deputies assigned to the St. Tammany Parish Sheriff's Office Criminal Patrol Division responded to an armed Robbery at the intersection of 5th street and St. Tammany Avenue in Slidell. While en route, dispatch provided a suspect and vehicle description to the responding units. The vehicle was located moments later and three suspects who was identified as Adrienne Williams, William Branch, and Bernell Earl, were taken into custody and subsequently placed under arrest.

Lt. Kevin Nilsson observed a vehicle matching the description of the suspect vehicle provided by Central Dispatch. The vehicle was observed traveling from the area of Brown Village Roaad. Where it entered onto I-10 West Bound on Ramp from Highway 11. Believing this to be suspect vehicle, Lt. Nilsson initiated his red and blue lights and conducted a felony traffic stop on the vehicle. Deputy Estes was directly behind Lt. Nilsson advised Central Dispatch of the stop which was made on the I-12 on ramp from highway 11. Lt. Nilsson and Deputy Estes existed their patrol units and removed their St. Tammany Sheriff's office issued service weapons from their holster. Shortly after, Lt. Nilsson and Deputy Estes were joined by corporal Jeffrey Brady and Deputy Rickey Edwards. It should be noted the vehicle was bearing Mississippi plate PKM445 and was later learned to be registered to Bernell Earl.

Using the P.A. system in his patrol unit, Lt. Nilsson advised the drives to turn off the vehicle and throw the keys out the driver's side window. After the driver did so, Lt. Nilsson directed the driver to exit the vehicle and walk backwards slowly to the front of his patrol unit. Once the female was at the front of the unit, corporal Brady placed her in handcuffs [double locked and finger spaced] and relocated her to the rear of the Lt. Nilsson patrol unit. Lt. Nilsson then ordered the passenger in the front seat to exit the vehicle and walk backwards slowly to the front of his patrol unit. Corporal Brady placed Mr. Earl in handcuffs [double locked and finger spaced] and relocated him to the rear of the Patrol unit.

Lt. Nilsson further advised the rear passenger on the passenger side to exit the vehicle and walk backwards to the front of the patrol unit. Deputy Estes asked the passenger if there were any more passengers in the vehicle, and he was advised there was only a baby girl in a car seat.

**16.**

readily movable. Furthermore Deputy Estes had previously received voluntary verbal consent which had not yet been revoked by Mr. Earl. Finally, the search was also conducted from the scene.

At this time Deputy Runyon arrived on scene with Mr. Allen. Mr. Allen remained seated in the rear of Deputy Runyon's vehicle during the identification process. Individually each suspect was walked toward the front of Deputy Runyon's vehicle for identification purposes. Mr. Allen subsequently able to positively identify each of the three suspects. Ms. Williams, Mr. Earl, and Mr. Branch were all transported separately to the Slidell Law Enforcement Complex for further questioning.

After being taken to the Slidell Law Enforcement Complex under arrest for armed robbery of Boris Allen, Detective Buckner was called to assist in the investigation, then prepared a search warrant and supporting affidavit which was signed by the Honorable Judge Williams Burris of the 22nd Judicial District Court. The search warrant was executed upon the vehicle.

Both the Fourth Amendment to the Constitution of the United States and Article 1, Section 5 of the Louisiana Constitution protected individuals from unreasonable searches and seizures. State v Roche, 928 So.2d 761, 765 [LA. App. 5 Cir.2006]. Evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution against the citizen. State v Harris, 86 So.2d 798, 801-02 [La. App. 5 Cir 2001]. The exclusionary rule bars evidence as illegal fruit, physical and verbal evidence obtained either during, or as a direct result of an unlawful invasion. State v Holliman, 900 So.2d 999, 1003 [La.App. 5 Cir. 2005].

Lt. Nilsson, Deputy Estes, Deputy Edwards, Deputy Runyon, Deputy Fandal, and Corporal Brandy conducting a Terry Stop in relation to a recently armed Robbery exceeded Terry in light or their weapons being drawn and the commands to cut the engine off and throw the keys out of the drivers side window which Williams complied. All three alleged suspects was ordered one at a time out of the vehicle, walk backwards with their hands up. Then handcuff and placed in the backseat of three (3) separate patrol cars constituted an arrest without probable cause or a warrant for our arrests and the multiple search of vehicles. For weapons and property of the victim Allen Boris without a valid search

**18.**

warrant while being under arrest, handcuffed behind our backs in separate patrol cars. The guns were not in plain-view which required a search warrant since: (1) no consent by Earl the owner of the car; and (2) Williams had no authority to give the allege oral consent. Collidge v Hamshire, 403 U.S. 443, 91 S.ct. 2022, 29 L.Ed2d 564 [1971]; Arizone v Hicks, 107 S.ct 1149 [1987].

Mr. Barrow:

Let me just purpose this. If the state is willingly to stipulate that after the car was searched and the CD's and the Guns were found, the car was impounded, and then a "Search Warrant" was obtained. If they're willing to stipulate to that, then I'm---.

Mr. Noriea

Well that's what happen.

As in Arizona v Hicks, supra where the U.S. Supreme held there was no such thing as a cursory inspection that could be jufitied by reasonable suspicion instead of probable cause under the Fourth Amendment.

Claim Three:

Counsel Barrow failed to properly file a Motion For Suppress physical evidence and exculpatory statements of co-defendant Adrienne Williams used throughout this prosecution nor seek writs to the Appellate Courts from the Denial of Motion To Suppress:

Before what purports to be a confession can be introduced as evidence of guilt, it must be affirmatively shown that statement was freely and voluntarily made, and not made under the influence of fear, duress, intimidation, menaces, or threats, inducements or promises. Acts 210, No.433, Sec.1, effective August 15, 210. See also State v Lewis, 339 So.2d 1199 [La. 1989]

Absent documented proof adequately that a properly required warning was given, and a waiver of right was made by the accused, evidence obtained by custodial interrogation is not admissible at trial of the accused. The Louisiana jurisprudence requires that, prior to what purports to be a confession can be admitted into evidence. The State has the burden or proving its admissibility as is mandated by LSA-

**19.**

R.S. 15;451. Furthermore, as LSA-R.S. 15;452 requires that the state prove that a confession taken during custodial interrogation, as alleged here, must be preceded by the advisement of the Miranda Warning, and a knowing and intelligent waiver of rights against self incrimination must be shown not merely stated by an officer. See Withrow v Williams, 501 U.S. 680, 688-93; Dickerson v United States, 530 U.S. 428,444[2000]; and Michigan v Tucker, 417 U.S. 433 [1974]. See compare Stovall v Denao, 388 U.S. 293, 87 S.ct. 1967,18 L.Ed.2d 1199 [1967]

The exculpatory statements of Co-defendant Williams allegedly made to several law enforcement officers at the sane of the stop and during booking was never proved in any proceeding in compliance with the laws of the United States and the State of Louisiana Constitution due to ineffective counsel to challenge the court's ruling through writs to the Appellate Counts.

**Law And Argument 2:**
......  In the United States v Agurs, 428 U.S. 97, 107, 96 S.ct 2392, 49 L.Ed 2d 342[1976] held that duty to disclosed Brady material is applicable even though, there has been no request by the accused; and that duty encompassed impeachment evidence as well as exculpatory evidence. United States v Bagley, 473 U.S. 667, 676, 105 S.ct 3375. Within they ambit of Brady involving knowingly use of perjured testimony, reversal was required if there was, "any reasonable likelihood". That the false testimony had affected the verdict. Id.at 103 [citing Giglio v United Sates. 405 U.S. 150, 154, 92 S.ct. 1173, 3 L.Ed.2d 104 [1972], in turn quoting Napue v Illinois, 360 U.S. 264, 271, 79 S.ct. 1173, 3 L.Ed. 2D 1217 [1959]. The Court has treated "reasonable likelihood" as synonymous with reasonable possibly, and thus has equated material in the perjured testimony cases with reasonable doubt. Bagley, supra, at 678-680, and N.9, 105. S.ct. 3375. See also Breecht Abrabamson, 507 U.S. 619, 113 S.ct 1710, 123 L. Ed.2d 353 [1993] [defining harmless beyond a reasonable doubt standard as no resonable possible that the trial error contributed to the verdict.

A. Petitioner Earl sought relevant names and documents of all Law enforcement officers on the scene of Terry Stop ; arrest; and Searchers of the vehicle for evidence of an Alleged Armed Robbery without Consent or A Search Warrant on July 23, 2013.

**20.**



1. A copy of the Audio and Video tapes from all present cars and body cameras.

2. A copy of all audio and video of all Law enforcement agents entering my vehicle without consent or a warrant.

3. A copy of all audio and video of petitioner <u>Earl</u> giving <u>oral consent</u> to law enforcement to enter his car and remove any items from therein.

4. A copy of all audio and video tapes from the officers body camera entering my vehicle to <u>search and seize</u> evidence allegedly involved in an armed robbery without <u>consent</u> or a <u>search warrant.</u>

5. A copy of all officers on the scene of the stop, arrest, and search.

6. A copy of all officer's present at the place of the stop, arrest and search disciplinary complaints filed against them and the final result.

7. A copy of the <u>Boykin Transcript</u> of all guilty pleas used for <u>multiple bill adjudication and sentence</u> under LSA- R.S. 15:529.1.

8. A copy of the guilty pleas and waiver forms of all predicate felony conviction used for enhance of sentence per LSA-R.S 15:529.1.

9. A copy of all court minutes as to the adjudication and sentencing under LSA-R.S. 15:529.1.

10. A copy of all plea offers to defense counsel <u>Barrow</u> if I would have guilty.

11. A copy of the victim <u>Boris Allen</u> 911 call to report the alleged Armed Robbery.

**21.**

The audio and video tapes of the officers body cameras and that of their vehicles whereas defendants Earl and co-defendant William Branch would, refute the false perjured testimony gave to the court. Motion To Suppress Evidence/Confession of Co-defendant Adrienne Williams after being told her daughter would be going to "Foster Care" if she didn't tell him where the guns were.

Audio tapes from the officers body cameras and vehicles would refute that any consent was given by petitioner Earl [owner of vehicle] after miranda rights were given and proof of waiver with my signature affixed. The Discovery of the audio/video tapes of their body camera and vehicles. Which was available at "Motion To Suppress Evidence", and Trial were Brady material as recently affirmed by the U.S. Supreme Court in Strickles v Green, 119 S.ct. 1913 [1999]; since (1). art was impeaching (2). it was suppressed by the State Of Louisiana; and (3). Petitioner Earl and Branch was prejudice thus, the question is not whether the defendant would more than likely than not received a different verdict with the supposed evidence; but whether in its absence petitioner Earl received a fundamental fair trial, understood a trial resulting in a verdict worthy of confidence. Id.at 1940, citing Kyles v Whitley, 514 U.S. 419, 434, 115 S.ct 1555, 131 L.Ed 2d 490. see Also State v Fuller, 721 So.2d 1, 13 [La. App. Cir. 1998.]

**LAW AND ARGUMENT 4,3,2,1:**

The Sixth Amendment guarantees the right to effective assistance of counsel at every critical stage of the proceeding against. Burdine v Johnson, 262 F.3d 336, 344 [5th Cir. 2001]. see Yarborough v Gentry, 540 U.S. 1,5, 124 S.ct 1,157 L. Ed 2d 1 [2003]. [this right denied when defense attorney's performance falls below an objective standard of reasonableness, and thereby prejudice the defense. Yarborough 540 U.S. 5, 124 S.ct. 1, citing Wiggins v Smith, 539 U.S. 510, 521, 123 S.ct. 2527, 156 L.Ed 2d 471 [2003]. This Court reviews claims of ineffective assistance of counsel under the two pronged test establish in Strickland v Washington, 466 U.S. 668, 104 S,ct, 2052, 80 L.Ed 2d 674 [1984]; Bridge v Lynaugh, 838 F.2d 770, 773 [5th cir. 1988].

First counsel's assistance is deficient if it falls below an objective standard of reasonableness; "Strickland, 466 U.S. at 688. This court has described this standard as requiring that counsel" research relevant and law or make an informed decision that certain avenue will not be fruitful: United States v Phillip, 210 F.3d 345, 348 [5th Cir. 2000] [quoting United States v Williamson, 183 F.3d 458, 462-63 [5th Cir.199]. Solid meritorious arguments based on directly controlling precedent should be discovered and brought to courts attention. Id

Counsel Barrow never sought the audio/video tape and vehicle of all officers at the scene of stop and arrest and the 911 call with the alleged description and investigate the Constitutionality of predicate felonies for sentencing under; R.S. 15:529.1 resulting in false/perjured testimony taken as true at Motion to suppress Hearing and Trial.

Wherefore Petitioner Earl and Branch moves thus Court to order the State of Louisiana to supply them with "Request For Production Of Documents"; Hold An Evidentiary Hearing With Conflict-Free Counsel as Indigent

Respectfully submitted this 4th day of Aug. 2025 2025 under the penalty of perjury and good faith.

*Bernell Earl*

Bernell Earl # 154891

EHCC – Beaver Unit  Fox 4 - D

P.O. Box 174

St. Gabriel, La. 70776

23.

**Certificate Of Service**

I, State a copy of this <u>Write application,</u> was mailed to all interested parties this ▬▬ day of _Aug. 2025_ ▬▬ with postage affixed.

_Bernell Earl_

Bernell Earl #154891

24.

The Supreme Court of the State of Louisiana

**STATE OF LOUISIANA**

No. 2025-KH-00194

**VS.**

**BERNELL EARL**

_ _ _ _ _ _

IN RE: Bernell Earl - Applicant Defendant; Applying For Supervisory Writ, Parish of St. Tammany, 22nd Judicial District Court Number(s) 539204-1-B, Court of Appeal, First Circuit, Number(s) 2024 KW 1041;

_ _ _ _ _ _

**May 20, 2025**

Writ application denied - Applicant has previously exhausted his right to state collateral review. See State v. Earl, 2021-0735 (La. 11/10/21), 326 So.3d 1239.

PDG

JLW

JDH

JBM

JMG

CRC

Crain, J., recused.

Supreme Court of Louisiana
May 20, 2025

Chief Deputy Clerk of Court
For the Court

# The Supreme Court of the State of Louisiana

**STATE OF LOUISIANA**

No. 2021-KH-00735

**VS.**

**BERNELL EARL**

- - - - - -

IN RE: Bernell Earl - Applicant Defendant; Applying For Supervisory Writ, Parish of St. Tammany, 22nd Judicial District Court Number(s) 539204-1, Court of Appeal, First Circuit, Number(s) 2021 KW 0312;

- - - - - -

**November 10, 2021**

Writ application denied. See per curiam.

PDG

JLW

JDH

SJC

JTG

JBM

Crain, J., recused.

Supreme Court of Louisiana
November 10, 2021

*Katie Marianovic*

Chief Deputy Clerk of Court
For the Court

26.

November 10, 2021

# SUPREME COURT OF LOUISIANA

## No. 21-KH-0735

## STATE OF LOUISIANA

v.

## BERNELL EARL

### ON SUPERVISORY WRITS TO THE TWENTY-SECOND
### JUDICIAL DISTRICT COURT, PARISH OF ST. TAMMANY

PER CURIAM:

Denied. Applicant fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Applicant has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, *see* 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Applicant's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, applicant has exhausted his right to state collateral review. The district court is ordered to record a minute entry consistent with this per curiam.

27.